# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------x
RACHEL WITLIEB BERNSTEIN,      :     Index No.: 17-cv-9483(DAB)
ANDREA MACKRIS, and REBECCA   :
GOMEZ DIAMOND,                :
                                   :
             Plaintiffs,      :
v.                              :
                                   :
BILL O'REILLY and             :
FOX NEWS NETWORK LLC,       :
                                   :
            Defendants.     :
-----------------------------------------------------x

## PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' REQUEST TO FILE COURT DOCUMENTS UNDER SEAL

SMITH MULLIN, P.C.
420 Lexington Avenue, Suite 300
New York, New York 10170
(212) 297-6134; fax: (917) 677-3697
(nmullin@smithmullin.com)

240 Claremont Avenue
Montclair, New Jersey 07042
(973) 783-7607; fax: (973) 783-9894

**Of Counsel and on the Brief:**
    NEIL MULLIN, ESQ.
    NANCY ERIKA SMITH, ESQ.

## TABLE OF CONTENTS

POINT I:     DEFENDANTS O'REILLY AND FOX NEWS HAVE NOT
EVEN ATTEMPTED TO MEET THEIR BURDEN OF SHOWING
"EXTRAORDINARY CIRCUMSTANCES" WHICH WOULD
ALLOW THE SEALING OF DOCUMENTS ON WHICH
THEY RELY IN THEIR DISPOSITIVE MOTIONS ...................... 1

POINT II:    DEFENDANTS IGNORE THE CONSTITUTIONALLY-GROUNDED
RIGHT OF THE PUBLIC TO ACCESS DOCUMENTS FILED IN COURT   .. 1

CONCLUSION ......................................................... 8

## TABLE OF AUTHORITIES

### CASES

Ashmore v. CGI Grp. Inc., 138 F.Supp.3d 329 (S.D.N.Y. 2015) . . . . . . . . . . . . . . . . . . . . . 8

Bank of America Nat. Trust and Savings Assn. v. Hotel Rittenhouse Associates,
800 F.2d 339 (3d Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Bernstein v. Bernstein Litowitz Berger & Grossmann LLP, 814 F.3d 132 (2d Cir. 2016) . . . . . 5

Collado v. City of New York, 193 F.Supp.3d 286 (S.D.N.Y. 2016) . . . . . . . . . . . . . . . . . . . . 2

Colony Ins. Co. v. Burke, 698 F.3d 1222 (10th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Grynberg v. BP P.L.C., 205 F.Supp.3d 1 (D.C. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Hardy v. Kaszycki & Sons, 2017 WL 6805707 (S.D.N.Y. Nov. 21, 2017) . . . . . . . . . . . . . . . 4

Hartford Courant Co. v. Pellegrino, 380 F.3d 83 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . 3

Joy v. North, 692 F.2d 880 (2d Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110 (2d Cir. 2006) . . . . . . . . . . . . . . . . . 2-4

Lytle v. JP Morgan Chase, 810 F.Supp.2d 616 (S.D.N.Y. 2011) . . . . . . . . . . . . . . . . . . . . . 5

Newsday LLC v. Cnty. of Nassau, 730 F.3d 156 (2d Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . 2

N.Y. Civil Liberties Union v. N.Y.C. Transit Auth., 684 F.3d 286 (2d Cir. 2012) . . . . . . . . . . 3

SEC v. TheStreet.com, 273 F.3d 222 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Standard Inv. Chartered, Inc. v. FINRA, 347 Fed.Appx. 615 (2d Cir. 2009) . . . . . . . . . . . . . 2

Under Seal v. Under Seal, 273 F.Supp.3d 460 (S.D.N.Y. 2017) . . . . . . . . . . . . . . . . . . . . 1-2

United States v. Amodeo, 71 F.3d 1044 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5

U.S. v. Erie County, New York, 763 F.3d 235 (2d Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . 6

Video Software Dealers Ass'n v. Orion Pictures, 21 F.3d 24 (2d Cir. 1994) . . . . . . . . . . . . . . 2

Wells Fargo Bank, N.A. v. Wales LLC, 993 F.Supp.2d 409 (S.D.N.Y. 2014) . . . . . . . . . . . 7-8

## POINT I

## DEFENDANTS O'REILLY AND FOX NEWS HAVE NOT EVEN ATTEMPTED TO MEET THEIR BURDEN OF SHOWING "EXTRAORDINARY CIRCUMSTANCES" WHICH WOULD ALLOW THE SEALING OF DOCUMENTS ON WHICH THEY RELY IN THEIR DISPOSITIVE MOTIONS

Defendant O'Reilly's informal letter request, in which defendant Fox apparently joins, to file under seal the documents on which he relies in support of his motion to dismiss should be denied outright because he has made no effort to bear his burden of proof and cited no law to support his extraordinary request. If the Court entertains the informal application to seal "judicial documents," plaintiffs request the right to file a sur-Reply brief. By filing an informal letter request devoid of legal argument or precedent, defendant has hidden his arguments - assuming he has some - and thereby prevented plaintiffs from responding.

