**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RACHEL WITLIEB BERNSTEIN, ANDREA MACKRIS, AND REBECCA GOMEZ DIAMOND,<br><br>　　　　　　Plaintiffs,<br><br>v.<br><br>BILL O'REILLY AND FOX NEWS NETWORK LLC,<br><br>　　　　　　Defendants. | Civil Action No. 1:17-cv-9483 (DAB) |

**MEMORANDUM IN SUPPORT OF THE MOTION OF**
**FOX NEWS NETWORK, LLC, TO DISMISS OR, IN THE ALTERNATIVE,**
**TO COMPEL MEDIATION AND ARBITRATION**

WILLIAMS & CONNOLLY LLP
Kevin T. Baine
Joseph M. Terry (*pro hac vice*)
Jonathan S. Sidhu (*pro hac vice*)
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000

650 Fifth Avenue
Suite 1500
New York, N.Y. 10019

*Attorneys for Fox News Network, LLC*

March 20, 2018

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

BACKGROUND .................................................................................................... 2

    A.    Plaintiffs' Prior Claims and Settlement Agreements. ...................................... 2

    B.    Statements by 21st Century Fox and Rupert Murdoch. ................................. 3

    C.    Statements by Bill O'Reilly. ....................................................................... 5

    D.    The *New York Times'* Account of Plaintiff Bernstein's Settlement. ......................................................................................................... 6

ARGUMENT ......................................................................................................... 6

I.      THE COMPLAINT FAILS TO STATE A CLAIM AGAINST FOX NEWS BASED UPON THE STATEMENTS OF ITS PARENT AND EXECUTIVE CHAIRMAN. .................................................................... 6

    A.    Fox News Cannot Be Held Liable for the Statement of Its Parent. ............... 7

    B.    The Challenged Statements Are Not Defamatory. ......................................... 9

        1.    21st Century Fox's Statement to New York Times. ......................... 10

        2.    Murdoch's Statement. ..................................................................... 12

    C.    The Challenged Statements Are Substantially True. .................................... 14

II.    FOX NEWS IS NOT VICARIOUSLY LIABLE FOR BILL O'REILLY'S STATEMENTS. ................................................................. 16

    A.    Fox News Cannot Be Liable for O'Reilly's Statements after He Was Fired. ..................................................................................................... 17

    B.    O'Reilly Made His Statements for His Own Personal Benefit. .................... 18

III.   FOX NEWS DID NOT BREACH ITS CONTRACT WITH BERNSTEIN. ................................................................................................ 19

IV.   FOX NEWS HAS NOT VIOLATED THE COVENANT OF GOOD FAITH AND FAIR DEALING. ............................................................... 20

V.    THE CLAIMS BY MACKRIS AND DIAMOND MUST BE STAYED FOR RESOLUTION BY MEDIATION AND, IF NECESSARY, ARBITRATION. ..................................................................................... 20

    A.    The Question of Arbitrability Should Be Decided by an Arbitrator. ................................................................................................... 21

    B.    Mackris and Diamond's Claims Fall Within the Scope of the Agreements. ................................................................................................. 22

1.    Both Agreements Contain Broad Arbitration Clauses That
      Trigger a Presumption of Arbitrability. .............................................22

2.    The Allegations in the Complaint Touch Matters Covered
      by Both Agreements and Thus Must Be Arbitrated. ........................24

CONCLUSION.......................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

### FEDERAL CASES

*Adelson v. Harris*, 973 F. Supp. 2d 467 (S.D.N.Y. 2013), *aff'd per curiam*, 876
    F.3d 413 (2d Cir. 2017)...................................................................................7

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .........................................................................7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .........................................................7

*Biro v. Conde Nast*, 883 F. Supp. 2d 441 (S.D.N.Y. 2012)....................................14, 15

*Biro v. Conde Nast*, 963 F. Supp. 2d 255 (S.D.N.Y. 2013), *aff'd*, 807 F.3d 541 (2d
    Cir. 2015) ...............................................................................................2, 7

*Cap Gemini Ernst & Young U.S. LLC v. Arentowicz*, No. 04-cv-0299, 2004 WL
    1386145 (S.D.N.Y. June 22, 2004)...............................................................20, 23

*Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163 (2d Cir. 2000)............................9

*Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087 (4th Cir. 1993)....................................15

*Chau v. Lewis*, 771 F.3d 118 (2d Cir. 2014)...................................................... _passim_

*Collins & Aikman Prod. Co. v. Building Systems Inc.*, 58 F.3d 16 (2d Cir. 1995)......................23

*Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205 (2d Cir. 2005) ............................21, 22

*Cort v. Marshall's Dep't Store*, No. 14-cv-7385, 2015 WL 9582426 (E.D.N.Y.
    Dec. 29, 2015)..............................................................................................16

*Cortes v. Twenty-First Century Fox Am., Inc.*, No. 17 CIV. 5634 (RWS), 2018
    WL 348862 (S.D.N.Y. Jan. 9, 2018) .............................................................19

*Cruz v. FXDirectDealer, LLC*, 720 F.3d 115 (2d Cir. 2013).......................................20

*Cruz v. Marchetto*, No. 11-cv-8378, 2012 WL 4513484 (S.D.N.Y. Oct. 1, 2012) ......17

*Cummings v. Consumer Budget Counseling, Inc.*, No. 11-cv-3989, 2012 WL
    4328637 (E.D.N.Y. Sept. 19, 2012)................................................................23

*Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985).........................................21

*Duraku v. Tishman Speyer Properties, Inc.*, 714 F. Supp. 2d 470 (S.D.N.Y. 2010)....................23

*Ello v. Singh*, 531 F. Supp. 2d 552 (S.D.N.Y. 2007), *as amended* (Nov. 13, 2007) ....17

*Emilio v. Sprint Spectrum L.P.*, 508 F. App'x 3 (2d Cir. 2013) ...................................22

*Euro Pac. Capital Inc. v. Bohai Pharm. Grp., Inc.*, No. 15-cv-4410, 2016 WL 297311 (S.D.N.Y. Jan. 21, 2016)........................................................................3

*Favors v. Triangle Servs., Inc.*, 207 F. Supp. 3d 197 ...................................................23

*Fleck v. E.F. Hutton Grp., Inc.*, 891 F.2d 1047 (2d Cir. 1989) ....................................24

*Garrison v. Toshiba Bus. Sols. (USA) Inc.*, 907 F. Supp. 2d 301 (E.D.N.Y. 2012) ..............17, 18

*Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840 (2d Cir. 1987) ................................24

*Gilman v. Spitzer*, 902 F. Supp. 2d 389 (S.D.N.Y. 2012), *aff'd*, 538 F. App'x 45 (2d Cir. 2013).......................................................................................................9

*Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991)....................................20

*Giuffre v. Maxwell*, 165 F. Supp. 3d 147 (S.D.N.Y. 2016) .........................................10

*Great Lengths Universal Hair Extensions S.r.L. v. Gold,* No. 16-cv-193, 2017 WL 1731184 (S.D.N.Y. Mar. 29, 2017) .....................................................................25

*Green v. Cosby*, 138 F. Supp. 3d 114 (D. Mass. 2015) ...............................................10

*Greenberg v. Ameriprise Fin. Servs., Inc.*, No. 16-cv-3589, 2016 WL 3526025 (E.D.N.Y. Mar. 31, 2016) ......................................................................................25

*Guan N. v. NYC Dep't of Educ.*, No. 11-cv-4299, 2013 WL 67604 (S.D.N.Y. Jan. 7, 2013) ................................................................................................................17

*Hamzaraj v. ABM Janitorial Ne. Inc.*, No. 15-cv-2030, 2016 WL 3571387 (S.D.N.Y. June 27, 2016)......................................................................................24

*In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113 (2d Cir. 2011) ..................22

