UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RACHEL WITLIEB BERNSTEIN, ANDREA MACKRIS, AND REBECCA GOMEZ DIAMOND, <br><br> Plaintiffs, <br><br> -against- <br><br> BILL O'REILLY AND FOX NEWS NETWORK, LLC, <br><br> Defendants. | Civil Action No.: 17-cv-9483(DAB) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT BILL O'REILLY'S
MOTION TO COMPEL ARBITRATION AND/OR
<u>DISMISS THE FIRST AMENDED COMPLAINT</u>**

Fredric S. Newman
Andrew N. Bourne
Julian S. Brod
HOGUET NEWMAN
REGAL & KENNEY, LLP
10 East 40th Street
New York, NY 10016
Tel:  (212) 689-8808

*Attorneys for Defendant
Bill O'Reilly*

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................ ii

PRELIMINARY STATEMENT ......................................................................... 1

STATEMENT OF FACTS .................................................................................. 2

ARGUMENT ....................................................................................................... 3

   I.    MACKRIS AND DIAMOND AGREED TO ARBITRATE ANY FUTURE
        DISPUTES WITH O'REILLY ................................................................. 3

        A.    Public Policy Favors Arbitration ................................................. 4

        B.    The Mackris And Diamond Agreements Commit The Question Of
              Arbitrability To The Arbitrator ................................................... 5

        C.    Mackris's And Diamond's Claims Fall Squarely Within The Arbitration
              Agreements ................................................................................ 6

        D.    If The Court Determines Not To Dismiss Bernstein's Claims Outright,
              The Court Should Stay Bernstein's Claims Pending Arbitration .................. 8

   II.   BERNSTEIN'S NON-DEFAMATION CLAIMS ARE MERITLESS ..................... 10

   III.  THE PLAINTIFFS FAIL TO STATE OF CLAIM FOR DEFAMATION .............. 12

        A.    New York Law Governs The Defamation Claim ........................... 12

        B.    The Statements Attributed to O'Reilly Are Not "Of and Concerning"
              the Plaintiffs ............................................................................. 13

        C.    Even if the Statements Concern Plaintiffs, Which They Do Not,
              O'Reilly's Statements Are Not Defamatory ................................. 16

             1.    All of the Allegedly Defamatory Statements Are Protected Statements
                   of Opinion ......................................................................... 16

             2.    Any Non-Opinion Statements Made By O'Reilly Are Not Reasonably
                   Susceptible Of A Defamatory Meaning ............................. 19

        D.    Mackris's Claims Must Be Dismissed Because Mackris Has Publically
              Acknowledged that "No Wrongdoing Whatsoever" Occurred ...................... 21

CONCLUSION ...................................................................................................... 22

## <u>TABLE OF AUTHORITIES</u>

**Cases:**

*Abramson v. Pataki*,
    278 F.3d 93 (2d Cir. 2002) ........................................................................ 13

*Celle v. Filipino Reporter Enters. Inc.*,
    209 F.3d 163 (2d Cir. 2000) ...................................................................... 20

*Chau v. Lewis*,
    771 F.3d 118 (2d Cir. 2014) ...................................... 13, 16, 16-17, 20, 21

*Church of Scientology Int'l v. Behar*,
    238 F.3d 168 (2d Cir. 2001) ...................................................................... 13

*Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*,
    58 F.3d 16 (2d Cir. 1995) ............................................................................ 5

*Contec Corp. v. Remote Sol., Co.*,
    398 F.3d 205 (2d Cir. 2005) .................................................................... 5, 6

*Cook v. Relin*,
    280 A.D.2d 897 (4th Dep't 2001) .............................................................. 19

*Costanza v. Seinfeld*,
    279 A.D.2d 255 (1st Dep't 2001) .............................................................. 18

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985) .................................................................................... 4

*Dunmire v. Hoffman*,
    No. 05 Civ. 4852 (DAB), 2006 WL 2466248 (S.D.N.Y. Aug. 24, 2006) ............ 4

*Echostar DBS Corp. v. Gemstar-TV Guide Int'l, Inc.*,
    No. 05 Civ. 8510 (DAB), 2007 WL 438088 (S.D.N.Y. Feb. 8, 2007) ................ 11

*Elias v. Rolling Stone LLC*,
    872 F.3d 97 (2d Cir. 2017) ........................................................................ 13

*Genesco, Inc. v. T. Kakiuchi & Co.*,
    815 F.2d 840 (2d Cir. 1987) ........................................................................ 8

*Goldberg v. Sovereign Bancorp, Inc.*,
    No. 10 Civ. 6263 (DAB), 2011 WL 13261837 (S.D.N.Y. Aug. 19, 2011) ........ 6-7

*Gwathmey Siegel Kaufman & Assocs. Architects, LLC v. Rales*,
    518 F. App'x 20 (2d Cir. 2013) .................................................................... 6

*In re Am. Exp. Fin. Advisors Sec. Litig.*,
    672 F.3d 113 (2d Cir. 2011) ........................................................................ 7

*Katsoris v. WME IMG, LLC*,
   237 F. Supp. 3d 92 (S.D.N.Y. 2017) ................................................. 9

*Katz v. Cellco Partnership*,
   794 F.3d 341 (2d Cir. 2015) ................................................. 8-9, 9

*Kirch v. Liberty Media Corp.*,
   449 F.3d 388 (2d Cir. 2006) ................................................. 11

*Konrad v. Brown*,
   91 A.D.3d 545 (1st Dep't 2012) ................................................. 20

*Lee v. Bankers Tr. Co.*,
   166 F.3d 540 (2d Cir. 1999) ................................................. 12

*Levin v. McPhee*,
   119 F.3d 189 (2d Cir. 1997) ................................................. 16, 17, 18

*Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*,
   252 F.3d 218 (2d Cir. 2001) ................................................. 7

*Marchuk v. Faruqi & Faruqi, LLP*,
   100 F. Supp. 3d 302 (S.D.N.Y. 2015) ................................................. 17