## POINT II

## DEFENDANTS IGNORE THE CONSTITUTIONALLY-GROUNDED RIGHT OF THE PUBLIC TO ACCESS DOCUMENTS FILED IN COURT

Courts generally do not allow the filing of documents under seal absent extraordinary circumstances. Settlement agreements in which the parties agree to confidentiality do not merit filing under seal unless a compelling need is shown. Important constitutional and common law principles require public access to judicial documents.

Court Orders to seal documents are the exception, not the rule, even in the face of a contractual provision for confidentiality, and "must be 'carefully and skeptically review[ed] ... to insure that there really is an extraordinary circumstance or compelling need' to seal the documents from public inspection." Under Seal v. Under Seal, 273 F.Supp.3d 460, 466

(S.D.N.Y. 2017), quoting Video Software Dealers Ass'n v. Orion Pictures, 21 F.3d 24, 27 (2d

Cir. 1994).

The party seeking to file or keep documents under seal has the burden of showing that

sealing is warranted.  Collado v. City of New York, 193 F.Supp.3d 286, 289 (S.D.N.Y.

2016)(citations omitted).  The burden is a great one because public access to court documents has

been deemed essential to our democracy:

> "The common law right of public access to judicial documents is firmly
> rooted in our nation's history." Lugosch v. Pyramid Co. of Onondaga, 435
> F.3d 110, 119 (2d Cir. 2006).  A presumption of public access is essential
> for judicial documents because 'the monitoring of the judicial function is
> not possible without access to documents that are used in the performance
> of Article III functions.' Standard Inv. Chartered, Inc. v. FINRA, 347
> Fed.Appx. 615, 616 (2d Cir. 2009) (quotation marks and emphasis
> omitted); see also Lugosch, 435 F.3d at 123 ('[O]nce [documents
> submitted to support or oppose a motion] come to the attention of the
> district judge, they can fairly be assumed to play a role in the court's
> deliberations').  **The presumption of access is 'based on the need for
> federal courts to have a measure of accountability and for the public
> to have confidence in the administration of justice.'** United States v.
> Amodeo, 71 F.3d 1044, 1048 (2d Cir. 1995)["Amodeo II"].

Under Seal, 273 F. Supp.3d at 466 (emphasis added).

Defendants have not even attempted to meet their burden of showing extraordinary

circumstances requiring sealing.

"There are two 'related but distinct presumptions in favor of public access to court ...

records:  a strong form rooted in the First Amendment and a slightly weaker form based in

federal common law.'" Id., at 467, quoting Newsday LLC v. Cnty. of Nassau, 730 F.3d 156, 163

(2d Cir. 2013).   Under either presumption, "courts must first determine whether the document at

issue is a judicial document and once the court determines that a document is a "judicial

document," it must then determine whether the presumption of access is based on common law or the more robust First Amendment right." Id., citing Lugosch, 435 F.3d at 119-120.

A judicial document is one filed with the court that is " relevant to the performance of the judicial function and useful in the judicial process." Under Seal, 273 F.Supp.3d at 467, quoting SEC v. TheStreet.com, 273 F.3d 222, 232 (2d Cir. 2001) (quotation marks omitted).   Put another way, the presumption of the public right of access to judicial documents applies to all documents filed with the district court, but the weight of the presumption will vary and "is a function of (1) 'the role of the material at issue in the exercise of Article III judicial power' and (2) 'the resultant value of such information to those monitoring the federal courts.'" Id., citing, Lugosch, 435 F.3d at 119–20.

Here, defendants seek to file a motion to dismiss, or, in the alternative, to compel arbitration.  They seek to rely upon the numerous settlement agreements between the plaintiffs and defendants.  Thus, without question, the documents are judicial documents.

In addition to a common law presumption of access, "the First Amendment provides the public and the press a *constitutional* right of access to all trials, criminal or civil," including "related proceedings and records" in order to "protect the public against the government's arbitrary interference with access to important information." Under Seal, 273 F.Supp.3d at 469, quoting, N.Y. Civil Liberties Union v. N.Y.C. Transit Auth., 684 F.3d 286, 298 (2d Cir. 2012); Hartford Courant Co. v. Pellegrino, 380 F.3d 83, 91 (2d Cir. 2004) (the public and press have a "qualified First Amendment right to attend judicial proceedings and to access certain judicial documents.").

Defendants' efforts must fail. "[D]ocuments filed in relation to a motion 'are judicial documents to which a presumption of immediate public access attaches under both the common law and the First Amendment.'" Under Seal, 273 F.Supp.3d at 470, quoting Lugosch, 435 F.3d at 126. In Under Seal, the court denied defendant's motion for a preliminary injunction seeking to prohibit plaintiff from breaching the confidentiality provision of a Collaboration Agreement during the pendency of a sealing order, and unsealed the entire case, including the complaint and all other filings. Id.

It is clear that when the defendant seeks to deny plaintiffs their right to a public jury trial through a dispositive motion, that adjudication is a "formal act of government, the basis of which should, absent exceptional circumstance, be subject to public scrutiny." Id., quoting Joy v. North, 692 F.2d 880, 893 (2d Cir. 1982). When the First Amendment right of access is involved, as it is here, "[t]he weight of this presumption is heavy, for the documents are pleadings and motion-related filings that are essential to adjudication." Id.