*In re Refco, Inc. Sec. Litig.*, No. 07-cv-11604, 2008 WL 2185676 (S.D.N.Y. May 21, 2008) ..............................................................................................................23

*Indep. Living Aids, Inc. v. Maxi-Aids, Inc.*, 981 F. Supp. 124 (E.D.N.Y. 1997) ..........10

*Kalyanaram v. Am. Ass'n of Univ. Professors at N. Y. Inst. of Tech., Inc.*, 742 F.3d 42 (2d Cir. 2014)............................................................................................4

*Kavanagh v. Zwilling*, 997 F. Supp. 2d 241 (S.D.N.Y.), *aff'd*, 578 F. App'x 24 (2d Cir. 2014) .................................................................................................................6

*Maskaev v. World Boxing Council*, No. 07-cv-3147, 2007 WL 2825728 (S.D.N.Y. Sept. 24, 2007) ......................................................................................................23

*McKee v. Cosby*, 236 F. Supp. 3d 427 (D. Mass. 2017) .............................................10

*McNamee v. Clemens*, 762 F. Supp. 2d 584 (E.D.N.Y. 2011)......................................................10

*McNamee v. Clemens*, No. 09-cv-1647, 2013 WL 3968740 (E.D.N.Y. July 31, 2013) ...........................................................................................................................10

*Mina v. Foot Locker, Inc.*, No. 09-cv-0472, 2009 WL 3241551 (S.D.N.Y. Sept. 30, 2009) .................................................................................................................................3

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983)................................22

*NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010 (2d Cir. 2014) ...............................21

*Payoda, Inc. v. Photon Infotech, Inc.*, No. 14-cv-04103, 2015 WL 1325562 (N.D. Cal. Mar. 24, 2015) ..........................................................................................................8

*Perks v. Town of Huntington*, 251 F. Supp. 2d 1143 (E.D.N.Y. 2003) ...........................16, 17, 18

*Ross Univ. Sch. of Med., Ltd. v. Brooklyn-Queens Health Care, Inc.*, No. 09-cv-1440, 2012 WL 6091570 (E.D.N.Y. Dec. 7, 2012), *report and recommendation adopted in relevant part*, 2013 WL 1334271 (E.D.N.Y. Mar. 28, 2013). ...............................................................................................................................8

*Sharma v. Oriol*, No. 5-cv-2727 2005 WL 1844710 (S.D.N.Y. Aug. 3, 2005).............................25

*Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115 (2d Cir. 2003)..........................................21

*Small Bus. Bodyguard Inc. v. House of Moxie, Inc.*, 230 F. Supp. 3d 290 (S.D.N.Y. 2017) ......................................................................................................................13

*Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406 (2d Cir. 2008) ..........................................4

*Stern v. News Corp.*, No. 08-cv-7624, 2010 WL 5158635 (S.D.N.Y. Oct. 14, 2010), *report and recommendation adopted*, 2010 WL 5158637 (S.D.N.Y. Dec. 16, 2010)....................................................................................................................................8

*Tannerite Sports, LLC v. NBCUniversal Media LLC*, 135 F. Supp. 3d 219 (S.D.N.Y. 2015), *aff'd*, 864 F.3d 236 (2d Cir. 2017) .........................................................1, 15

*Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236 (2d Cir. 2017) ...........9, 14, 15

*Ukshini v. Comity Realty Corp.*, No. 15-cv-6214, 2016 WL 1733468 (S.D.N.Y. Apr. 29, 2016) ........................................................................................................................23

*White v. Fraternal Order of Police*, 909 F.2d 512 (D.C. Cir. 1990) ............................................15

*Williby v. Hearst Corp.*, No. 5:15-cv-02538, 2017 WL 1210036 (N.D. Cal. Mar. 31, 2017) ..................................................................................................................................8

*Yours2u Ltd. v. Blue Phx. Media Inc.*, No. 16-cv-3620, 2017 WL 2562334 (S.D.N.Y. June 5, 2017)................................................................................................................22

## STATE CASES

*Davis v. Boeheim*, 22 N.E.3d 999 (N.Y. 2014)...............................................................10

*Davis v. Nyack Hosp.*, 13 N.Y.S.3d 371 (App. Div. 2015) ..........................................19

*Franklin v. Daily Holdings, Inc.*, 21 N.Y.S.3d 6 (App. Div. 2015).................................8

*Khan v. N. Y. Times Co.*, 710 N.Y.S.2d 41 (App. Div. 2000) ........................................7

*Mann v. Abel*, 885 N.E.2d 884 (N.Y. 2008) ................................................................15

*Porter v. Saar*, 688 N.Y.S. 2d 137 (App. Div. 1999) ..................................................10

*Seymour v. New York State Elec. & Gas Corp.*, 627 N.Y.S.2d 466 (App. Div.
1995) ...........................................................................................................................18

*Stepanov v. Dow Jones & Co.*, 987 N.Y.S.2d 37 (App. Div. 2014) .............................15

*Three Amigos SJL Rest., Inc. v. CBS News Inc.*, 65 N.E.2d 35 (N.Y. 2016)................13

## STATUTES

9 U.S.C. §§ 3, 4.............................................................................................................20

## OTHER AUTHORITIES

2 Robert D. Sack, *Sack on Defamation: Libel, Slander and Related Problems* §
16:2.1 (5th ed. 2017) ....................................................................................................7

## Introduction

The Plaintiffs in this action are three individuals who long ago entered into settlement agreements resolving allegations that they were sexually harassed or otherwise mistreated by former Fox News host Bill O'Reilly.  Plaintiff Bernstein settled her claim fifteen years ago; Mackris thirteen years ago; and Diamond six years ago.  They now claim that Fox News Network, LLC ("Fox News") defamed them when its ultimate corporate parent, 21st Century Fox ("21CF"), and its Executive Chairman, Rupert Murdoch, in 2017, made the most general of public statements in response to questions about sexual harassment claims at the company, though none of the alleged statements mentioned any of the plaintiffs, provided any details of their settlements, or cast any doubt on the merits of their claims.  Each of the plaintiffs also seeks to hold Fox News liable for statements made by O'Reilly in his personal capacity, including statements made after he was terminated by Fox News.  Bernstein contends that these statements also breached the non-disparagement and confidentiality provisions of her settlement agreement.

Plaintiffs' claims are wholly without merit.  The statements at issue were not made by Fox News, did not refer to plaintiffs, and are neither defamatory nor disparaging.  Moreover, the statements at issue were true and there is no indication on the face of the statements that the speaker "intended or endorsed" any allegedly defamatory implication, as the law requires. *Tannerite Sports, LLC v. NBCUniversal Media LLC*, 135 F. Supp. 3d 219, 232 (S.D.N.Y. 2015) (internal quotation marks omitted), *aff'd*, 864 F.3d 236 (2d Cir. 2017).

The statements by 21CF and Rupert Murdoch concern a matter of legitimate public interest:  the extent to which a public company parent knew about matters occurring at a subsidiary, and the impact that the recent revelations about Fox News were having on the company's business.  These statements are fully protected by the First Amendment, and for that reason it is vitally important that the claims against Fox News be dismissed at the outset.  *See,*

1

*e.g.*, *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 279 (S.D.N.Y. 2013) ("forcing defamation defendants to incur unnecessary costs can chill the exercise of constitutionally protected freedoms." (internal quotation marks omitted)), *aff'd*, 807 F.3d 541 (2d Cir. 2015).

The claims of Mackris and Diamond cannot proceed for an additional reason: they expressly agreed, in their settlement agreements, to mediate and then arbitrate any issues related to their claims or their settlement agreements. That Mackris and Diamond, unlike Bernstein, who has no arbitration clause, artfully chose not to plead a breach of those agreements (or even mention their existence) is irrelevant. Such gamesmanship does not alter the plain fact that proof of their claims will require litigating the very matters that they agreed to arbitrate. Accordingly, those claims, should be stayed in favor of arbitration.