*Maritima de Ecologia, S.A. de C.V. v. Sealion Shipping Ltd.*,
   2011 WL 1465744 ................................................. 9, 9-10

*Michtavi v. N.Y. Daily News*,
   587 F.3d 551 (2d Cir. 2009) ................................................. 20

*Norcom Elecs. Corp. v. CIM USA Inc.*,
   104 F. Supp. 2d 198 (S.D.N.Y. 2000) ................................................. 8

*PaineWebber Inc. v. Bybyk*,
   81 F.3d 1193, 1199-1200 (2d Cir. 1996) ................................................. 5

*Parisi v. Goldman, Sachs & Co.*,
   710 F.3d 483 (2d Cir. 2013) ................................................. 4

*Rennaker Co. Consulting, Inc. v. TLM Grp., LLC*,
   No. 16 Civ. 3787 (DAB), 2017 WL 2240235 (S.D.N.Y. Mar. 29, 2017) ................................................. 10

*Roby v. Corp. of Lloyd's*,
   996 F.2d 1353 (2d Cir. 1993) ................................................. 8

*Sabharwal & Finkel, LLC v. Sorrell*,
   117 A.D.3d 437 (1st Dep't 2014) ................................................. 17-18

*Sharma v. Oriol*,
   No. 05 Civ. 2727, 2005 WL 1844710 (S.D.N.Y. Aug. 3, 2005) ................................................. 7

iii

*Shaw Grp. Inc. v. Triplefine Int'l Corp.*,
  322 F.3d 115 (2d Cir. 2003) ................................................................ 5

*Small Business Bodyguard Inc. v. House of Moxie, Inc.,*
  230 F. Supp. 3d 290 (S.D.N.Y. 2017) .......................................... 13, 17

*Tankersmaatschappij, N.V. v. Isbrandtsen Co.*,
  339 F.2d 440 (2d Cir. 1964) ................................................................ 8

*Tannerite Sports, LLC v. NBCUniversal News Group, a division of NBCUniversal Media, LLC*,
  864 F.3d 236 (2d Cir. 2017) .............................................................. 21

*Springer v. Almontaser*,
  75 A.D.3d 539 (2d Dep't 2010) ......................................................... 18

*Weinstein v. Friedman*,
  No. 94 CIV. 6803, 1996 WL 137313 (S.D.N.Y. Mar. 26) , *aff'd*, 112 F.3d 507
  (2d Cir. 1996).................................................................................... 12

*Winter Inv'rs, LLC v. Panzer*,
  No. 14 Civ. 6852, 2015 WL 5052563 (S.D.N.Y. Aug. 27, 2015) ...........9

**Statues:**

9 U.S.C. § 1 ............................................................................................ 4

9 U.S.C. § 2 ............................................................................................ 4

9 U.S.C. § 3 ......................................................................................... 8, 9

## PRELIMINARY STATEMENT

The plain terms of the arbitration agreements executed by Plaintiffs Andrea Mackris and Rebecca Gomez Diamond require their defamation claims to be heard, if anywhere, in arbitration.   The arbitration provisions are contained in separate, confidential agreements executed by Mackris and Diamond, and discussed in the April 1, 2017 New York Times article that forms the centerpiece of Plaintiffs' First Amended Complaint (the "Complaint").   Although the Times reported that Mackris and Diamond received millions of dollars for their agreements, those Plaintiffs now shamelessly disclaim their express agreements to arbitrate, as well as their express promises of confidentiality, while keeping the money they received in consideration.

Mackris and Diamond attempt to circumvent these arbitration agreements by asserting claims that putatively sound in defamation.   However, even a cursory review of the Complaint demonstrates that these claims arise out of the same unproven and denied allegations that were the subject matter of the prior agreements between the parties, and closely track the breach of contract claims that Mackris and Diamond assuredly would have asserted but for the arbitration clauses included in those agreements.   Because a party to a contract cannot avoid an arbitration clause through mere artful pleading, these claims are plainly subject to arbitration—a determination that, in any event, is clearly and unmistakably committed to the arbitrator by the broad language of the arbitration clauses.

There is a certain irony that, by filing and publicizing this lawsuit, Plaintiffs have brought more attention upon themselves than O'Reilly's comments, which were never directed at or referred to Plaintiffs, ever did.   More than this, Mackris and Diamond have violated their express confidentiality agreements—Mackris by inviting a New York Times reporter and photographer

into her home, and Diamond through social media—and O'Reilly will, in the proper, arbitral forum, assert claims against Mackris and Diamond for breach of these agreements.

Finally, the defamation claims by all three Plaintiffs, Mackris, Diamond, and Rachel Witlieb Bernstein, are frivolous and wholly unsupported in law or fact. The crux of the Complaint is that O'Reilly defamed and/or disparaged the plaintiffs by commenting on the New York Times story and other follow up articles that reported allegations lodged against him. These claims cannot withstand basic scrutiny under applicable law. O'Reilly never identified or mentioned any of the Plaintiffs and none of the alleged defamatory statements can be reasonably construed to concern them. O'Reilly's statements consist of his opinions concerning the unbalanced journalism that went into stories published about him and his critique of the advocacy groups that organized a sponsor boycott against him and his top-rated show. Such statements of opinion are protected and cannot serve as a basis for a defamation claim. Finally, none of the statements set forth in the Complaint would expose Plaintiffs to public shame or ridicule, and, as such, none of the statements is susceptible to a defamatory meaning.

## STATEMENT OF FACTS

The allegations in the First Amended Complaint (the "Complaint") are deemed to be true for the purposes of this motion. Relevant excerpts from the agreements between the parties, as well as the various articles containing O'Reilly's alleged statements, are separately submitted with the Declaration of Andrew N. Bourne, dated March 20, 2018 ("Bourne Decl."), in support of this motion. O'Reilly is willing to provide full copies of the agreement for the Court's review in camera. O'Reilly has never breached the confidentiality provisions of these agreements and reserves all rights to enforce the agreements, including their confidentiality provisions.