As recently explained by the court in Hardy v. Kaszycki & Sons, 2017 WL 6805707 (S.D.N.Y. Nov. 21, 2017), in releasing a previously sealed class action settlement agreement and related documents entered into decades earlier, involving demolition workers who cleared the site to build Trump Tower, the court found that the documents had a strong presumption of access:

> With respect to the Settlement Transcript and plaintiffs' brief, the Bernstein Court further explained that "[t]he locus of the inquiry is, in essence, whether the document is presented to the court to invoke its powers or affect its decisions." Bernstein, 814 F.3 at 142 (internal citation and quotation omitted). Applying this standard, the Court finds that the Settlement Transcript and plaintiffs' brief are entitled to a **strong presumption of access**. The documents directly invoke-or provide a

-4-

> record of the parties' arguments to invoke-the district court's exercise of
> its Article III power: namely, the approval of a class action settlement
> pursuant to Rule 23(e). See United States v. Amodeo, 71 F.3d 1044, 1049
> (2d Cir. 1995) ("Amodeo II")(stating that "the weight to be given the
> presumption of access must be governed by the role of the material at issue
> in the exercise of Article III judicial power and the resultant value of such
> information to those monitoring the federal courts.").

Id., 2017 WL 6805707 at *3(emphasis added) (attached).

Here, there is no doubt that the settlement agreements on which defendants rely in their

motions are "judicial documents" to which the public has presumptive access under the common

law and First Amendment.   The Second Circuit has ruled that settlement agreements - even ones

in which the parties request confidentiality - are judicial documents which should not be sealed.

Parties' requests for confidentiality do not trump the presumptive public access under common

law and our Constitution.  In Bernstein v. Bernstein Litowitz Berger & Grossmann LLP, 814

F.3d 132  (2d Cir. 2016), the Second Circuit upheld the district court's unsealing of an attorney-

whistleblower's complaint against his former employer that had been subsequently settled on a

confidential basis against the law firm and five partners.  In so holding, the Second Circuit held

that "pleadings –even in settled cases – are judicial records subject to a presumption of public

access" under both the common law and the First Amendment. Id., at 140.

Similarly, even information and documents involving  third-parties submitted in

connection with dispositive motions are, as a matter of law, judicial documents to which a strong

presumption of access attaches under both the First Amendment and common law.  Lytle v. JP

Morgan Chase, 810 F.Supp.2d 616, 621 (S.D.N.Y. 2011)(denying employer's request to seal

information/documents in connection with summary judgment papers in a discrimination case,

including identities of other employees investigated by defendant, names of other employees and

independent contractors interviewed, contact information and other information regarding third parties).

Even where the parties are in agreement to seal portions of the court's file containing confidential settlement agreements and other documents, the court may deny such motions given the importance of public access to judicial documents. In Colony Ins. Co. v. Burke, 698 F.3d 1222, 1242 (10th Cir. 2012), the court denied on appeal both parties' motions to seal confidential settlements since "the parties themselves placed these settlements at the center of this controversy, in particular through the Estate's garnishment counterclaim and Colony's summary judgment motion on that counterclaim." In so doing, the court "recogniz[ed] that preserving the confidentiality of settlement agreements may encourage settlement, and that denying a motion to seal may chill future settlement discussions," but "we are not convinced ... that the parties' interests in keeping the terms of their agreements confidential outweighs the public interest in access, particularly in light of the centrality of these documents to the adjudication of this case." Id. at 1241. Here, the settlement agreements are central to defendants' motion seeking this Court Order denying plaintiffs their day in Court through dismissal of their claims, or, failing that, forcing them into a secret arbitration proceeding.

The public's right of access to judicial documents was stressed in U.S. v. Erie County, New York, 763 F.3d 235, 243 (2d Cir. 2014). In that case, the Second Circuit held that a civil rights' organization had the right to see compliance reports prepared pursuant to a settlement agreement between the DOJ and Erie County regarding inmates' constitutional rights to safe and sanitary conditions. In overturning the District Court's ruling that the reports should be sealed, the Second Circuit held that they were unquestionably "judicial documents" since the court relied

upon them in monitoring compliance with the settlement agreement. Id., at 243.   See also

Grynberg v. BP P.L.C.,  205 F.Supp.3d 1, 3-4 (D.C. 2016)(refusing to seal confidential

settlement agreements and other exhibits in connection with Rule 60 relief from judgment

motion where oil company failed to show any prejudice from disclosure and public had right of

access to such judicial documents).

     Similarly, in Bank of America Nat. Trust and Savings Assn. v. Hotel Rittenhouse

Associates, 800 F.2d 339 (3d Cir. 1986), the Third Circuit reversed a district court's denial of a

motion by a contractor to unseal motions and settlement agreement papers filed in litigation

between a bank and a developer.  It cogently explained how the once confidential settlement

papers could no longer be kept secret:

> In the name of encouraging settlements, Judge Garth [the dissent] would
> have us countenance what are essentially secret judicial proceedings. We
> cannot permit the expediency of the moment to overturn centuries of
> tradition of open access to court documents and orders. **Having
> undertaken to utilize the judicial process to interpret the settlement
> and to enforce it, the parties are no longer entitled to invoke the
> confidentiality ordinarily accorded settlement agreements.  Once a
> settlement is filed in the district court, it becomes a judicial record,
> and subject to the access accorded such records.**

Id., at 345(emphasis added).