## <u>BACKGROUND</u>

### A.    **Plaintiffs' Prior Claims and Settlement Agreements.**

Plaintiff Bernstein does not allege that she was sexually harassed but rather that defendant O'Reilly "abuse[d] and mistreat[ed]" her in an unspecified manner during her employment with Fox News. *See* Am. Compl. ¶¶ 23–26. On July 10, 2002, Bernstein resolved that claim through a settlement agreement with Fox News releasing Fox from all claims she may have had "arising from [her] employment and termination from Fox." Ex. 1 at 1–2. Her agreement contained a non-disparagement and confidentiality provision, which forbid either party from disclosing "to any person the contents of th[e] Agreement or the facts or allegations that gave rise to th[e] Agreement." Am. Compl. ¶ 11.

The Amended Complaint alleges that plaintiffs Mackris and Diamond executed

Settlement Agreements.  Am. Compl. ¶¶ 24, 27, 28.  Those Settlement Agreements, with Fox

News and O'Reilly, contained mandatory arbitration clauses.  Mackris's agreement states:[1]

> Any action arising out of or relating to this Agreement must only be brought and prosecuted before an arbitration panel in New York selected by and in accordance with the rules of the American Arbitration Association to the extent modified herein. . . .

> Except in circumstances where injunctive or other emergency relief is sought, the parties agree that any dispute arising out of or relating to this Agreement must first be submitted for mediation . . . before a party may commence an arbitration or court proceeding.

Ex. 2 at 8–9.

> Diamond's agreement states in relevant part:

> Except for the availability of injunctive relief, any dispute concerning this Agreement or anything else related to the Claims shall be brought in the first instance to [a] mediator . . . at JAMS. In the event that the dispute is not resolved through mediation, the matter shall be resolved through arbitration at JAMS, which decision shall be final and binding and not appealable to any court.

Ex. 3 at 6.

### B.    Statements by 21st Century Fox and Rupert Murdoch.

On April 1, 2017, the *New York Times* published an article reporting that five women

received payments from O'Reilly or Fox News to resolve claims of sexual harassment or

misconduct by O'Reilly.  Am. Compl. ¶ 13.  The article, "Bill O'Reilly Thrives at Fox News,

Even as Harassment Settlements Add Up," *id.*, explained that "[a]bout $13 million has been paid

out over the years to address complaints from women about O'Reilly's behavior.  He denies the

claims have merit."  Ex. 4.[2]

---

[1] This Court may take judicial notice of these settlement agreements in considering whether to compel arbitration.  *See, e.g.*, *Euro Pac. Capital Inc. v. Bohai Pharm. Grp., Inc.*, No. 15-cv-4410, 2016 WL 297311, at *3 (S.D.N.Y. Jan. 21, 2016); *see also Mina v. Foot Locker, Inc.*, No. 09-cv-0472, 2009 WL 3241551, at *1 (S.D.N.Y. Sept. 30, 2009).

[2] Because this article was "referred to" and quoted extensively in the Amended Complaint, this Court may properly consider, or take judicial notice of, the entire article on a motion to dismiss.

The article does not contain any comments attributed to defendant Fox News but does purport to quote a statement provided by Fox News's indirect parent, the global media company, 21CF.  The *Times* reported that representatives of 21CF would not discuss "specific accusations" against O'Reilly, but that it had "addressed the issue" with him.  Ex. 4.  The article then published a statement by 21CF addressing its awareness of and response to the allegations against O'Reilly, who was then an employee of one of its subsidiaries:

> 21st Century Fox takes matters of workplace behavior very seriously.  Notwithstanding the fact that no current or former Fox News employee ever took advantage of the 21st Century Fox hotline to raise a concern about Bill O'Reilly, even anonymously, we have looked into these matters over the last few months and discussed them with Mr. O'Reilly.  While he denies the merits of these claims, Mr. O'Reilly has resolved those he regarded as his personal responsibility. Mr. O'Reilly is fully committed to supporting our efforts to improve the environment for all our employees at Fox News.

Ex. 4; Am. Compl. ¶ 22.  Notwithstanding the fact that this statement did not mention any of the plaintiffs or discuss the merits or circumstances of their claims, the Amended Complaint alleges it defamed each of the plaintiffs and breached the confidentiality and non-disparagement provisions of Bernstein's agreement.

Plaintiffs also allege that they were defamed, and Bernstein alleges her confidentiality provision was breached, by the following statement made by Rupert Murdoch in response to a question posed to him in a December 14, 2017 interview on Sky News in London regarding the effect of sexual harassment allegations generally on the business.  Am Compl. ¶ 59.

> **Interviewer**:  How harmful has the whole raft of allegations about sexual harassment at Fox News been for the business?  Has that--?
>
> **Murdoch**:  No, that's all nonsense.  There was a problem with our chief executive [Roger Ailes] sort of over the years, but isolated incidents.  As soon as we investigated, he was out of the place in hours--well, three or four days, and there's been nothing else since then.  Now of course, but that was largely political because we're conservative.  Well, the liberals are going down the drain.  NBC is in deep trouble.  CBS, their stars,

---

*See Kalyanaram v. Am. Ass'n of Univ. Professors at N. Y. Inst. of Tech., Inc.*, 742 F.3d 42, 44 n.1 (2d Cir. 2014); *see also Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008).

you know, I think it's a very interesting subject we could go into at length, but I mean there are really bad cases that people should be moved aside and there are other things which probably amount to a bit of flirting.  You know?

Ex. 5 (transcript of Sky News interview); https://news.sky.com/story/murdoch-fox-returning-to-

our-roots-in-524bn-disney-deal-11170762 (video of Sky News interview).

**C.      Statements by Bill O'Reilly.**

Plaintiffs also complain of the following statement attributed to O'Reilly in the *New York*

*Times* article:

Just like other prominent and controversial people, I'm vulnerable to lawsuits from individuals who want me to pay them to avoid negative publicity. In my more than 20 years at Fox News Channel, no one has ever filed a complaint about me with the Human Resources Department, even on the anonymous hotline.

But most importantly, I'm a father who cares deeply for my children and who would do anything to avoid hurting them in any way. And so I have put to rest any controversies to spare my children.

The worst part of my job is being a target for those who would harm me and my employer, the Fox News Channel. Those of us in the arena are constantly at risk, as are our families and children. My primary efforts will continue to be to put forth an honest TV program and to protect those close to me.

Ex. 4; *see also* Am. Compl. ¶ 19.[3]  Plaintiffs also allege that O'Reilly defamed them in

statements that he made in September and October 2017 (after he was fired by Fox News) to *The*

*Hollywood Reporter*, Am. Compl. ¶¶ 40–42, in response to another *New York Times* article, *id.*

¶¶ 43–47, during public appearances to promote a new book, *id.* ¶ 51, on his podcast and on his

website, *id.* ¶ 53, 55, 58, and in a recording reported in the *New York Times*, *id.* ¶ 54.

Plaintiffs allege generally that Fox News "participated in and authorized" O'Reilly's

statements, including ones he made after he was fired.  No specific facts are alleged to support

that conclusory allegation.

---

[3] Plaintiffs allege O'Reilly defamed all three plaintiffs in a statement published by *The Hollywood Reporter* on April 21, 2017, identical to this one published in the *New York Times*. Am. Compl. ¶ 20.

**D.** **The *New York Times'* Account of Plaintiff Bernstein's Settlement.**

Bernstein claims that the defendants violated the confidentiality provision of her settlement agreement.  That claim appears to be based, at least in part, on the *New York Times'* account of her claim.  According to the *Times*, Bernstein's claim arose out of an incident in 2002, "when Mr. O'Reilly stormed into the newsroom and screamed at a young producer, according to current and former employees, some of whom witnessed the incident."  Am. Compl.  ¶ 13; *see also* Ex. 4.  "Shortly thereafter," the *Times* reported, Bernstein "left the network with a payout and bound by a confidentiality agreement, people familiar with the deal said. The exact amount she was paid is not known, but it was far less than the other settlements. The case did not involve sexual harassment."  *Id.*  The Amended Complaint alleges that plaintiff Bernstein was not the source of the information in that article.  It does not, however, allege that Fox News was the source.