Importantly, the Plaintiffs omitted from the Complaint any allegation or acknowledgement that O'Reilly and Mackris and Diamond separately entered into confidential agreements ("the Mackris Agreement" and "the Diamond Agreement"), both of which contain broad arbitration provisions intended to ensure that any further disputes between the parties would be resolved through confidential arbitration.  Specifically, the Mackris Agreement broadly provides that "[a]ny action arising out of or relating to [the] Agreement must only be brought and prosecuted before an arbitration panel in New York selected by and in accordance with the rules of the American Arbitration Association[.]"  (Bourne Decl., Ex. 2.)  The Diamond Agreement includes an even broader arbitration clause that requires "any dispute concerning this Agreement or anything else related to the Claims" to be resolved "through arbitration at JAMS."  (Bourne Decl., Ex. 3.)

## ARGUMENT

## I.    MACKRIS AND DIAMOND AGREED TO ARBITRATE ANY FUTURE DISPUTES WITH O'REILLY

All claims asserted by Mackris and Diamond against O'Reilly fall squarely within the broad arbitration clauses included in the Mackris Agreement and the Diamond Agreement. Additionally, in light of Plaintiffs' breaches of the confidentiality provisions in both agreements, O'Reilly possesses ripe breach of contract claims against Mackris and Diamond, which must be arbitrated.

Faced with clear language requiring arbitration, Mackris and Diamond have asserted defamation claims that they will no doubt argue fall outside the scope of the arbitration clauses. However, it is long settled that broadly worded arbitration clauses such as those at issue in this case extend beyond contractual claims and include tort claims that arise out of the subject matter governed by the contract.  That is indisputably the case here.  Mackris and Diamond are, in

essence, attempting to relitigate the allegations that they previously resolved, and their defamation claims are therefore plainly within the arbitration clauses.  Moreover, their defamation claims track the breach of contract claim that Bernstein actually asserted and that Mackris and Diamond assuredly would have asserted had their settlement agreements not included arbitration agreements.  Try as Mackris and Diamond may to continue to attempt to hide their failures to honor their agreements with O'Reilly, there is no question that their claims against O'Reilly are subject to arbitration, as this is precisely what the parties envisioned in the Mackris and Diamond Agreements.  Accordingly, this Court should direct Mackris and Diamond to proceed in the forum they expressly chose when they entered into a confidential agreement with O'Reilly:  arbitration.

### A.       **Public Policy Favors Arbitration**

In addition to the plain language of the Mackris and the Diamond Agreements, this Court's determination is guided by the well-settled public policy favoring arbitration.  Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  As this Court has recognized, the FAA reflects an "overarching federal policy favoring the efficiency and cost-effectiveness of arbitration over the intensity and expense of litigation."  *Dunmire v. Hoffman*, No. 05 Civ. 4852 (DAB), 2006 WL 2466248, at *5 (S.D.N.Y. Aug. 24, 2006); *see also Parisi v. Goldman, Sachs & Co.*, 710 F.3d 483, 486 (2d Cir. 2013) ("The Supreme Court has consistently interpreted the FAA as establishing a federal policy favoring arbitration agreements." (quotations omitted)).  "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which

an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). This is true "even where the result would be the possibly inefficient maintenance of separate proceedings in different forums." *Id.* at 217.

### B.   The Mackris And Diamond Agreements Commit The Question Of Arbitrability To The Arbitrator

As an initial matter, the question of arbitrability—i.e., the determination as to whether the dispute between Mackris and Diamond with O'Reilly is subject to arbitration—should be determined by an arbitrator. Although the question of arbitrability is frequently decided by the court, parties to an agreement may delegate this question to the arbitrator, and courts will enforce such provisions where "there is clear and unmistakable evidence . . . that the parties intended that the question of arbitrability shall be decided by the arbitrator." *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 208 (2d Cir. 2005) (quotation and emphasis omitted). Here, the broad arbitration clauses in both the Mackris Agreement and the Diamond Agreement evince the parties' intention that an arbitrator address any further disputes concerning the subject matter of the agreements, including the threshold question of arbitrability. (Bourne Decl., Exs. 2 and 3.) The Diamond Agreement committed Diamond to arbitrate "any dispute concerning this Agreement *or anything else* related to the Claims." (Bourne Decl., Ex. 3) (emphasis added). The Mackris Agreement, containing language that the Second Circuit has described as the "paradigm" of a broad arbitration clause, *see Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995), requires arbitration for "[a]ny action arising out of or relating to [the] Agreement." (Bourne Dec., Ex. 2.) The Second Circuit has held that such broadly-worded arbitration clauses demonstrate an intention to delegate the issue of arbitrability to the arbitrator. *See PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1196, 1199-1200 (2d Cir. 1996); *see also Contec*, 398 F.3d at 208; *Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 121-22 (2d Cir. 2003).

The Mackris Agreement additionally manifests the parties' intention to delegate the issue of arbitrability to the arbitrator by expressly invoking the AAA Rules of Arbitration.  Bourne Decl., Ex. 2 (providing that arbitration must be "brought and prosecuted … in accordance with the rules of the American Arbitration Association[.]").  This includes Rule 7 of the AAA Commercial Arbitration Rules, which provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."  The Second Circuit has repeatedly held that when, as here, parties "explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator."  *Contec*, 398 F.3d at 208; *see also, e.g.*, *Gwathmey Siegel Kaufman & Assocs. Architects, LLC v. Rales*, 518 F. App'x 20, 21 (2d Cir. 2013) ("[B]y incorporating the [AAA] rules the parties agreed to have the arbitrators decide arbitrability.").

The Mackris and Diamond Agreements thus clearly and unmistakably delegate to the arbitrator the question of arbitrability.  Accordingly, this Court should dismiss, or, at the very least, stay the claims brought by Mackris and Diamond pending an arbitrator's determination of the question of arbitrability.