     Accordingly, the settlement agreements at issue here and sought to be filed under seal by

defendants are unquestionably "judicial documents" filed in connection with a motion that the

public has a strong presumption of access to under both the common law and First Amendment.

Simply because they are allegedly confidential does not give them any special consideration

when it comes to the issue of sealing, especially since these settlement agreements have already

been widely reported in the media. See, e.g., Wells Fargo Bank, N.A. v. Wales LLC, 993

F.Supp.2d 409, 414 (S.D.N.Y. 2014) (agreement's "confidentiality clause is not binding here, given the public's right of access to 'judicial documents'") and Ashmore v. CGI Grp. Inc., 138 F.Supp.3d 329, 351 (S.D.N.Y. 2015) (allegations of vague potential harm insufficient to outweigh the strong presumption of access given that much of the information sought to be redacted had already been publicly disclosed).

**CONCLUSION**

Plaintiffs respectfully request that Defendants' unsupported request to seal documents on which they rely in their motions be denied in its entirety.

**SMITH MULLIN, P.C.**
Attorneys for Plaintiffs


BY:_____
          NEIL MULLIN (NM6020)

Dated: March 20, 2018

2017 WL 6805707
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

HARDY, et al., Plaintiffs,
v.
KASZYCKI & SONS, et al., Defendants.

83-cv-6346 (LAP)
|
Signed 11/21/2017

**Attorneys and Law Firms**

Rachel S. Levitan, Steel Bellman Ritz and Clark, P.C., Wendy E. Sloan, Hall & Sloan, New York, NY, for Plaintiffs.

Robert Wang, Mait, Wang & Simmons, Lawrence S. Rosen, Rosen Weinhaus LLP, Milton S. Gould, Shea & Gould, Thomas A. Bolan, Thomas A. Bolan, P.C., Christopher M. Houlihan, Putney, Twombly, Hall & Hirson, Michael F. Armstrong, Cooley LLP, Jay K. Goldberg, Goldberg & Allen LLP, Judd Burstein, Judd Burstein, P.C., Arthur N. Lambert, Frenkel Lambert Weiss Weisman & Gordon, LLP, New York, NY, for Defendants.

**Opinion**

Memorandum & Order

LORETTA A. PRESKA, Senior United States District Judge

**\*1** Before the Court is a request by non-parties Time Inc. and the Reporters Committee for Freedom of the Press ("Movants") to unseal certain documents relating to the settlement of this case. (See Letter from Andrew Lachow, July 12, 2016, ECF No. 415). Donald J. Trump, the Trump Organization, and Trump-Equitable Fifth Avenue Company (the "Trump Parties") filed a letter in opposition. (Letter from Lawrence Rosen, Aug. 12, 2016, ECF No. 420).

On August 26, 2016, the Court denied Movants' request. (Order, Aug. 26, 2016, ECF No. 425)(Griesa, J.). Movants subsequently appealed. On July 6, 2017, the Court of Appeals vacated the Order and remanded the case, instructing the Court to balance the presumption of public access to courts under the common law and First Amendment against countervailing interests. (Mandate, July 6, 2017, ECF No. 430).

On June 29, 2017, Lewis M. Steel, one of the lawyers who had represented the plaintiffs, filed a letter indicating that Wendy Sloan had retained two of the documents that Movants seek to unseal, which both the Court and Court of Appeals had presumed to be lost. (Letter from Lewis M. Steel, June 29, 2017, ECF No. 429). Movants and the Trump Parties subsequently filed supplemental letters. (Movant's Letter, Aug. 22, 2017, ECF No. 436; Trump Parties' Letter, Aug. 22, 2017, ECF No. 437).

For reasons explained below, the Court finds that the Trump Parties have failed to identify any interests that can overcome the common law and First Amendment presumptions of access to the four documents at issue.

I. Background

As the Court of Appeals explained, (Mandate at 3), in 1983, a member of the demolition-workers union filed a class action against various parties involved in demolishing the Bonwit Teller building, which was torn down to build Trump Tower. The class members settled with the various defendants in 1998, and the Court sealed four documents connected to that settlement: (1) a transcript of an October 26, 1998 conference (ECF No. 409) (the "Settlement Transcript"); (2) a plaintiffs' brief filed on November 9, 1998, (ECF No. 410); (3) a district court order approving the settlement dated December 30, 1998, (ECF No. 411); and (4) an amended district court order approving the settlement dated February 9, 1999 (ECF No. 412). (Id. at 3-4).

II. Presumption of Access

There are "two related but distinct presumptions in favor of public access to court proceedings and records: a strong form rooted in the First Amendment and a slightly weaker form based on federal common law." Newsday LLC v. Cty. of Nassau, 730 F.3d 156, 163 (2d Cir. 2013). The Court of Appeals determined that the presumption of access applies to the two court orders under both the common law and the First Amendment. (Mandate at 5-6). However, the Court of Appeals did not address the Settlement Transcript or plaintiffs' brief, records of which were discovered only after the Mandate was issued. A discussion of these two documents follows.