## ARGUMENT

**I.    THE COMPLAINT FAILS TO STATE A CLAIM AGAINST FOX NEWS BASED UPON THE STATEMENTS OF ITS PARENT AND EXECUTIVE CHAIRMAN.**

Under New York law,[4] a plaintiff must plead the following five elements for a claim of defamation by libel:  "1) a written defamatory statement of fact concerning the plaintiff; 2) publication to a third party; 3) fault (either negligence or actual malice depending on the status of the libeled party); 4) falsity of the defamatory statement; and 5) special damages or *per se* actionability (*i.e.*, that the statement is defamatory on its face)."  *Kavanagh v. Zwilling*, 997 F. Supp. 2d 241, 248 (S.D.N.Y.) (brackets and internal quotation marks), *aff'd*, 578 F. App'x 24 (2d Cir. 2014).  To survive a motion to dismiss, plaintiffs must plead sufficient facts to state a claim

---

[4] New York law should apply because plaintiffs allege that is where the "acts complained of occurred," Am. Compl. ¶ 9, and with respect to Bernstein, her contract provides that New York law governs, *id.*

for relief that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Allegations

must raise a right to relief beyond a speculative level.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

555 (2007).

"Dismissal of defamation suits for failure to state a . . . claim upon which relief may be

granted occurs with relative frequency," because "unlike in most litigation, in a libel suit the

central event—the communication about which the suit has been brought—is ordinarily before

the judge at the pleading stage."  2 Robert D. Sack, *Sack on Defamation: Libel, Slander and*

*Related Problems* § 16:2.1, at 16-3–4 (5th ed. 2017).  It is particularly important that libel claims

be dismissed when warranted, because the mere pendency of a libel suit puts a price on the

exercise of First Amendment rights.  *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 279 (S.D.N.Y.

2013); *see also Adelson v. Harris*, 973 F. Supp. 2d 467, 481 (S.D.N.Y. 2013) ("Because a

defamation suit 'may be as chilling to the exercise of First Amendment freedoms as fear of the

outcome of the lawsuit itself,' courts should, where possible, resolve defamation actions at the

pleading stage." (quoting *Wash. Post Co. v. Keogh*, 365 F.2d 965, 968 (D.C. Cir. 1966))), *aff'd*

*per curiam*, 876 F.3d 413 (2d Cir. 2017).

A.    **Fox News Cannot Be Held Liable for the Statement of Its Parent**.

The first allegedly defamatory statement is one issued by Fox News's ultimate corporate

parent, 21CF, a global media company that includes film studios and television businesses

around the world.  The statement addressed 21CF's awareness and response to allegations of

sexual harassment by an employee of one of its many subsidiaries.  It was not issued by Fox

News, did not purport to be on behalf of Fox News, and did not address Fox News's response to

the allegations.

"It is axiomatic that a defendant cannot be held liable for a libelous statement that it did

not write or publish."  *Khan v. N. Y. Times Co.*, 710 N.Y.S.2d 41, 46 (App. Div. 2000).  It is

7

equally well established that a subsidiary cannot be held liable for the acts of its parent absent allegations sufficient to pierce the corporate veil.  *See, e.g.*, *Ross Univ. Sch. of Med., Ltd. v. Brooklyn-Queens Health Care*, *Inc.*, No. 09-cv-1440, 2012 WL 6091570, at *22 (E.D.N.Y. Dec. 7, 2012), *report and recommendation adopted in relevant part*, 2013 WL 1334271 (E.D.N.Y. Mar. 28, 2013).

   Implicitly recognizing that a subsidiary is not liable for the acts of its parent, plaintiffs allege that Fox News made this statement "through its parent."  Am. Compl. ¶ 22.  But that boilerplate allegation is not nearly enough to pierce the corporate veil.  Plaintiffs have pled no facts to suggest that Fox News had any involvement in the issuance of this statement by its corporate parent, nor have they alleged any facts that would establish that Fox News is merely the alter ego of its parent.  Courts routinely dismiss defamation claims in such circumstances. *See Payoda, Inc. v. Photon Infotech, Inc.*, No. 14-cv-04103, 2015 WL 1325562, at *3 (N.D. Cal. Mar. 24, 2015) (failure to plead proper alter ego allegations required dismissal of claim against subsidiary); *Cf. Franklin v. Daily Holdings, Inc.*, 21 N.Y.S.3d 6, 14 (App. Div. 2015) (plaintiff failed to plead defamation for statements made by subsidiary where the complaint only contains conclusory statements of alter ego, instrumentality and agency); *Williby v. Hearst Corp.*, No. 5:15-cv-02538, 2017 WL 1210036, at *4 (N.D. Cal. Mar. 31, 2017) ("Liability for a corporate parent . . . cannot be imputed simply by virtue of an individual's employment with an indirect subsidiary to the parent entity."); *Stern v. News Corp.*, No. 08-cv-7624, 2010 WL 5158635, at *4 (S.D.N.Y. Oct. 14, 2010) ("News Corporation argues that it is not a proper party to Stern's defamation claims arising from the *New York Post* article because it does not publish the *Post* and cannot be held liable for the tortious acts of a subsidiary. . . . [T]his Court agrees."), *report and recommendation adopted*, 2010 WL 5158637 (S.D.N.Y. Dec. 16, 2010).

**B.     The Challenged Statements Are Not Defamatory.**

"Whether particular words are defamatory presents a legal question to be resolved by the courts in the first instance." *Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 177 (2d Cir. 2000) (brackets and internal quotation marks omitted).  Likewise, the court must determine in the first instance whether an allegedly defamatory statement is "of and concerning" the plaintiff. *Gilman v. Spitzer*, 902 F. Supp. 2d 389, 394–95 (S.D.N.Y. 2012) ("Whether a challenged statement reasonably can be understood as of and concerning the plaintiff is a question of law for the Court, which 'should ordinarily be resolved at the pleading stage.'" (quoting *Church of Scientology Int'l v. Behar*, 238 F.3d 168, 173 (2d Cir. 2001))), *aff'd*, 538 F. App'x 45 (2d Cir. 2013).

A defamatory statement is one that "exposes an individual to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation or disgrace, or induces an evil opinion of one in the minds of right-thinking persons, and deprives one of their confidence and friendly intercourse in society." *Chau v. Lewis*, 771 F.3d 118, 127 (2d Cir. 2014) (alterations and internal quotation marks omitted).  To be actionable, a statement must "do more than cause discomfort or affront; the statement is measured not by the sensitivities of the maligned, but the critique of reasonable minds that would think the speech attributes *odious or despicable* characterizations to its subject." *Id.* (emphasis added).  And it cannot be read in insolation.  "When a court interprets a publication in an action for defamation, the entire publication, as well as the circumstances of its issuance, must be considered in terms of its effect upon the ordinary reader." *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 243 (2d Cir. 2017) (brackets and internal quotation marks omitted).

None of the statements by 21CF or Rupert Murdoch makes specific reference to the plaintiffs, and none is defamatory.