### C.   Mackris's And Diamond's Claims Fall Squarely Within The Arbitration Agreements

Even were this Court to decide the issue of arbitrability, it should find that the claims asserted by Mackris and Diamond, like the related claims for breach of contract O'Reilly intends to assert, fall within the exceedingly broad arbitration clauses entered into by both plaintiffs as part of valid and enforceable settlement agreements.

"In determining whether a particular dispute falls within the scope of an arbitration agreement, courts in the Second Circuit must first classify the arbitration agreement either as broad or as narrow." *Goldberg v. Sovereign Bancorp, Inc.*, No. 10 Civ. 6263 (DAB), 2011 WL 13261837, at *2 (S.D.N.Y. Aug. 19, 2011).  An arbitration clause is "broad" when "the language of the clause, taken as a whole, evidences the parties' intent to have arbitration serve as the primary recourse for disputes connected to the agreement containing the clause." *Id.* (quoting *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 225 (2d Cir. 2001)).  A broad clause gives rise to a presumption of arbitrability and the court must "compel arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011) (quotation omitted).

Here, the arbitration clauses are exceedingly broad, and so the presumption of arbitrability applies to Mackris and  Diamond's claims.  The Mackris Agreement applies to "[a]ny action arising out of *or relating to* [the] Agreement."  (Bourne Decl., Ex. 2) (emphasis added).  The Diamond Agreement is even broader, applying to "any dispute concerning this Agreement or *anything else related to the Claims*."  (Bourne Decl., Ex. 3) (emphasis added). The Mackris and Diamond defamation claims are therefore presumptively arbitrable.

"To test the presumption that a defamation claim is arbitrable, courts inquire whether the 'story' told by the allegedly defamatory statement is about a matter related to the contract." *Sharma v. Oriol*, No. 05 Civ. 2727, 2005 WL 1844710, at *4 (S.D.N.Y. Aug. 3, 2005).   Here, the Mackris and Diamond defamation claims center directly on the subject matter of the settlement agreements: the claims made by Mackris and Diamond against O'Reilly and Fox News.  Any fair reading of the extremely broad arbitration clauses leads inescapably to the

conclusion that the parties, in entering into these agreements, reasonably expected any further disputes concerning these claims to be resolved through arbitration. *See id.* (defamation claim arising out of employment was arbitrable).

The Mackris and Diamond defamation allegations also closely track the breach of contract claims asserted by Bernstein. Indeed, Mackris and Diamond no doubt would have asserted an all but identical breach of contract claim but for the arbitration agreements included in both their settlement agreements. However, parties may not circumvent arbitration clauses by pleading parallel non-contractual claims, and courts must not "allow a party's solemn promise to be defeated by artful pleading." *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1360 (2d Cir. 1993). The claims are thus squarely within the scope of the arbitration clauses. *See Norcom Elecs. Corp. v. CIM USA Inc.*, 104 F. Supp. 2d 198, 204 (S.D.N.Y. 2000) (holding that tortuous interference claim that "tracked" claim for breach of contract containing arbitration clause was arbitrable). For these reasons, the Court should grant O'Reilly's motion to dismiss, or, alternatively, stay, the claims brought by Mackris and Diamond, and compel arbitration.

**D.     If The Court Determines Not To Dismiss Bernstein's Claims Outright, The Court Should Stay Bernstein's Claims Pending Arbitration**

In addition, the Court should stay, pending arbitration, the claims brought by Bernstein. The FAA requires a district court, "upon application of one of the parties," to stay an action after determining that "any issue" in the action is "referable to arbitration." 9 U.S.C. § 3. In the past, the Second Circuit has held that "[t]he decision to stay the balance of the proceedings pending arbitration is a matter largely within the district court's discretion to control its docket." *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 856 (2d Cir. 1987); *see also Tankersmaatschappij, N.V. v. Isbrandtsen Co.*, 339 F.2d 440, 441-42 (2d Cir. 1964). However, in *Katz v. Cellco Partnership*, 794 F.3d 341 (2d Cir. 2015), the Circuit, observing that "efficient docket

8

management" and traditional deference to courts' "inherent authority" "cannot trump a statutory mandate, like Section 3 of the FAA, that clearly removes such discretion," held that a stay is *mandatory* in cases where "all the claims in an action have been referred to arbitration and a stay requested." *Id.* at 346-47. The Circuit expressly reserved the question of whether the statute also mandates a stay in a case in which less than "all" the claims asserted in the action are committed to arbitration. *Id.* at 345 n.6. However, the plain text of Section 3 requires such a stay where, as here, "any issue" is "referable to arbitration" and each of the other statutory preconditions are met. 9 U.S.C. § 3. Accordingly, a stay of all claims in this action, pending arbitration, is mandatory.

Even were this Court to determine that a stay is not mandatory, the Court should nonetheless stay Bernstein's claims, which substantially overlap with the arbitrable claims of Mackris and Diamond. In determining whether to stay nonarbitrable claims, "[t]he Court must consider factors such as the desirability of avoiding piecemeal litigation and the degree to which the cases necessitate duplication of discovery or issue resolution." *Katsoris v. WME IMG, LLC*, 237 F. Supp. 3d 92, 110 (S.D.N.Y. 2017) (quoting *Maritimia de Ecologia, S.A. de C.V. v. Sealion Shipping Ltd.*, No. 10-CV-8134, 2011 WL 1465744, at *5 (S.D.N.Y. Apr. 15, 2011)). Here, the legal and factual issues involved in Mackris and Diamond's claims are almost entirely overlapping, and a stay of Bernstein's claims, even if not mandatory under Section 3, will promote judicial efficiency and the consistent resolution of these important issues. *See id.* ("In light of the factual overlap between Plaintiffs' non-arbitrable claims against Viacom and their arbitrable claims against IMG, the Court finds it appropriate to stay all proceedings in this action pending arbitration."); *Winter Inv'rs, LLC v. Panzer*, No. 14 Civ. 6852, 2015 WL 5052563, at *12 (S.D.N.Y. Aug. 27, 2015) (granting stay where the "issues that the arbitration panel will

decide … overlap significantly (if not entirely) with the issues that this Court would need to reach to adjudicate" non-arbitrable claims); *Maritima de Ecologia*, 2011 WL 1465744, at *5 (staying proceedings not referred to arbitration because the outcome of the arbitration "will have a significant bearing on this case").