Hardy v. Kaszycki & Sons, Slip Copy (2017)

a. Common Law Presumption of Access

**\*2** The common law presumption of access attaches to all "judicial documents." Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119 (2d Cir. 2006). The Court of Appeals has defined "judicial documents" as documents that are "relevant to the performance of the judicial function and useful in the judicial process." United States v. Amodeo, 44 F.3d 141, 145 (2d. Cir. 1995) ("Amodeo I"). In determining whether a document is a judicial document, a court must evaluate "the degree of judicial reliance on the document in question and the relevance of the document's specific contents to the nature of the proceeding" and "whether access to the [document] would materially assist the public in understanding the issues before the ... court, and in evaluating the fairness and integrity of the court's proceedings." Newsday, 730 F.3d at 166-67.

The Court notes that Hardy was a class action subject to Federal Rule of Civil Procedure 23(e). Rule 23(e) requires the district court's approval before "[t]he claims, issues, or defenses of [the] certified class" can be settled. Fed. R. Civ. P. 23(e). Furthermore, "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the [settlement] proposal," and "[i]f the [proposed settlement] would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate." Id. at 23(e)(2)-(3). Accordingly, Rule 23(e) requires judicial approval of class action settlements and requires the district court to evaluate substantively the terms and to "be satisfied of the fairness" of any settlement proposal before approving it. Janus Films, Inc. v. Miller, 801 F.2d 578, 582 (2d Cir. 1986).

The hearing contemplated by Rule 23(e) occurred on October 26, 1998, and is reflected in the Settlement Transcript. Shortly thereafter, in early November 1998, the class plaintiffs filed a brief arguing that the settlement should be approved. The district court later approved the settlement in the two orders at issue. In other words, the Settlement Transcript and the plaintiffs' brief reflect the information and arguments the parties presented to the district court in order to persuade it to approve the proposed settlement of the claims in the certified class pursuant to Rule 23(e).

A district court's approval of a class action settlement pursuant to Rule 23(e) is a quintessential exercise of judicial power. See In re September 11 Litig., 723 F. Supp. 2d 526, 532-33 (S.D.N.Y. 2010)(stating that a motion for approval of a settlement "invokes [the court's] Article III power"). "Any document reflecting the terms of the settlement and submitted to the Court is a 'judicial document' to which the presumption of access likely applies." Xue Lian Lin v. Comprehensive Health Mgmt., Inc., 2009 WL 2223063, at \*1 (S.D.N.Y. July 23, 2009) (citing Lugosch, 435 F.3d at 119-20). Moreover, "[d]ocuments created by or at the behest of counsel and presented to a court in order to sway a judicial decision are judicial documents that trigger the presumption of public access." Schiller v. City of New York, 2006 WL 2788256, at \*5 (S.D.N.Y. Sept. 27, 2006). Accordingly, the Settlement Transcript and the plaintiffs' brief are "relevant to the performance of the judicial function and useful in the judicial process" and are therefore subject to the common law presumption of access. Amodeo I, 44 F.3d at 145.

i. Common Law Weight of the Presumption Analysis

Once a district court has determined that the common law presumption of access attaches, it must determine the weight of the presumption. Lugosch, 435 F.3d at 119. The Court of Appeals held that the strength of the common law presumption of public access as it applies to the two court orders is "middling." (Mandate at 5). The Court of Appeals reasoned that the two documents are closely tied to the exercise of judicial power, but that "the very strongest presumption is reserved in civil cases for documents 'used to determine litigants' substantive legal rights.' " (Id.)(quoting Bernstein v. Bernstein Litowitz Berger & Grossman LLP, 814 F.3d 132, 142 (2d Cir. 2016)).

**\*3** With respect to the Settlement Transcript and plaintiffs' brief, the Bernstein Court further explained that "[t]he locus of the inquiry is, in essence, whether the document is presented to the court to invoke its powers or affect its decisions." Bernstein, 814 F.3 at 142 (internal citation and quotation omitted). Applying this standard, the Court finds that the Settlement Transcript and plaintiffs' brief are entitled to a strong presumption of access. The documents directly invoke—or provide a record of the parties' arguments to invoke—the district court's exercise of its Article III power: namely, the approval of a class action settlement pursuant to Rule 23(e). See United States v. Amodeo, 71 F.3d 1044, 1049 (2d Cir. 1995) ("Amodeo II")(stating that "the weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts.").

Hardy v. Kaszycki & Sons, Slip Copy (2017)

In addition, the weight of the presumption is further strengthened by the public's interest in obtaining access to records from a class action lawsuit to which the now-President of the United States was a party. See Bernstein v. Bernstein Litowitz Berger & Grossmann LLP, 814 F.3d 132, 143 (2d Cir. 2016) (considering the public's interest in the subject matter of a civil complaint in determining weight of the presumption of access). The President's involvement in the Hardy litigation is of legitimate interest to the public, and the Court's determination of the weight of the presumption of access may not ignore this "broader context." Lugosch, 435 F.3d at 113, 123 n.5 (rejecting district court's conclusion that public interest in a "dispute among business partners" did not add weight to presumption of access, noting the "broader context" of the case, i.e., that defendants were "lobbying the state legislature and the governor to obtain preferred treatment in connection with a business endeavor that [was] similar to those at issue in this case."). Accordingly, the Court finds that the weight of the presumption in favor of access to the Settlement Transcript and plaintiffs' brief is particularly strong.