### 1.   21st Century Fox's Statement to New York Times.

Plaintiffs complain that the 21CF statement defamed them in two respects: (a) by stating that O'Reilly "denies these claims," Am. Compl. ¶ 23, and (b) by stating that "no current or former Fox News employee ever took advantage of the 21CF hotline to raise a concern about Bill O'Reilly," *id.* ¶ 24. Both of those statements are indisputably true, and neither is defamatory of these plaintiffs.

a.   It is not defamatory for the subject of a claim to deny it; that happens every day in litigation, and the mere denial does not mean that the complaining party is a liar. Through this motion, for example, Fox denies the merits of the plaintiffs' claims in this case, but it does not thereby accuse them of "odious or despicable" behavior. *Chau*, 771 F.3d at 127. General denials are simply not defamatory. *See Porter v. Saar*, 688 N.Y.S. 2d 137, 139 (App. Div. 1999) ("The comments attributed to defendant Coopchik in *The New York Post* were in the nature of a general denial of plaintiff Gray's accusations of misconduct, not an attack on plaintiffs."); *Indep. Living Aids, Inc. v. Maxi-Aids, Inc.*, 981 F. Supp. 124, 128 (E.D.N.Y. 1997); *see also McNamee v. Clemens*, No. 09-cv-1647, 2013 WL 3968740, at *3 (E.D.N.Y. July 31, 2013) ("General denials of accusations are not actionable as defamation."); *McKee v. Cosby*, 236 F. Supp. 3d 427, 444 n.16 (D. Mass. 2017).[5]

---

[5] *Compare* Am. Compl. ¶ 22, *with Giuffre v. Maxwell*, 165 F. Supp. 3d 147 (S.D.N.Y. 2016) (statements that sexual abuse claims were "obvious lies" and "shown to be untrue" survived a motion to dismiss); *Green v. Cosby*, 138 F. Supp. 3d 114, 132–136 (D. Mass. 2015) (defendant's statement that sexual assault allegations were a "discredited accusation" and an "absurd fabrication" could have defamatory meaning to survive a motion to dismiss); *Davis v. Boeheim*, 22 N.E.3d 999, 1006 (N.Y. 2014) ("specific, easily understood language" communicating that plaintiffs had "lied, their motive was financial gain" has defamatory meaning); *McNamee v. Clemens*, 762 F. Supp. 2d 584, 602 (E.D.N.Y. 2011) (statements that were defamatory "go beyond a general denial of accusations or rhetorical name calling," were "direct and often forcefully made" and "there was nothing loose or vague about them").

10

Moreover, Fox did not say that *it* denied the merits of any claims—it merely noted that O'Reilly did.  And that is not alleged to be false.  Moreover, the full context in which O'Reilly's denial appears makes clear that Fox was not saying anything to disparage these plaintiffs.  The statement reads in relevant part:

> we have looked into these matters over the last few months and discussed them with Mr. O'Reilly. While he denies the merits of these claims, Mr. O'Reilly has resolved those he regarded as his personal responsibility. Mr. O'Reilly is fully committed to supporting our efforts to improve the environment for all our employees at Fox News.

Ex. 4; Am. Compl. ¶ 22.  In other words, O'Reilly had acknowledged responsibility warranting a settlement, and the company was working to "improve the environment" for its employees.  No one could reasonably understand that to mean that these plaintiffs—who were not even mentioned and whose claims the *Times* noted were settled—had fabricated claims.  The statement is simply not "reasonably susceptible to a defamatory connotation."  *Chau*, 771 F.3d at 127.

      b.     Plaintiffs allege that 21CF "falsely" stated that they "did not complain" about O'Reilly, thereby portraying them as "liars and extortionists."  Am. Compl.  ¶¶ 24, 30.  That is a mischaracterization.  The statement was issued by 21CF, the parent company of Fox News, and it specifically addressed 21CF's awareness of and response to the allegations against O'Reilly.  21CF did not say that plaintiffs never complained to *Fox News*, their employer.  It merely noted that "no current or former Fox News employee ever took advantage of the *21st Century Fox* hotline to raise a concern about Bill O'Reilly"—by way of explaining why the *parent company* had only been "look[ing] into these matters over the last few months."  This cannot reasonably be construed as calling the plaintiffs "liars and extortionists," as plaintiffs allege.  *Id.* ¶ 30.

      Plaintiff Bernstein alleges that there was no hotline when she was employed.  *Id.* ¶ 25.  But 21CF's statement did not refer to Bernstein in particular.  Its statement was a general response to complaints made against O'Reilly mentioned in the *New York Times* article, two of

which occurred in 2016, more than a decade after Bernstein's 2002 settlement. The statement certainly did not accuse her (or anyone) of failing to report her claim at all. To the contrary, the 21CF statement was presented in the context of a report that made clear that Bernstein reported her claim immediately to Fox News:

> Fox News has been aware of complaints about inappropriate behavior by Mr. O'Reilly since at least 2002, when Mr. O'Reilly stormed into the newsroom and screamed at a young producer, according to current and former employees, some of whom witnessed the incident.
>
> Shortly thereafter, the woman, Rachel Witlieb Bernstein, left the network with a payout and bound by a confidentiality agreement . . . .

Am. Compl. ¶ 13; Ex. 4. In fact, the *Times* article in which the 21CF statement appeared made clear that all of these plaintiffs lodged complaints at some level—and that those complaints were settled.

In sum, the 21CF statement cannot reasonably be construed to accuse these plaintiffs of "odious or despicable" conduct. *Chau*, 771 F.3d at 127.

### 2.      Murdoch's Statement.

Plaintiffs allege that they were defamed by Murdoch's statement on Sky News. But that statement was not "of and concerning" these plaintiffs in particular, and it did not cast doubt on the validity of their claims—much less on their character. Murdoch was not asked about any claims in particular, but rather about the *impact* of the claims on Fox News's *business*. The relevant exchange was as follows:

**Interviewer**: How harmful has the whole raft of allegations about sexual harassment at Fox News been *for the business*? Has that--?

**Murdoch**: No, that's all nonsense. There was a problem with our chief executive [Roger Ailes] sort of over the years, but isolated incidents. As soon as we investigated, he was out of the place in hours--well, three or four days, and there's been nothing else since then. Now of course, but that was largely political because we're conservative. Well, the liberals are going down the drain. NBC is in deep trouble. CBS, their stars,

12

> you know, I think it's a very interesting subject we could go into at length, but I mean there are really bad cases that people should be moved aside and there are other things which probably amount to a bit of flirting.  You know?

Ex. 5 (transcript of Sky News interview); https://news.sky.com/story/murdoch-fox-returning-to-our-roots-in-524bn-disney-deal-11170762 (video of Sky News interview) (emphasis added).

The only claims Murdoch referred to were claims against Roger Ailes, who Murdoch noted "was out" within hours of when those claims were investigated.  In Murdoch's words, "that"—*i.e.,* the situation with Ailes, the CEO—"was largely political."  Nothing of the sort was said about these plaintiffs' claims.[6]  And even if one were to assume that Murdoch was making some vague reference to their claims, he did not say they lacked merit, much less that they were fabricated.  Indeed, Murdoch noted generally that "[t]here are really bad cases that people should be moved aside"—as, of course, O'Reilly and Ailes were.

Plaintiffs appear to allege that Murdoch called their claims "nonsense" and mere instances of "flirting."  That too is a mischaracterization.  It was in response to a question whether the "raft of allegations about sexual harassment" had been "harmful . . . for the *business*" that Murdoch used the word "nonsense."  Murdoch's focus on the business issue raised in the question is confirmed by his allusion to the difficulties faced by competitors NBC and CBS.  When he turned to the issue of harassment claims, Murdoch made clear that "[t]here are

---

[6] Murdoch's statement cannot be "of and concerning" Bernstein for another reason:  he responded to a question about *sexual harassment* claims, and Bernstein's complaints against O'Reilly *did not involve* sexual harassment.  *See* Am. Compl. ¶ 13.  *See Three Amigos SJL Rest., Inc. v. CBS News Inc.*, 65 N.E.2d 35, 37–38 (N.Y. 2016); *see also Small Bus. Bodyguard Inc. v. House of Moxie, Inc.*, 230 F. Supp. 3d 290, 311 (S.D.N.Y. 2017) ("A plaintiff's burden of showing that the allegedly defamatory statement is 'of and concerning' her is not a light one." (citation and internal quotation marks omitted)).

really bad cases," as well as cases involving "a bit of flirting."  No one could reasonably construe these words to be a comment about these plaintiffs' claims in particular.  These vague comments certainly cannot be reasonably construed to mean that these plaintiffs had engaged in "odious or despicable" behavior in asserting their claims.