## II.   **BERNSTEIN'S NON-DEFAMATION CLAIMS ARE MERITLESS.**

Should this Court decline to stay Bernstein's claims against O'Reilly pending arbitration of Mackris and Diamond's claim, this Court should dismiss Bernstein's non-defamation claims against O'Reilly (in addition to her defamation claim, discussed below) for failure to state a claim.  These claims, which undisputedly do not arise from any alleged sexual harassment, are completely without merit.

Count One of the Complaint alleges that "Fox News and O'Reilly breached the contract they entered with Bernstein in 2002."  (Complaint, ¶ 60, Bourne Decl., Ex. 1.)  But the Complaint fails to allege that O'Reilly was a party to the agreement, and indisputable documentary evidence demonstrates that he was not a party.  (Bourne Decl., Ex. 4.)   "Under New York law, non-parties generally cannot be held liable for a breach of contract."  *Rennaker Co. Consulting, Inc. v. TLM Grp., LLC*, No. 16 Civ. 3787 (DAB), 2017 WL 2240235, at *3 (S.D.N.Y. Mar. 29, 2017).  This rule applies even if a non-party may have obligations under the agreement.  *Id.*  Accordingly, O'Reilly cannot be held liable for any breach under as a matter of law and Count One must be dismissed as to O'Reilly.

Count Three of the Complaint alleges that O'Reilly and Fox News breached the covenant of good faith and fair dealing in the agreement Bernstein entered into with Fox News.  Even assuming that Bernstein could state a claim for breach of contract against O'Reilly under the Bernstein Agreement, which she cannot, her claim alleging a breach of the covenant of good-

faith and fair dealing should still be dismissed.  Outside the insurance context, New York law does not recognize duplicative causes of action for breach of contract and a breach of the covenant of good-faith and fair dealing.  *See Echostar DBS Corp. v. Gemstar-TV Guide Int'l, Inc.*, No. 05 Civ. 8510 (DAB), 2007 WL 438088, at *7 (S.D.N.Y. Feb. 8, 2007) (dismissing breach of implied covenant of fair dealing and good faith claim as duplicative because the claim was predicated on the breach of contract claim).  Even if Bernstein could allege a breach of contract claim, Count Three must be dismissed as duplicative of any breach of contract claim as it, on its face, is premised on the same allegations as Bernstein's breach of contract claim. Indeed, as the Complaint alleges, O'Reilly purported breached of the covenant of good faith and fair dealing "[b]y and through the actions described above," in the breach of contract cause of action.  (Complaint, ¶ 74.)  Accordingly, this Court can safely dismiss Count Three of the Complaint against O'Reilly.

Count Four of the Complaint alleges that O'Reilly "tortuously interfered with the Agreement between Fox News" and Bernstein.  (Complaint, ¶ 78.)  Beyond this conclusory allegation, the Complaint is devoid of any allegations sufficient to state a claim of tortious interference of contract against O'Reilly.  "Under New York law, the elements of tortious interference with contract are (1) 'the existence of a valid contract between the plaintiff and a third party'; (2) the 'defendant's knowledge of the contract'; (3) the 'defendant's intentional procurement of the third-party's breach of the contract without justification'; (4) 'actual breach of the contract'; and (5) 'damages resulting therefrom.'"  *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006) (citation omitted).  Here, there are no allegations that O'Reilly knew of the contract between Fox News and Bernstein or that O'Reilly intentionally procured Fox News's breach of contract without justification, let alone a non-conclusory allegation, that Fox

News actually breached its contract with Bernstein.   Therefore, Count Four must also be dismissed.

## III.   THE PLAINTIFFS FAIL TO STATE A CLAIM FOR DEFAMATION

Although Plaintiffs' claims should be dismissed and/or stayed pending arbitration, Plaintiffs' alleged defamation claims are borderline frivolous and also subject to immediate dismissal for several reasons.  First, and most critically, O'Reilly's alleged statements are not about Plaintiffs—or, in defamation terms, they are not "of and concerning" Plaintiffs.  This alone is fatal to all of Plaintiffs' defamation claims.  Second, O'Reilly's alleged statements are all opinions, and so, under New York law, cannot constitute defamation.  Finally, even if the statements allegedly made by O'Reilly concerned the Plaintiffs *and* were actionable statements of fact, none of the statements are susceptible to a defamatory meaning—that is, the statements do not expose Plaintiffs to shame, ridicule, or disgrace, as required to support a defamation claim.  The defamation claims fail as a matter of law and should be dismissed.

### A.   New York Law Governs The Defamation Claim

"A federal court sitting in diversity applies the choice of law rules of the forum state." *Lee v. Bankers Tr. Co.*, 166 F.3d 540, 545 (2d Cir. 1999).  In tort cases, New York applies the law of the state with the most significant interest in the litigation.  *Id.*  However, "in a multistate libel case, where the plaintiffs were from different jurisdictions and the alleged harm to their reputations would be diffused throughout the country and overseas, the state where defendants' significant acts and omissions gave rise to their liability is the most appropriate source of legal norms, particularly when it is also the forum state."  *Weinstein v. Friedman*, No. 94 CIV. 6803, 1996 WL 137313, at *8 (S.D.N.Y. Mar. 26), *aff'd*, 112 F.3d 507 (2d Cir. 1996).  Accordingly, New York law applies.