The Trump Parties rely on Gambale v. Deutsche Bank AG, 377 F.3d 133, 143-144, 145 n.8 (2d Cir. 2004), for the proposition that settlement information disclosed during "a relatively informal conference" and made based on the court's "assurances of confidentiality" created only a "weak" presumption of access. (Trump Parties' Letter at 2). But in that case, the parties entered into a settlement agreement that was not made "part of the court record." Gambale, 377 F.3d at 143. Further, the settlement documents "were not filed with the court and were not the basis for the court's adjudication." Id. Nevertheless, at a conference, the trial court "insisted on learning the settlement amount," which one of the parties then disclosed "based on what it may have thought were assurances of confidentiality." The Court of Appeals held:

> [T]he presumption [of access] ... was a weak one under these circumstances: The amount of the settlement was confidential, the parties articulated the reasons for such confidentiality, and the amount made its way into the transcript only in response to the court's apparently casual questioning of counsel in the course of proceedings addressing the settlement, not the adjudication, of litigation.

Id. Here, by contrast, documents reflecting the terms and conditions of the settlement were made part of the court record because the district court was required to review and approve the settlement terms under Rule 23(e). In addition, based on the Court's review of the Settlement Transcript, the parties did not articulate the reasons for confidentiality. Accordingly, Gambale is inapposite in determining the weight of the common law presumption of access.

### b. First Amendment Presumption of Access

*4 The First Amendment presumption of access applies to "particular types of judicial documents." Hartford Courant Co. v. Pellegrino, 380 F.3d 83, 91 (2d Cir. 2004)("Pellegrino"). The Court of Appeals has "articulated two different approaches for determining whether" the constitutional presumption applies. Lugosch, 435 F.3d at 120. The first approach—the "experience and logic" test—looks to "whether the documents 'have historically been open to the press and general public' and whether 'public access plays a significant positive role in the functioning of the particular process in question.' " Id. at 120 (quoting Pellegrino, 380 F.3d at 92). "The second approach considers the extent to which the judicial documents are 'derived from or [are] a necessary corollary of the capacity to attend the relevant proceedings.' " Id. (quoting Pellegrino, 380 F.3d at 93).

#### i. Experience and Logic Test

With respect to the "experience and logic test," the Settlement Transcript and plaintiffs' brief satisfy the experience prong because they are judicial records subject to the common law presumption of access. See Pellegrino, 380 F.3d at 92 (noting that courts "have generally invoked the common law right of access to judicial documents in support of finding a history of openness"). As for the logic prong, access to the Settlement Transcript and plaintiffs' brief "plays a significant positive role" in monitoring judicial approval of the class action settlement because the documents contain the terms of the proposed settlement, as well as the arguments presented to the district court in seeking its approval. Id. Members of the public are not able to evaluate a court's decision to approve a settlement without knowing its terms and the arguments presented to support it. See In re September 11 Litig., 723 F. Supp. 2d at 531 (holding that First Amendment and common law presumptions of access

apply to information contained in a motion to approve a
settlement and explaining that the sealed information was
"central to the parties' settlement and [the court's]
decision on their motion for approval."). Accordingly, the
logic prong is satisfied, and the Court finds that the
constitutional presumption applies to the Settlement
Transcript and plaintiffs' brief under the experience and
logic test.


### ii. Necessary Corollary Test

The First Amendment presumption of access also applies
to the Settlement Transcript under the necessary corollary
test. As noted above, Rule 23(e) requires a "hearing" prior
to the judicial approval of a class action settlement. The
Court of Appeals has instructed that before a class action
settlement "can result in judicial ratification or rejection,
there must be a proceeding in open court, and the
document sought to be acted upon by the judicial power
will be placed on file and must become a public record."
United States v. Glens Falls Newspapers, Inc., 160 F.3d
853, 857 (2d Cir. 1998)(emphasis added). Accordingly,
the public has a presumption of access under the First
Amendment to the Settlement Transcript that is derived
from the public's capacity to attend the October 26, 1998
proceeding. See Lugosch, 435 F.3d at 120.


### III. First Amendment Balancing

Because the Court has determined that the "more
stringent" First Amendment analysis applies, continued
sealing of the documents must be supported by "specific,
on-the-record findings that sealing is necessary to
preserve higher values and only if the sealing order is
narrowly tailored to achieve that aim." Lugosch, 435 F.3d
at 124. "Broad and general findings by the trial court,
however, are not sufficient to justify closure." In re New
York Times Co., 828 F.2d 110, 116 (2d Cir. 1987). Courts
have found that cases in which disclosure would "reveal
details of an ongoing investigation, pose a risk to
witnesses, endanger national security, or reveal trade
secrets" may constitute an interest that warrants sealing.
Bernstein, 814 F.3d at 143. However, the Trump Parties
have not contended that any such interest exists in this
case.

**\*5** Rather, the Trump Parties argue that the "higher
values" that would be protected through continued sealing
of the documents at issue include (1) the general interest
in maintaining settlement agreements and (2) the parties'
reliance on the fact that the settlement agreement would

not be made public. (Trump Parties' Letter at 2).