> ### C.    The Challenged Statements Are Substantially True.

Not only are these statements not defamatory, but plaintiffs have failed to allege that they are false.  "Falsity of a statement is needed to make out a claim of libel. . . . In New York, a statement need not be *completely* true, but can be *substantially* true, as when the overall gist or substance of the challenged statement is true." *Chau*, 771 F.3d at 129 (internal quotation marks omitted).  In New York, "a statement is substantially true if the statement would not have a different effect on the mind of the reader from that which the pleaded truth would have produced."  *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 458 (S.D.N.Y. 2012) (brackets and internal quotation marks omitted).  At the motion to dismiss stage, the complaint *must* plead facts that if proven would demonstrate the defendant's statements were not substantially true.  *Tannerite Sports*, 864 F.3d at 247.  The Amended Complaint fails to do this.

Nothing that 21CF stated is alleged to be false.  It is undeniably true that O'Reilly "denied the merits of the claims" against him, which is all that 21CF said.  It is also undeniably true—it is certainly not alleged to be false—that "no current or former Fox News employee ever took advantage of the *21st Century Fox* hotline to raise a concern about Bill O'Reilly." (emphasis added).

Likewise, Rupert Murdoch is not alleged to have made any assertions of fact about these plaintiffs that is alleged to be false.  He merely offered his opinion about the effect of sexual harassment claims on the business, the motives behind some of the claims against Roger Ailes, and sexual harassment claims in general—some of which involve "really bad" conduct and

others that "probably amount to a bit of flirting."  These kinds of opinions are not demonstrably

false and cannot, for that reason as well, be the subject of a defamation claim.  *See Mann v. Abel*,

885 N.E.2d 884, 885–86 (N.Y. 2008) ("Expressions of opinion, as opposed to assertions of fact,

are deemed privileged and, no matter how offensive, cannot be the subject of an action for

defamation."); *see also Chau*, 771 F.3d at 128 ("[O]nly factual statements are actionable as

defamation or libel . . .  because, in part, New York law protects derogatory statements which

may be categorized as 'opinion' as opposed to 'fact.'").

### D.    Plaintiffs Have Failed Sufficiently to Allege Libel by Implication.

Plaintiffs allege that Fox News "portrayed [them] as extortionate, politically-motivated

liars."  Am. Compl. ¶ 67.  The Amended Complaint does not allege that 21CF or Murdoch

actually *stated* any such thing, but only that they *implied* as much.  As noted above, the

challenged statements cannot reasonably be construed to convey that meaning.  But even if they

could, the claim fails for another reason:  "Courts in this District have . . . held that a plaintiff

alleging defamation by implication must show that Defendants affirmatively intended such

implication."  *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 465–66 (S.D.N.Y. 2012) (internal

quotation marks omitted).  "'[T]o survive a motion to dismiss a claim for defamation by

implication where the factual statements are substantially true, the plaintiff must make a rigorous

showing that *the language of the communication* as a whole can be reasonably read both to

impart a defamatory inference and to *affirmatively suggest* that the author *intended or endorsed*

that inference.'"  *Tannerite Sports, LLC v. NBCUniversal Media LLC*, 135 F. Supp. 3d 219, 232

(S.D.N.Y. 2015) (emphases added) (quoting *Stepanov v. Dow Jones & Co.*, 987 N.Y.S.2d 37, 44

(App. Div. 2014)), *aff'd*, 864 F.3d 236 (2d Cir. 2017); *see also White v. Fraternal Order of*

*Police*, 909 F.2d 512, 520 (D.C. Cir. 1990); *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1093

(4th Cir. 1993).

15

There is nothing in "the language" of the Fox statements "to affirmatively suggest that [Fox] intended or endorsed" the inference that plaintiffs are "extortionate, politically-motivated liars." Am. Compl. ¶ 67. To the contrary, 21CF said that it took these allegations "very seriously," that O'Reilly resolved claims for which he had personal responsibility, and that it was working to "improve the environment for all of our employees at Fox News." Ex. 4. And Murdoch said that some cases were "really bad." Plaintiffs' cannot, therefore, state a claim for libel by implication.

## II. Fox News Is Not Vicariously Liable for Bill O'Reilly's Statements.

Plaintiffs also seek to hold Fox News liable for O'Reilly's statements—by alleging in conclusory terms that Fox News "participated in and authorized" O'Reilly to defame them. Am. Compl. ¶ 37. But O'Reilly's statements were obviously made to advance his personal interests, and there are no facts alleged to support the notion that Fox News authorized O'Reilly to make those statements or participated in their drafting or release.

O'Reilly was not even employed by Fox News when he made some of the statements at issue, and the mere fact that he was employed when he made other statements is "not enough" to "plausibly . . . allege liability under a respondeat superior theory." *See Cort v. Marshall's Dep't Store*, No. 14-cv-7385, 2015 WL 9582426, at *3 (E.D.N.Y. Dec. 29, 2015). Under New York law, an employer can be held vicariously liable for a defamatory statement "only if the employee made the statement in the course of performance of her duties." *See Perks v. Town of Huntington*, 251 F. Supp. 2d 1143, 1166 (E.D.N.Y. 2003). Where an employee commits defamation for purely personal reasons unrelated to furthering the employer's business, as is the

16

case here, there can be no vicarious liability.  *See, e.g.*, *id.*; *see also Garrison v. Toshiba Bus. Sols. (USA). Inc*., 907 F. Supp. 2d 301, 309 (E.D.N.Y. 2012).[7]

In determining whether an allegedly defamatory statement falls within the course of employment, New York's courts consider the following factors:

> (1) whether the employee's act fell within the discretion and control of the employer; (2) whether the employee acted under express or implied authority of the employer; (3) whether the employee's act was in furtherance of the employer's interests; (4) whether the employee's acts were in discharge of duty to the employer; (5) whether the act was in execution of the employer's orders or part of the work assigned by the employer; and (6) whether the acts were "so closely connected" with what the employee was hired to do . . . that they may be regarded as methods . . . of carrying out the "objectives of employment."

*Garrison*, 907 F. Supp. 2d at 307.  None of these factors is alleged here.

### A.    Fox News Cannot Be Liable for O'Reilly's Statements after He Was Fired.

O'Reilly was dismissed from Fox News by April 19, 2017.  Ex. 6.[8]  Fox News cannot be vicariously liable for any statement made after O'Reilly was dismissed, because by definition he was no longer acting in the course of his employment.  *See Guan N. v. NYC Dep't of Educ.*, No. 11-cv-4299, 2013 WL 67604, at *24 (S.D.N.Y. Jan. 7, 2013) (dismissing vicarious liability defamation claim at motion to dismiss stage where individuals were not employed by organization when statements made).  Fox News, therefore, cannot be liable for any of the alleged statements made by O'Reilly after his April 19 dismissal, *see* Am. Compl. ¶¶ 40–47, 51, 53–55, 58.

---

[7] Courts dismiss vicarious liability defamation claims at the motion to dismiss stage, where conclusory allegations are insufficient to state a claim, as they are here.  *See Ello v. Singh*, 531 F. Supp. 2d 552, 582 (S.D.N.Y. 2007), *as amended* (Nov. 13, 2007); *see also Cruz v. Marchetto*, No. 11-cv-8378, 2012 WL 4513484, at *9 (S.D.N.Y. Oct. 1, 2012).