12

Under New York law, to "state a claim for defamation, a complaint must allege '(1) a false statement that is (2) published to a third party (3) without privilege or authorization, and that (4) causes harm, unless the statement is of the type of publications actionable regardless of harm." *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017); *Chau v. Lewis*, 771 F.3d 118, 126-27 (2d Cir. 2014). In addition, a "defamation plaintiff must allege that the purportedly defamatory statement was "of and concerning" him or her, i.e., that '[t]he reading public acquainted with the parties and the subject" would recognize the plaintiff as a person to whom the statement refers.'" *Elias*, 872 F.3d at 104–05 (alteration in original) (citation omitted). Put another way, the words must be "about the plaintiff, not just a general statement." *Chau*, 771 F.3d at 127.

### B.     The Statements Attributed To O'Reilly Are Not "Of and Concerning" The Plaintiffs

Plaintiffs' defamation claims fail as a matter of law because none of O'Reilly's statements are "of and concerning" the Plaintiffs. As courts in this District have recognized, "[a] plaintiff's burden of showing that the allegedly defamatory statement is 'of and concerning' her is 'not a light one,'" *Small Business Bodyguard Inc. v. House of Moxie, Inc.*, 230 F. Supp. 3d 290, 311 (S.D.N.Y. 2017) (citation omitted), and "[a] plaintiff 'must be clearly identifiable' from the statement in order for the statement to be defamatory," *id.* (quoting *Abramson v. Pataki*, 278 F.3d 93, 102 (2d Cir. 2002)). Whether a plaintiff has sufficiently alleged that a statement is "of and concerning" the plaintiff is "typically resolved by the court at the pleading stage." *Elias*, 872 F.3d at 105 (citing *Church of Scientology Int'l v. Behar*, 238 F.3d 168, 173 (2d Cir. 2001)).

The vast majority of the statements relied upon by the Plaintiffs cannot be construed to be "of and concerning" the Plaintiffs under any circumstances. None of the statements mentions any of the Plaintiffs by name. None of the statements refers to any of the Plaintiffs' allegations.

And some of the statements are expressly directed at other parties.  For example, Plaintiffs do not explain how such statements as "You know, am I mad at God? Yeah, I'm mad at him. I wish I had more protection. I wish this stuff didn't happen. I can't explain it to you. Yeah, I'm mad at him."  (Complaint, ¶ 58, Bourne Decl., Ex. 1.)  The Plaintiffs' inclusion of such patently frivolous material within their defamation allegations demonstrates that they are simply seeking publicity, not redress for defamation.

In fact, a closer look at the statements and the full context in which O'Reilly uttered them proves that O'Reilly did not refer to the Plaintiffs and that the statements are therefore not actionable.  Rather, the statements attributed to O'Reilly concern the general public uproar that led to O'Reilly's firing by Fox News.  To overcome this fact, the Plaintiffs ignore the actual context of O'Reilly's statements and, at times, conveniently omit critical information.  For example, the Plaintiffs allege that O'Reilly defamed them by stating "that *the claims* against him were 'politically and financially motivated.'"  (Complaint, ¶ 47, Bourne Decl, Ex. 1) (emphasis added).  However, what the New York Times actually reported was that O'Reilly viewed "the *public outcry* over the allegations against him" as "politically and financially motivated." (Bourne Decl, Ex. 5) (emphasis added).  Because Plaintiffs do not, and cannot, claim that they were part of the "public outcry" against O'Reilly, and, indeed, deny that they were the source of the information printed in the New York Times, this statement is not "of and concerning" Plaintiffs.

That is just one example.  Each of the other allegedly defamatory statements fails for similar reasons.

Plaintiffs allege that O'Reilly defamed them by stating that the "[the complaints were] a political and financial hit job."  (Complaint, ¶ 51, Bourne Decl., Ex. 1.)  To the contrary, as was

widely reported at the time, O'Reilly described the media-led campaign and sponsor boycott that resulted in his termination by Fox News as a "political and financial hit job," not the complaints made by individual employees.  (*See, e.g.*, Bourne Decl., Ex. 6.)  Thus, this statement is not "of and concerning" Plaintiffs.

Plaintiffs also allege that O'Reilly defamed him in an editorial comment that aired on his podcast on October 23, 2017, two days after the New York Times published an article describing a previously undisclosed settlement with another individual who is not a party to this lawsuit. (Complaint, ¶¶ 53, 54, 58, Bourne Decl., Ex. 1.)    However, any reasonable reader of this statement understands that the target of O'Reilly's criticism was the New York Times, not Plaintiffs.  As the full transcript makes clear, O'Reilly described how "the New York Times attacked" by "organiz[ing] an article that was misleading, had false facts in it, and then Media Matters took it, threatened to boycott sponsors," and how this led to his dismissal.  (Bourne Decl., Ex. 7.)  O'Reilly then moved on to discuss an October 2017 New York Times article that concerned claims made by an entirely different individual: "the New York Times said 'you know, we didn't kill him, so we've got to kill him again.'  So they came back with another bunch of garbage."  *Id.*  O'Reilly then stated that "*I truly believe that these people at the New York Times are out to hurt people with whom they disagree. They don't want me in the marketplace. That's what this is all about*."  *Id.*  (emphasis added).  Taken in its full context, it is clear that O'Reilly was not speaking about Plaintiffs at all, but rather was commenting on the New York Times and its reporting.

In addition to these statements that were not "of and concerning" Plaintiffs because they were "of and concerning" other parties, each of the other statements relied on by Plaintiffs is the sort of generalized statement that cannot be considered "of and concerning" a particular plaintiff.

This includes the general statements about himself, his family, and his position as a public figure. (Complaint, ¶¶ 19, 20, 41, and 58, Bourne Decl., Ex. 1.)  It also includes O'Reilly's claims that no one ever filed complaints against him.   (Complaint, ¶¶ 19, 54, Bourne Decl., Ex. 1.)   And it includes O'Reilly's highly generalized statements that "no one was mistreated on my watch," and that "I never mistreated anyone."  (Complaint, ¶¶ 40, 45, Bourne Decl., Ex. 1.)