However, a general interest in promoting the settlement of
cases does not justify sealing judicial records under the
First Amendment. See In re September 11 Litig., 723 F.
Supp. 2d at 532-33 ("The interest in furthering settlement
does not outweigh the strong common law and
constitutional presumptions of public access that attaches
to information bearing directly on my adjudication.").
Furthermore, the Court of Appeals for the Third Circuit
has noted that the "generalized interest in encouraging
settlements does not rise to the level of interests that we
have recognized may outweigh the public's common law
right of access," see Bank of Amer. Nat'l Trust & Savings
Ass'n v. Hotel Rittenhouse Assocs., 800 F.2d 339, 346
(3d Cir. 1986), much less the more demanding First
Amendment right of access.

The Trump Parties rely on Schoeps v. Museum of Modern
Art to argue that promoting settlement agreements
overcomes the presumption of access on the basis of the
Court's explanation that the "Second Circuit strongly
endorses the confidentiality of settlement agreements in
virtually all cases." 603 F. Supp. 2d 673, 676 (S.D.N.Y.
2009). However, Schoeps itself relied principally on
Glens Falls Newspapers, Inc., a case that concerned only
preliminary settlement materials with respect to which "
'the presumption of public access ... is very low or
nonexistent under either constitutional or common law
principles.' " 160 F.3d at 855 (quoting opinion of the
district court). The Court of Appeals noted that "access to
settlement discussions and documents has no value to
those monitoring the exercise of Article III judicial power
by the federal courts ... [because] [t]he judge cannot act
upon these discussions or documents until they are final."
Id. at 857. However, while draft settlement materials were
to remain under seal, the final settlement would be subject
to "a proceeding in open court, and the document sought
to be acted upon by the judicial power will be placed on
file and must become a public record." Id.

Here, the documents at issue are not incidental settlement
discussions but rather were relied upon by the Court in the
exercise of its Article III powers. Accordingly, the Trump
Parties' reliance on Schoeps and Glens Falls Newspapers,
Inc. is misplaced.

The Trump Parties also claim that their "reliance" on the
fact that the settlement terms and agreement would not be
made public is a higher value sufficient to defeat the right
of access, because it "gave the parties a level of certainty
and confidence that the settlement would remain
confidential in virtual perpetuity." (Trump Parties' Letter
at 2).

Hardy v. Kaszycki & Sons, Slip Copy (2017)

However, the Trump Parties' reliance on a sealing order does not overcome the First Amendment presumption of access. See In re September 11 Litig., 723 F. Supp. 2d at 532 (noting that "the court must be skeptical" of claims that settlement might not have occurred without a condition of confidentiality, "for 'if the case goes to trial, even more is likely to be disclosed' ") (quoting Pansy v. Borough of Stoudsburg, 23 F.3d 772, 788 (3d Cir. 1994) (internal quotation marks omitted)). When Hardy settled, the case had been pending for more than fifteen years and had already been tried once and reversed, necessitating a retrial. See Hardy v. Kaszycki & Sons Contractors, Inc., 870 F. Supp. 489, 491, 492-93 (S.D.N.Y. 1994)(comparing Hardy to the fictional and interminable legal proceedings in Jarndyce v. Jarndyce). The Trump Parties previously represented to the Court that, after so many years of litigation, the parties had reached "amicable terms" for settlement "without Court intervention"—making clear that the Trump Parties did not rely on assurances of confidentiality on the part of the district court to reach a settlement. (See Letter from Lawrence Rosen, Aug. 12, 2016, ECF No. 420); United States v. Erie Cty., 763 F.3d 235, 243 (2d Cir. 2014)(rejecting argument that the First Amendment presumption of access was overcome by need for "frank, and hence confidential, discussions among the parties" because settlement of the case had "already been reached.").

*6 Finally, the Trump Parties' reliance argument is particularly inapposite in the context of a class action settlement. Under Rule 23(e), a court must hold a hearing in open court on the subject of the proposed settlement, and the motion for approval of the settlement must be filed publicly. See Glens Falls Newspapers, Inc., 160 F.3d at 857. The Trump Parties cannot have a reliance interest in the confidentiality of the settlement agreement sufficient to overcome the First Amendment right of access where they were already required by the Federal Rules of Civil Procedure to disclose publicly the terms of the settlement agreement.

Accordingly, the Court finds no interests that can overcome the First Amendment presumption of access to the two court orders, the Settlement Transcript, and the plaintiffs' brief.


IV. Common Law Balancing
Because the sealing of the records at issue cannot be justified under the First Amendment framework, the Court need not address the common law presumption of access. However, even under this less stringent

framework, the Court would find that all of the records at issue should be unsealed pursuant to the common law.

Under the common law, sealing must "be supported by specific findings" that "the interests favoring non-access outweigh those favoring access." Amodeo I, 44 F.3d at 148. The burden is upon the parties opposing access "to demonstrate that the interests favoring non-access outweigh those favoring access." Id.

As described above, the Court of Appeals concluded that the weight of the common law presumption as applied to the two of court orders is of middling strength, and the Court has now found that the weight as applied to the Settlement Transcript and plaintiffs' brief is particularly strong.