[8] The Court may take judicial notice of the fact that O'Reilly was dismissed by April 19, 2017. *See* note 2, *supra*.

**B.     O'Reilly Made His Statements for His Own Personal Benefit.**

Nor can Fox be liable for O'Reilly's limited statements prior to his firing, because those statements were made to advance his personal interests, not those of Fox News.  *See Garrison*, 907 F. Supp. 2d at 309.  O'Reilly statements repeatedly referred to his desire to protect his "family," his "children," and "those close to me."  Am. Compl. ¶¶ 19, 20; *see also* Ex. 4.  He emphasized how he himself was the "target" of such complaints:  "*I'm* vulnerable to lawsuits . . . no one has ever filed a complaint *about me*." Am. Compl. ¶ 19 (emphasis added)).  He explained that "most importantly," these matters concerned his personal life: "I'm a *father* . . . I have put to rest any controversies to *spare my children*."  *Id.* ¶ 20 (emphasis added).  When O'Reilly mentioned his employer, he did so only to explain how it has affected his personal life, offering that the "worst part of *my* job is being a target for those who would harm *me* and *my* employer," as "those of *us* in the arena" are "constantly at risk, as are *our families* and *children*."  *Id.* ¶ 20 (emphases added).  He gave a statement to the *New York Times* that was separate from the statement of 21CF, whose own statement emphasized that O'Reilly had "resolved [claims] he regarded as his personal responsibility."

Plaintiffs have not pleaded facts tending to show that O'Reilly's "duties" as a Fox News host "require[d]" that he make these personal statements, or that Fox News "instruct[ed] or direct[ed]" him to do so.  *See Perks*, 251 F. Supp. 2d at 1167; *see also Seymour v. New York State Elec. & Gas Corp.*, 627 N.Y.S.2d 466, 468 (App. Div. 1995).  Plaintiffs have not alleged that it was "within the interest of" Fox News for O'Reilly to speak about the effect of accusations on his personal life, especially when 21CF separately provided its own statement, nor have they alleged that his statement was part of the job he was "hired to do."  *See Garrison*, 907 F. Supp. 2d at 309.  Plaintiffs have, therefore, failed to plead facts sufficient to support vicarious liability.

III.     **Fox News Did Not Breach Its Contract with Bernstein.**

Bernstein claims that Fox News breached the non-disparagement and confidentiality provisions of her settlement agreement.  Am. Compl. ¶¶ 34–39, 60–63.  Neither claim has merit.

Bernstein's disparagement claim fails for the same reasons that her defamation claim fails—primarily that Fox News did not say anything about her in particular, and what it said about claims in general was true and non-defamatory.  "'[D]isparage' is defined as 'to unjustly discredit or detract from the reputation of (another's property, product, or business).'"  *Cortes v. Twenty-First Century Fox Am., Inc.*, No. 17 CIV. 5634 (RWS), 2018 WL 348862, at *5 (S.D.N.Y. Jan. 9, 2018) (alterations, citation and internal quotation marks omitted).  Accordingly, "at minimum . . . a disparaging statement must be about, and clearly implicate, the allegedly disparaged subject."  *Id.* at *5.  A statement that "does not mention Plaintiff by name . . . or any other identifying facts or allegations made against Plaintiff . . . cannot be read plausibly to indicate anything, let alone anything discrediting, about Plaintiff," and cannot violate a non-disparagement provision.  *Id.* at *5; *see also Davis v. Nyack Hosp.*, 13 N.Y.S.3d 371, 372 (App. Div. 2015).  Bernstein points to no statement that refers to her by name or otherwise, and she cannot plausibly allege that anything Fox said disparaged her.  *See Cortes*, 2018 WL 348862, at *5.

The claim for breach of confidentiality fails because there is no allegation that Fox News disclosed anything about Bernstein's settlement or the facts leading up to it.  Bernstein alleges that Fox News breached the contract by making statements other than those "agreed-upon," Am. Compl. ¶¶ 34, 38, 61, but Fox News did not make any statement at all about her case.  And the *New York Times* reported that 21CF declined to discuss any "specific accusations" against O'Reilly.  Ex. 4.

19

The statements at issue referred in general to the allegations of sexual harassment that had been made, but nothing in those statements can be construed as a comment about the facts of Bernstein's case or settlement.  And by obligating itself not to comment on Bernstein's case in particular, Fox News did not bind itself to remain silent about the overall position in which the company found itself.  It certainly did not promise not to say what it is alleged to have said—that O'Reilly had denied claims generally but resolved the ones for which he accepted responsibility; that the parent company was not aware of the claims through its hotline; that the company was working to improve working conditions; and about the range of sexual harassment claims.

For these reasons, Bernstein's breach of contract claim must be dismissed.

## IV.    Fox News Has Not Violated the Covenant of Good Faith and Fair Dealing.

"New York law does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled.  Therefore, when a complaint alleges both a breach of contract and a breach of the implied covenant of good faith and fair dealing based on the same facts, the latter claim should be dismissed as redundant."  *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013) (alteration, citation and internal quotation marks omitted).  Because Bernstein's breach of covenant of good faith and fair dealing claim (Count III) is based on the same statements as the breach of contract claim, it must be dismissed.  *See id.*

## V.    The Claims By Mackris And Diamond Must Be Stayed For Resolution By Mediation And, If Necessary, Arbitration.

The Federal Arbitration Act ("FAA") requires a district court to stay an action and compel arbitration, where claims are covered by an arbitration agreement, as they are here.  *See* 9 U.S.C. §§ 3, 4.  The FAA embodies a "strong federal policy favoring arbitration agreements." *Cap Gemini Ernst & Young U.S. LLC v. Arentowicz*, No. 04-cv-0299, 2004 WL 1386145, at *3 (S.D.N.Y. June 22, 2004) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24–25

(1991)).  "By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

### A.      The Question of Arbitrability Should Be Decided by an Arbitrator.

Courts presumptively decide the issue of arbitrability, but that threshold issue should be sent to the arbitrator where there is "clear and unmistakable evidence" that the parties intended to delegate the threshold question to the arbitrator.  *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 208 (2d Cir. 2005) (emphasis omitted).  That evidence is present here.  The Second Circuit has said that the "clear and unmistakable" requirement is satisfied where a "broad arbitration clause expressly commits all disputes to arbitration," *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1031 (2d Cir. 2014), or where the parties "explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability," *Contec Corp.*, 398 F.3d at 208.  Both agreements satisfy these conditions.

Diamond's agreement broadly commits "any dispute concerning this Agreement or anything else related to the Claims" to a mediator at JAMS, and if mediation is not successful, to resolve the matter "through arbitration at JAMS."  Ex. 3 at 6.  The parties agreed that this decision by JAMS would be "final and binding" and not appealable to any court.  The Second Circuit has repeatedly deemed nearly identical provisions to delegate the issue of arbitrability to the arbitrator.  *See Contec Corp.*, 398 F.3d at 208 ("any controversy arising with respect to this Agreement . . . shall be determined by arbitration . . . in accordance with the Commercial Arbitration Rules of the American Arbitration Association" (internal quotations marks omitted)); *Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 120 (2d Cir. 2003) ("All disputes . . . concerning or arising out of this Agreement shall be referred to arbitration . . .  in accordance

with the rules and procedures of International Arbitration." (internal quotation marks omitted)). Not only is Diamond's provision the paradigm of a broad arbitration clause, but it also incorporates rules of JAMS, which the Second Circuit has specifically relied on "to conclude that the parties had clearly committed gateway questions of arbitrability to the arbitrator." *See Emilio v. Sprint Spectrum L.P.*, 508 F. App'x 3, 5 (2d Cir. 2013).