In sum, not one of O'Reilly's statements was "of and concerning" Plaintiffs as required to state a claim for defamation. Plaintiffs' theory of liability is constructed on unreasonable, strained interpretations of O'Reilly's statements.  A fair reading of O'Reilly's statements and the context in which they were made demonstrates beyond all doubt that they were not "of and concerning" Plaintiffs.  None of the statements mentions Plaintiffs by name and none of them contain any reference to Plaintiffs or their allegations.  Plaintiffs' defamation claims therefore fail as a matter of law.

**C.    Even If the Statements Concern Plaintiffs, Which They Do Not, O'Reilly's Statements Are Not Defamatory**

Even assuming that the Plaintiffs properly pled that O'Reilly's statements were "of and concerning them," which they did not, Plaintiffs' claims fail because O'Reilly's statements are not defamatory, either because they are statements of opinion, or because they do not expose Plaintiffs to shame and ridicule and so are not susceptible to a defamatory meaning.

**1.    All of the Allegedly Defamatory Statements Are Protected Statements of Opinion**

"New York law protects derogatory statements which may be categorized as 'opinion' as opposed to 'fact.'"  *Chau*, 771 F.3d at 128 (citation omitted); *Levin v. McPhee*, 119 F.3d 189, 196 (2d Cir. 1997).  Factors that bear on the inquiry include (1) whether the statements have a "precise and readily understood meaning," (2) whether the statements are "susceptible of being

proven false," and (3) "whether the context of the statements signals to the reader that what is being conveyed is likely to be opinion rather than fact." *Levin*, 119 F.3d at 196; *Chau*, 771 F.3d at 128.  Determination of whether a particular statement is a statement of fact or a statement of opinion "is a matter for the court." *Levin*, 119 F.3d at 196.

The allegedly defamatory statements set forth in the Complaint are statements of opinion by O'Reilly about his motivations and about the public furor that has surrounded him throughout his career and particularly at the time of his departure from Fox News.  This includes O'Reilly's statement that, "like other prominent and controversial people, I'm vulnerable to lawsuits from individuals who want me to pay them to avoid negative publicity."  (Complaint, ¶ 19, Bourne Decl., Ex. 1.)  It includes O'Reilly's statement that, "[t]he worst part of my job is being a target for those who would harm me and my employer[.]"  (Complaint, ¶¶ 19,20, Bourne Decl., Ex. 1.) It includes O'Reilly's statement that, "once you get a famous name, and once you're in the political arena, the combination is devastating.  If they can get you, they're going to get you." (Complaint, ¶ 41, Bourne Decl., Ex. 1.)  It includes O'Reilly's statement that the public outcry against O'Reilly was "politically and financially motivated," and the similar statement that the campaign that led to his ouster from Fox News was a "political and financial hit job." (Complaint, ¶ 47, 51, Bourne Decl., Ex. 1.)  These statements are O'Reilly's subjective views and are not susceptible to being proven false.  As such, they are the sort of generalized opinions that are not actionable under New York law.  *See, e.g.*, *Small Business*, 230 F. Supp. 3d at 311-12 (statement that "many people might view" business partner's actions as "extortion, manipulation, fraud, and deceit" was opinion incapable by being proven false, and, even if taken as a direct allegation, was "loose, figurative, or hyperbolic" language "that is not actionable for defamation"); *Marchuk v. Faruqi & Faruqi, LLP*, 100 F. Supp. 3d 302, 314 (S.D.N.Y. 2015)

17

(defendant's statement that plaintiff had attempted to use lawsuit to extort defendants was not actionable defamation); *Sabharwal & Finkel, LLC v. Sorrell*, 117 A.D.3d 437, 437-38 ( 1st Dep't 2014) (plaintiff's statement that defendant "broached the topic of settlement with their client's adversaries in an attempt to 'extort' money from them" was not actionable because "a reasonable reader would conclude that they constitute hyperbole and convey non-actionable opinions about the merits of the lawsuit and the motivation of [defendant's] attorneys, rather than statements of fact"); *Costanza v. Seinfeld*, 279 A.D.2d 255, 256 (1st Dep't 2001) (defendant's statement that plaintiff was "flagrant opportunist" who had "greatly exaggerated his relationship" with comedian was "the expression of opinion, which is not actionable").

Similarly, O'Reilly's criticisms of the New York Times's reporting are highly generalized opinions about what he considers lax professional standards at a flagship newspaper and the effect that this reporting has had on his life.  (Complaint, ¶ 53, Bourne Decl., Ex. 1.) Such statements are not actionable, and certainly are not actionable by Plaintiffs about whom the statements do not refer.

Finally, O'Reilly's statements that "no one was mistreated on my watch," and that he "never mistreated anyone," (Complaint, ¶¶ 40, 45, Bourne Decl., Ex. 1), are also non-defamatory statements of opinion because the word "mistreated" has no "precise and readily understood meaning." *Levin*, 119 F.3d at 196.  A recent decision by the Appellate Division, *Springer v. Almontaser*, 75 A.D.3d 539 (2d Dep't 2010), is instructive.  In that case, the principal of a public school who had been forced to resign following a public campaign against her gave a press conference in which she accused the plaintiffs of "conducting a ferocious smear campaign against her, stalking her, and verbally assaulting her." *Id.* The court held that that the principal's "statement that she was stalked and harassed was not an actionable statement of objective fact

because it did not have a precise, readily understood meaning." *Id.* at 541. The court accordingly found that the plaintiffs had failed to state a cause of action for defamation. *Id.*

The Plaintiffs' allegations highlight the subjective nature of this language. For example, Bernstein relies on the April New York Times article's report of her interaction with O'Reilly in which O'Reilly purportedly "screamed at" her. *See* Complaint, ¶ 13. Mackris admitted in a "public statement that 'no wrongdoing whatsoever' had occurred." (Bourne Decl., Ex. 5.) Can those allegations constitute "mistreatment" when she admitted (as the New York Times reported) that there was no wrongdoing by O'Reilly? The fact that the question needs to be asked confirms that the imprecise and vague nature of the language used in these statements.