The Trump Parties again rely on a generalized interest in promoting settlement and their reliance on the settlement's confidentiality as countervailing interests that outweigh the right of access under the common law. (Trump Parties' Letter at 2). However, the generalized interest in promoting settlement does not outweigh the public's common law right of access. See In re September 11, 723 F. Supp. 2d at 532; Bank of Amer. Nat'l Trust & Savings Ass'n, 800 F.2d at 346.

Furthermore, the Court does not find that reliance on the Court's sealing order is a sufficiently compelling countervailing interest where the parties did not rely on assurances of confidentiality by the Court in reaching a settlement. The Trump Parties cite LEAP Systems, Inc. v. MoneyTrax, Inc., 638 F.3d 216, 222 (3d Cir. 2011), a Third Circuit case stating that "LEAP's reliance on the District Court's assurances of confidentiality entirely reasonable and sufficient to outweigh the public's common law right of access." (Trump Parties' Letter at 2). However, LEAP Systems, Inc. also found that the district court's sealing order for settlement agreements was appropriate where the parties "would not have entered into the settlement agreements but for the Court's assurance of confidentiality." 638 F.3d at 222 (emphasis in original). As indicated above, supra at 14, the Trump Parties indicated that the parties were able to reach a settlement without relying on assurances from the Court that the settlement would remain confidential. Accordingly, LEAP Systems, Inc. provides no support for the assertion that the Trump Parties' reliance interest in confidentiality is sufficient to outweigh the common law presumption of access, even if it is only of middling strength. The Trump Parties cite no other precedent in support of their reliance argument.

Hardy v. Kaszycki & Sons, Slip Copy (2017)

**V. Attorneys' Fees**
**\*7** The Trump Parties also request that if the Court decides to unseal any portion of the four documents at issue that it redact the amount that was paid to plaintiff's counsel in legal fees. (Trump Parties' Letter at 3). They state, "those amounts are wholly irrelevant to the performance of the Court's Article III functions...."

As discussed earlier, Rule 23(e) requires the district court to approve a proposed class action settlement only "after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e). A proposed settlement in a class action may include an amount to be paid in attorneys' fees. Similar to other proposed terms and conditions of the settlement, a district court may not approve an award of attorneys' fees in a proposed class action settlement agreement that "exceed[s] what is 'reasonable' under the circumstances." Goldberger v. Integrated Resources, Inc., 209 F.3d 43, 47 (2d Cir. 2000) (citing Brown v. Phillips Petroleum Co., 838 F.2d 451, 455 (10th Cir. 1988); Savoie v. Merchants Bank, 166 F.3d 456, 460 (2d Cir. 1999)). "What constitutes a reasonable fee is properly committed to the sound discretion of the district court." Goldberger, 209 F.3d at 47 (citing Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 172 (2d Cir. 1998)).

To make a determination as to what amount is "reasonable[ ] and reasonably necessary for the litigation" in awarding attorneys' fees, a district court may look to information that the party seeking the award of fees has provided, such as "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation ...; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations" in making a reasonableness determination. Goldberger, 209 F.3d at 50 (quoting In re Union Carbide Corp. Consumer Prod. Bus. Sec. Litig., 724 F. Supp. 160, 163 (S.D.N.Y. 1989)).

Information relating to plaintiffs' attorneys' fees in the course of this litigation, including plaintiffs' attorney's qualifications, the type of work performed throughout the course of the litigation, and the rates that plaintiffs' lawyers charged constitutes a significant amount of the information in plaintiffs' brief. The plaintiffs provided this information for the purpose of allowing the court to determine that the amount plaintiffs' attorneys sought in fees was "reasonable."

As discussed earlier, a court's review of a proposed settlement agreement in a class action invokes its Article III powers. See In re September 11 Litig., 723 F. Supp. 2d at 532-33 (stating that a motion for approval of a settlement "invokes [the court's] Article III power"). Here, the court's review included an assessment of the amount that the plaintiffs and Trump Parties proposed be paid towards plaintiffs' attorneys' fees in connection with the settlement agreement. Therefore, the information in the plaintiffs' brief and the Settlement Transcript pertaining to the amount that the Trump Parties paid to the plaintiffs' lawyers in legal fees is not "wholly irrelevant" to the Court's Article III functions. The Trump Parties have not offered any other reason why such information should not be revealed in the event of unsealing, and therefore the Trump Parties' request to redact this information is denied.

**VI. Conclusion**
**\*8** Movants' request to unseal (1) the Settlement Transcript (dkt. no. 409); (2) the plaintiffs' brief filed on November 9, 1998 (dkt. no. 410); (3) the district court order approving the settlement dated December 30, 1998 (dkt. no. 411); and (4) the amended district court order approving the settlement dated February 9, 1999 (dkt. no. 412) is GRANTED.

The Clerk of Court is ORDERED to unseal (1) the Settlement Transcript (dkt. no. 409); (2) the plaintiffs' brief filed on November 9, 1998 (dkt. no. 410); (3) the district court order approving the settlement dated December 30, 1998 (dkt. no. 411); and (4) the amended district court order approving the settlement dated February 9, 1999 (dkt. no. 412).

SO ORDERED.

**All Citations**

Slip Copy, 2017 WL 6805707

---

**End of Document**                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.