Similarly, Mackris's arbitration provision broadly commits "[a]ny action arising out of or relating to this Agreement" in the first instance to mediation . . . before being sent to arbitration, in accordance with the rules of the American Arbitration Association. Ex. 2 at 8–9. These terms too manifest an unequivocal intent for the question of arbitrability to be addressed by an arbitrator. *See Contec Corp.*, 398 F.3d at 210 n.2 (parties who contract under "arbitration rules such as the AAA Commercial Arbitration Rules" have agreed to the arbitrator determining arbitrability).

### B.    Mackris and Diamond's Claims Fall Within the Scope of the Agreements.

Regardless of who decides arbitrability, it is clear that the claims of Mackris and Diamond must be arbitrated. "[F]ederal policy requires us to construe arbitration clauses as broadly as possible." *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011) (internal quotation marks omitted). "'[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Yours2u Ltd. v. Blue Phx. Media Inc.*, No. 16-cv-3620, 2017 WL 2562334, at *4 (S.D.N.Y. June 5, 2017) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)). Accordingly, courts "will compel arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d at 128 (internal quotation marks omitted).

### 1.    Both Agreements Contain Broad Arbitration Clauses That Trigger a Presumption of Arbitrability.

"The presumption in favor of arbitration is stronger where the arbitration clause itself is a broad clause that refers to arbitration of *'all disputes arising out of an agreement.'*"  *Cap Gemini*, 2004 WL 1386145, at *4 (emphasis added) (internal quotation marks omitted) (emphasis added).  That is the case here.  Mackris agreed to arbitrate "[a]ny action arising out of or relating to this Agreement."  Ex. 2 at 8–9.  Diamond agreed to arbitrate "any dispute concerning this Agreement or anything else related to the Claims."  Ex. 3 at 6.  Their clauses are "'the paradigm of a broad clause,'" creating a legal presumption of arbitrability.  *See Cap Gemini*, 2004 WL 1386145, at *6 (quoting *Collins & Aikman Prod. Co. v. Building Systems Inc.*, 58 F.3d 16, 20 (2d Cir. 1995)).

Both agreements require that a dispute "shall" or "must" be brought in the first instance to mediation, and then be committed to arbitration.  Courts routinely compel proceeding to mediation and then arbitration in these circumstances.[9]  *See, e.g.*, *Favors v. Triangle Servs., Inc.*, 207 F. Supp. 3d 197, 201 n.6, 204 no.12 (E.D.N.Y. 2016) (compelling mandatory mediation and arbitration, and explaining that "like many courts in this Circuit, the Court treats mediation as part of, or synonymous with, the arbitration process. . . .  Defendant's motion to compel arbitration necessarily includes mediation where it is part of the arbitration procedure, as it is here."); *see also Ukshini v. Comity Realty Corp.*, No. 15-cv-6214, 2016 WL 1733468, at *3

---

[9] Even if mediation is an unsatisfied condition precedent to arbitration, the court should still stay proceedings for mediation and then arbitration.  *See Maskaev v. World Boxing Council*, No. 07-cv-3147, 2007 WL 2825728, at *6 (S.D.N.Y. Sept. 24, 2007) (granting defendant's motion to say for non-binding mediation and if necessary binding arbitration); *see also Cummings v. Consumer Budget Counseling, Inc.*, No. 11-cv-3989, 2012 WL 4328637, at *3 (E.D.N.Y. Sept. 19, 2012) (granting a stay of litigation and explaining that "Plaintiffs' contention that . . . [their agreement] requires only that the parties mediate, as opposed to arbitrate, their disputes is without merit"); *In re Refco, Inc. Sec. Litig.*, No. 07-cv-11604, 2008 WL 2185676, at *7 (S.D.N.Y. May 21, 2008) (granting a stay of proceedings for mediation, and if necessary, arbitration, and explaining that seeking such a stay is not premature, and does not bypass mediation, because the other party commenced the dispute); *Duraku v. Tishman Speyer Properties, Inc.*, 714 F. Supp. 2d 470, 475 (S.D.N.Y. 2010) (staying proceedings pending mediation and then arbitration).

23

(S.D.N.Y. Apr. 29, 2016); *Hamzaraj v. ABM Janitorial Ne. Inc.*, No. 15-cv-2030, 2016 WL

3571387, at *4 (S.D.N.Y. June 27, 2016).

> **2.    The Allegations in the Complaint Touch Matters Covered by Both Agreements and Thus Must Be Arbitrated.**

"If the allegations underlying the claims 'touch matters' covered by the parties' . . .

agreements, then those claims must be arbitrated, whatever the legal labels attached to them."

*Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir. 1987).  That is the case here.

The thrust of the Amended Complaint is that Fox News and O'Reilly defamed them by

suggesting their complaints had no merit.  If that allegation states a claim at all, it requires that

the parties here litigate the very claims that were settled.  Such a claim obviously "touch[es]

matters" covered by those settlement agreements.  *See id.*

Here, plaintiff Bernstein claims that the same defamatory statements breach the non-

disparagement provision of her settlement agreement.  Mackris's and Diamond's settlement

agreements also contain non-disparagement provisions.  *See* Ex. 2 at 5; Ex. 3 at 5.  While

claiming defamation, they have chose not to allege that these non-disparagement provisions were

breached—presumably in the hope of avoiding the mandatory arbitration provisions in their

agreements.  The fact that Mackris and Diamond are not asserting a breach of their agreement,

but a defamation claim, is immaterial because "[i]n determining whether a particular claim falls

within the scope of the parties' arbitration agreement, we focus on *the factual allegations in the*

*complaint* rather than *the legal causes of action* asserted."  *Genesco*, 815 F.2d at 846*.* (emphases

added).  Plaintiffs cannot have it both ways—with one plaintiff claiming that the alleged

defamation violates her agreement and the others claiming that it does not even "touch upon"

theirs.[10]

---

[10] Courts routinely hold that claims of defamation are within the scope of mediation and
arbitration provisions.  *See, e.g.*, *Fleck v. E.F. Hutton Grp., Inc.*, 891 F.2d 1047, 1053 (2d Cir.

As such, the Court should stay the claims of plaintiffs Mackris and Diamond and refer them to mediation and arbitration.

## **CONCLUSION**

For the foregoing reasons, each of the parties' claims should be dismissed for failure to state a claim.  This court need not reach the claims by Diamond and Mackris, however, as those claims should be stayed and those plaintiffs compelled to proceed in mediation and arbitration.

Respectfully submitted,

S/   Kevin T. Baine

Kevin T. Baine
Joseph M. Terry (*pro hac vice*)
Jonathan S. Sidhu (*pro hac vice*)

WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005

650 Fifth Avenue
Suite 1500
New York, N.Y. 10019
Tel: (202) 434-5000
Fax: (202) 434-5029
kbaine@wc.com
jterry@wc.com
jsidhu@wc.com

*Attorneys for Fox News Network, LLC*

DATED: March 20, 2018

---

1989) (defamatory statement made after termination covered by arbitration); *Great Lengths Universal Hair Extensions S.r.L. v. Gold,* No. 16-cv-193, 2017 WL 1731184, at *7 (S.D.N.Y. Mar. 29, 2017) (defamation claim covered by agreement and subject to arbitration); *Greenberg v. Ameriprise Fin. Servs., Inc.*, No. 16-cv-3589, 2016 WL 3526025, at *3 (E.D.N.Y. Mar. 31, 2016) (defamation claims "touch upon" matters covered by agreement); *Sharma v. Oriol*, No. 5-cv-2727 2005 WL 1844710, at *5 (S.D.N.Y. Aug. 3, 2005) (defamatory statement concerned core issue of contractual relationship so therefore arbitrable).

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 20, 2018, I electronically filed the foregoing Memorandum in Support of the Motion of Fox News Network, LLC to Compel Arbitration and to Dismiss For Failure to State a Claim with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record in this matter who are on the CM/ECF system.

*S/ Kevin T. Baine*
Kevin T. Baine