Moreover, the broader context must also be considered. O'Reilly's statements were made in response to serious public allegations accusing him of sexual harassment. A reasonable person would expect O'Reilly, a notoriously "pugnacious" television host (Bourne Decl., Ex. 5), to respond forcefully by offering his opinion regarding the allegations. Applying this context, a reasonably reader would view O'Reilly's statements as opinion. *See Cook v. Relin*, 280 A.D.2d 897, 898 (4th Dep't 2001).

## 2. Any Non-Opinion Statements Made By O'Reilly Are Not Reasonably Susceptible Of A Defamatory Meaning

None of O'Reilly's statements can be considered defamatory because none of O'Reilly's statements exposed Plaintiffs to any ridicule or public shame. Even the primary statements complained of the Plaintiffs, in which O'Reilly stated that "no one has ever filed a complaint about me with the Human Resources Department, even on the anonymous hotline," and that "I've been in the business for 43 years and I've never had a complaint filed by anyone at 12 different companies" (Complaint, ¶¶ 19, 54, Bourne Decl., Ex. 1), cannot be considered to be defamatory. Even assuming that these statements (or any other statements) are false, and that

they concerned Plaintiffs, these statements are not actionable defamation because they do not expose Plaintiffs to any public shame or ridicule.

This is because "[u]nder New York law, a statement is defamatory only if it would expose an individual to shame 'in the minds of right-thinking persons.'" *Michtavi v. N.Y. Daily News*, 587 F.3d 551, 552 (2d Cir. 2009) (citation omitted); *Chau*, 771 F.3d at 127 ("A statement is defamatory if it exposes an individual 'to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation or disgrace, or ... induce[s] an evil opinion of one in the minds of right-thinking persons, and ... deprive[s] one of their confidence and friendly intercourse in society.'" (alterations in original) (citation omitted)).  "A statement, therefore, can meet all of the other elements of defamation—be factual, published, false, and about the plaintiff—but still not be actionable if it fails to rise to the necessary level of derogation." *Chau*, 771 F.3d at 127.  "Whether particular words are defamatory presents a legal question to be resolved by the court[s] in the first instance." *Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 177 (2d Cir. 2000) (alteration in original) (quotation omitted).

None of O'Reilly's statements vilified or exposed the Plaintiffs to shame in anyone's minds.  For example, O'Reilly's statement about his how he is "angry at God" does nothing to defame the Plaintiffs.  Similarly, O'Reilly statements about his clean record of human resource complaints neither vilify nor expose Plaintiffs to shame in the minds of reasonable members of the community.  *See, e.g.*, *Chau*, 771 F.3d at 131; *Konrad v. Brown*, 91 A.D.3d 545, 546 (1st Dep't 2012) (statement that attorney had been discharged by client "was not susceptible of a defamatory meaning because defendant did not mention any reason for the discharge").

In fact, with regard to the primary complaint of the Plaintiffs, that O'Reilly incorrectly stated that "no one has ever filed a complaint about me with the Human Resources Department,

20

even on the anonymous hotline" is simply not defamatory for several reasons.  First, as Mackris and Diamond admit, neither of them complained to human resources.  (Complaint, ¶¶ 27-28, Bourne Decl., Ex. 1.)  O'Reilly disputes that anyone else complained, but that is beside the point: Even Mr. O'Reilly falsely stated that no one complained, such a statement is not defamatory as a matter of law.  This Court can and should consider the "broad social context" at the time O'Reilly made the statements about reporting allegedly improper behavior to Fox News.  *Chau*, 771 F.3d at 131.  At around the time covered by Plaintiffs' allegations, as now, it has been widely reported, and is commonly known, that a majority of people who experience sexual harassment do not report it.  There is no stigma attached to a person's decision not to report sexual harassment.  As such, an average reader simply would not come away with a negative impression of the Plaintiffs based upon O'Reilly's statements that "no one has ever filed a complaint about me with the Human Resources Department" or "I've been in the business for 43 years and I've never had a complaint filed by anyone at 12 different companies."

### D.   Mackris's Claims Must Be Dismissed Because  Mackris Has Publically Acknowledged that "No Wrongdoing Whatsoever" Occurred

O'Reilly maintains that he never harassed any of the Plaintiffs.  Should the Court determine that the Plaintiffs appropriately pled defamation, it may still dismiss the Plaintiffs claims on the ground that such statements were true.  *See Tannerite Sports, LLC v. NBCUniversal News Grp., a division of NBCUniversal Media, LLC*, 864 F.3d 236, 247 (2d Cir. 2017) ("Because falsity is an element of New York's defamation tort, and 'falsity' refers to material not substantially true, the complaint in this case must plead facts that, if proven, would establish that the defendant's statements were not substantially true.").  This is particularly relevant with respect to Mackris's claims, because the statements O'Reilly allegedly made with regard to Mackris are in accord with Mackris's own public statements.  Mackris has conceded in

a "public statement that 'no wrongdoing whatsoever' had occurred."  (Bourne Decl., Ex. 5.)

O'Reilly cannot, as a matter of law, be held liable for defamation for statements that, to the

extent they concerned Mackris at all, merely reaffirmed Mackris's own public statement.

### CONCLUSION

For the reasons stated, each claim asserted against O'Reilly should be dismissed, or, in

the alternative, stayed pending arbitration.

Dated:        March 20, 2018                       Respectfully submitted,
              New York, New York

                                                   HOGUET NEWMAN
                                                   REGAL & KENNEY, LLP

                                   By:             _____
                                                   Fredric S. Newman
                                                   Andrew N. Bourne
                                                   Julian S. Brod
                                                   10 East 40th Street
                                                   New York, New York 10016
                                                   (212) 689-8808

                                                   *Attorneys for Bill O'Reilly*