```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------X
RACHEL WITLIEB BERNSTEN, ET AL.,

                    Plaintiffs,        17 Civ. 9483 (DAB)
          v.                           ORDER


BILL O'REILLY, FOX NEWS NETWORK LLC,

                    Defendants.
--------------------------------------X
DEBORAH A. BATTS, United States District Judge:
```

Before the Court is Defendant Bill O'Reilly's Motion to seal two Settlement and Arbitration Agreements filed in connection with his Motion to Compel Arbitration and/or Dismiss the Complaint. For the foregoing reasons, Defendant O'Reilly's Motion to Seal is DENIED.

I. Background

On December 21, 2017, Plaintiffs Rachel Witlieb Bernstein, Andrea Mackris, and Rebecca Gomez Diamond filed an Amended Complaint against Defendants Bill O'Reilly and Fox News Network LLC, alleging claims for defamation, breach of contract, breach of covenant of good faith and fair dealing, and tortious interference. (Am. Compl, dkt. 10).

The day before a responsive pleading was due, Defendant O'Reilly informed the Court that he would move to dismiss the Complaint and/or Compel Arbitration the following day. He also sought an Order from this Court directing certain Settlement,

Mutual Release, and Arbitration Agreements ("Agreements") made between him and Diamond and Mackris to be filed in redacted form and under seal. (Def. O'Reilly's Letter of March 19, 2018, dkt. 35). Plaintiffs opposed on March 20, 2018. (Dkt. 39). Defendant Fox News indicated it took no position on the sealing on March 22, 2018. (Dkt. 48).

On March 20, 2018, Defendant O'Reilly filed a Motion to Dismiss the Complaint and/or Compel Arbitration. (O'Reilly Mot. Dismiss, dkt. 43). Mr. O'Reilly invoked the Agreements in his Motion, and attached only selected portions of the Agreements on the public docket. (<u>See</u> Exhibits to Bourne Decl. in support of Mot. Dismiss, dkt. 44).

On March 22, 2018, Plaintiffs indicated they too would "quote from various portions of the Settlement Agreements" in opposing the Motion to Dismiss and/or Compel Arbitration, and sought guidance from the Court because they intended submit the entire, unredacted Agreements in connection with their Opposition. (Pls.' letter of March 22, 2018, dkt. 46).

On March 26, 2018, the Court ordered Defendant O'Reilly to produce the entire, unreacted Agreements to the Court for <u>in camera</u> review in order to determine the propriety of sealing the documents. (Order of March 26, 2018, dkt. 49). The Court received the unredacted Agreements on March 29, 2018.

II. Discussion

There is a long-established "general presumption in favor of public access to judicial documents." Collado v. City of New York, 193 F. Supp. 3d 286, 288 (S.D.N.Y. 2016). The Second Circuit has defined "judicial documents" as documents filed with a court that are "'relevant to the performance of the judicial function and useful in the judicial process.' Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119 (2d Cir. 2006) (quoting United States v. Amodeo, 44 F.3d 141, 145 (2d Cir. 1995) ("Amodeo I")); see also Lytle v. JPMorgan Chase, 810 F. Supp. 2d 616, 620-621 (S.D.N.Y. 2011) (citing same). The presumption of access is "based on the need for federal courts to have a measure of accountability and for the public to have confidence in the administration of justice." United States v. Amodeo, 71 F.3d 1044, 1048 (2d Cir. 1995) ("Amodeo II")). Therefore, motions to seal documents must be "carefully and skeptically review[ed] ... to insure that there really is an extraordinary circumstance or compelling need" to seal the documents from public inspection. Video Software Dealers Ass'n v. Orion Pictures, 21 F.3d 24, 27 (2d Cir. 1994). Additionally, the Supreme Court has explained that "the decision as to access [to judicial records] is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." Nixon

v. Warner Commc'ns, Inc., 435 U.S. 589, 599 (1978) (citations omitted).

A Motion to Seal documents filed in connection with a Motion for Summary Judgment or a Motion to Dismiss should generally be ruled on expeditiously and separately from the underlying Motion it is made in connection with. Lugosch, 435 F.3d at 120-121. Motions to Seal are completely "distinct" from resolving the merits of the underlying action. Doe v. Lerner, 688 F. App'x 49, 50 (2d Cir. 2017) (citing Schwartz v. City of New York, 57 F.3d 236, 237 (2d Cir. 1995); United States v. Erie Cnty., New York, 763 F.3d 235, 238 n.5 (2d Cir. 2014)); see also Lytle, 810 F. Supp. at 623 (S.D.N.Y. 2011).

There are "two related but distinct presumptions in favor of public access to court proceedings and records:" "[a] slightly weaker form based in federal common law" and a "strong form rooted in the First Amendment." Newsday LLC v. Cty. of Nassau, 730 F.3d 156, 163 (2d Cir. 2013).

A. Common Law Presumption of Access

"In Lugosch, the Second Circuit described a three-step inquiry to be used by district courts prior to permitting judicial documents to be withheld from public view." Collado, 193 F. Supp. 3d at 288.

First, a court must determine whether "'the documents at issue are 'judicial documents'" to which the presumption of

access attaches. Lugosch, 435 F.3d at 119 (quotation omitted). If so, the court must then determine the weight of the presumption of access. Id. Finally, after determining the weight of the presumption of access, the court must "balance competing considerations against it," which include "the danger of impairing law enforcement or judicial efficiency and the privacy interests of those resisting disclosure." Lugosch, 435 F.3d at 120 (quotations and citation omitted).

   1. Judicial Documents

The Court of Appeals has defined "judicial documents" as documents that are "relevant to the performance of the judicial function and useful in the judicial process." Amodeo I, 44 F.3d at 145. In determining whether a document is a judicial document, a court must evaluate "the degree of judicial reliance on the document in question and the relevance of the document's specific contents to the nature of the proceeding" and "whether access to the [document] would materially assist the public in understanding the issues before the ... court, and in evaluating the fairness and integrity of the court's proceedings." Newsday, 730 F.3d at 166-67.

"[O]nce [documents submitted to support or oppose a motion] come to the attention of the district judge, they can fairly be assumed to play a role in the court's deliberations." Lugosch, 435 F.3d at 123 (quotations omitted). Indeed, "documents submitted to a court for its consideration in a summary judgment

5

motion are—as a matter of law—judicial documents to which a strong presumption of access attaches, under both the common law and the First Amendment." Id. at 121.

Just as with documents submitted in connection with a Motion for Summary Judgment, documents filed in connection to a Motion to Compel Arbitration or Dismiss "are judicial documents to which a presumption of immediate public access attaches under both the common law and the First Amendment." Lugosch, 435 F.3d at 126. Dispositive motions are adjudications, and "[a]n adjudication is a formal act of government, the basis of which should, absent exceptional circumstances, be subject to public scrutiny." Joy v. North, 692 F.2d 880, 893 (2d Cir. 1982).

The resolution of Defendants' Motions to Compel and/or Motions to Dismiss relies heavily on a full examination of the Settlement and Arbitration Agreements in question. Defendant O'Reilly refers repeatedly to the Agreements throughout his Motion (see, e.g., O'Reilly Mot. to Dismiss, dkt. 45, at 1-12) and Plaintiffs indicate they seek to Oppose by referring to various parts of the Agreements as well (Pls.' letter of March 22, 2018, dkt. 46). Defendant O'Reilly asks the Court to resolve a dispute by relying on the very Agreements he seeks to shield from public view. Accordingly, the Agreements are "judicial documents" under Second Circuit doctrine.

2. Weight of Presumption

Once a document is classified as a judicial document and the presumption of access attaches, a court must determine the weight of the presumption of access. Lugosch, 435 F.3d at 119. The weight of the presumption is a function of (1) "the role of the material at issue in the exercise of Article III judicial power" and (2) "the resultant value of such information to those monitoring the federal courts." Id. at 119-20 (quotations omitted). The locus of the inquiry is, in essence, whether the document "is presented to the court to invoke its powers or affect its decisions." Amodeo II, 71 F.3d at 1050. "Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." Lugosch, 435 F.3d at 119; see also Under Seal v. Under Seal, 273 F. Supp. 3d 460, 467 (S.D.N.Y. 2017). For instance, documents passed between the parties during the course of discovery are beyond the presumption's reach and "stand on a different footing than a motion filed by a party seeking action by the court, or, indeed, than any other document which is presented to the court to invoke its powers or affect its decisions." Amodeo II, 71 F.3d at 1050 (internal quotations and alterations omitted).

The Circuit has emphasized that the "presumptive right to 'public observation' is at its apogee when asserted with respect to documents relating to 'matters that directly affect an

7

adjudication.'" Gambale v. Deutsche Bank AG, 377 F.3d 133, 140 (2d Cir. 2004) (quoting Amodeo II, 71 F.3d at 1049)).[1]

Indeed, "[a]fter Lugosch, it appears that the test focuses not on whether the document was actually used by the court but, rather, on the role the document was intended to play in the exercise of the court's Article III duties. If a party submitted the document as part of the process of adjudication, the presumption of public access accorded the document is entitled to great weight." United States v. Sattar, 471 F. Supp. 2d 380, 386 (S.D.N.Y. 2006).

Similar to the "judicial documents" analysis supra, Defendant O'Reilly seeks immediate action from this Court: for the Court to Compel arbitration and/or Dismiss the Complaint. O'Reilly relies on the agreements in support of his Motion for this Court to exercise its Article III adjudicatory powers. When this Court issues its Opinion on his Motion, the public deserves to see what judicial document it relied on. See Lugosch, 435 F.3d at 123 ("[T]he rationale behind access is to allow the public an opportunity to access the correctness of the judge's decision . . . ." (internal quotations and citations omitted)); see also Amodeo II, 71 F.3d at 1048 (explaining the importance of "professional and public monitoring" of the judiciary to its

---

[1] As to the weight of the presumption given to such summary judgment filings, the Circuit has emphasized "that the presumption is of the highest: 'documents used by parties moving for, or opposing, summary judgment should not remain under seal absent the most compelling reasons.'" Lugosch, 435 F.3d at 123 (quoting Joy v. North, 692 F.2d 880, 893 (2d Cir. 1982)).

"democratic control" and concluding that "[s]uch monitoring is not possible without access to testimony and documents that are

"The documents comprise a significant proportion of the . . . record before the Court and they pertain to matters that 'directly affect' the Court's adjudication." Collado, 193 F. Supp. 3d at 289. Thus, the "weight of the presumption" of access of the Agreements is heavy.

### 3. Countervailing Factors

"A party may overcome the presumption of access by demonstrating that sealing will further other substantial interests such as a third party's personal privacy interests, the public's safety, or preservation of attorney-client privilege." Under Seal, 273 F. Supp. 3d at 467–68 (citing United States v. Aref, 533 F.3d 72, 83 (2d Cir. 2008) (affirming a sealing order "[g]iven the legitimate national-security concerns at play"); Lugosch, 435 F.3d at 125 (stating that attorney-client privilege "might well be ... a compelling reason" to overcome the presumption of access); Amodeo [II], 71 F.3d at 1050 (describing law enforcement interests and privacy of innocent third parties as factors that weigh against the presumption of access); see also SEC v. TheStreet.com, 273 F.3d at 234 (noting that where the presumption in favor of public access does not apply, and a document was filed under seal pursuant to a protective order, "a strong presumption against

9

public access" applies if a party to the protective order objects on privacy grounds and establishes that it "reasonably relied on the protective order.")).

"The burden of demonstrating that a document submitted to a court should be sealed rests on the party seeking such action." DiRussa v. Dean Witter Reynolds Inc., 121 F.3d 818, 826 (2d Cir. 1997).

Defendant O'Reilly has failed to meet that burden. See Collado, 193 F. Supp. 3d at 289 ("Against this strong presumption of public access, Defendants fail to articulate a compelling countervailing rationale for filing the documents under seal.").

Defendant first argues that the Agreements are "private agreement[s], which . . . the Parties intended to keep confidential." (Def. O'Reilly's Letter of March 27, 2018 at 2). Defendant cites no case law for this proposition and its application as a "countervailing factor." Rather, Defendant O'Reilly makes the broader argument that failing to seal "Confidential Agreements will discourage confidential private resolutions of disputes" and that "confidentiality provisions would become meaningless." (Id.).

Yet Courts in this District have long held that bargained-for confidentiality does not overcome the presumption of access to judicial documents. See Wells Fargo Bank, N.A. v. Wales LLC, 993 F. Supp. 2d 409, 414 (S.D.N.Y. 2014) (holding fact that the

10

agreement "contains a confidentiality clause is not binding here, given the public's right of access to 'judicial documents.'"); Aioi Nissay Dowa Ins. Co. v. ProSight Specialty Mgmt. Co., No. 12-cv-3274, 2012 WL 3583176, at *6 (S.D.N.Y. Aug. 21, 2012) ("[W]hile enforcement of contracts is undeniably an important role for a court, it does not constitute a 'higher value' that would outweigh the presumption of public access to judicial documents. . . . Respondents may have an action for breach of contract against [petitioner] for its alleged failure to adhere to its obligations under the confidentiality agreement—the Court makes no finding whatsoever on that question."); Wolinsky v. Scholastic Inc., 900 F. Supp. 2d 332, 338 (S.D.N.Y. 2012) ("[T]he mere fact 'that the settlement agreement contains a confidentiality provision is an insufficient interest to overcome the presumption that an approved FLSA settlement agreement is a judicial record, open to the public.' . . . [T]he presumption of public access would become virtually meaningless if it could be overcome by the mutual interest of the parties in keeping their settlement private."); see also Under Seal, 273 F. Supp. 3d at 471-72 (holding same and citing above cases).[2]

---

[2] Defendant's citation to Gambale v. Deutsche Bank AG, 377 F.3d 133, 143 (2d Cir. 2004), is inapposite. In that case, the Second Circuit held that when confidential "settlement documents were not filed with the court and were not the basis for the court's adjudication," there may be no presumptive right of public access to those documents. Such is not the case here, where Defendant O'Reilly moves the Court to enforce the very agreements he seeks to file under seal.

Defendant next makes the conclusory assertion that the Agreements concern "embarrassing conduct with no public ramifications." (Def. O'Reilly's Letter of March 27, 2018 at 2). Defendant does not explain what conduct may, or may not, be embarrassing or the public ramifications of that conduct. (Id.). Contra Collado, 193 F. Supp. 3d at 290 ("Defendants characterize the documents as confidential personnel records in conclusory fashion without specifying either the "higher values" served by secrecy or the nature of any personal or tactical information those documents contain.").

"A possibility of future adverse impact on employment or the celebrity status of a party is not a 'higher value' sufficient to overcome the presumption of access to judicial documents." Under Seal, 273 F. Supp. 3d at 470 (citing Lugosch, 435 F.3d at 120). "Generalized concern[s] of adverse publicity" do not outweigh the presumption of access. Prescient Acquisition Grp., Inc. v. MJ Pub. Tr., 487 F. Supp. 2d 374, 375 (S.D.N.Y. 2007); see also Alexandria Real Estate Equities, Inc. v. Fair, No. 11-cv-3694, 2011 WL 6015646, at *3 (S.D.N.Y. Nov. 30, 2011) (finding possibility of future adverse impact on plaintiff's employment insufficient to outweigh the presumption of access); Lytle, 810 F. Supp. 2d 616 at 626 (refusing to redact names of individuals whose conduct had been investigated in relation to alleged harassment and discrimination complaints even though "conduct at issue may be potentially embarrassing to these

12

employees (and JPMC) and may negatively impact their career prospects")).

Thus, Defendant O'Reilly has failed to present compelling countervailing factors that could overcome the presumption of public access to the Agreements in question. A Common Law presumption of access applies to the agreements.

B. First Amendment

Because the Court has held that Defendant O'Reilly is not entitled to seal the Agreements under the less stringent Common Law standard, it need not also determine whether the Agreements are subject to a First Amendment presumption, which the Second Circuit has characterized as "more stringent." Lugosch, 435 F.3d at 124; see also Lytle, 810 F. Supp. 2d at 621 n.5 ("Because I conclude that the common law right of access mandates disclosure, . . . I need not determine whether they are also subject to a First Amendment presumption of access, which the Second Circuit has characterized as 'more stringent' than the common law.").

Nevertheless, the Court notes briefly that a First Amendment right of access would attach to the Agreements in question as well. Just as with the Common Law right, the First Amendment protects access to judicial documents if the documents "are necessary to understand the merits" of the proceeding.

13

Newsday LLC, 730 F.3d at 164. As articulated, supra, the Court finds that a complete reading of the Agreements is necessary for the very adjudication O'Reilly seeks: compelling arbitration and/or dismissing the Complaint.

Moreover, the First Amendment presumption may be overcome only if the moving Party makes "specific, on the record findings . . . demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." Lugosch, 435 F.3d at 120; see also Press-Enter. Co. v. Superior Court of Cal., Riverside Cty., 464 U.S. 501, 510 (1984) ("The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered."). "Broad and general findings" and "conclusory assertion[s]" are insufficient to justify deprivation of public access to the record. In re New York Times Co., 828 F.2d at 116.

Defendant O'Reilly has not even come close to rebutting this First Amendment presumption. O'Reilly only refers to generalized "privacy interests," "embarrassing conduct" and the overarching policy goals of maintaining confidentiality in private agreements. (Def. O'Reilly's Letter of March 27, 2018 at 2). He does not articulate what privacy interests he holds, or how redactions or sealing would be narrowly tailored to achieve those interests. Thus, in addition to a Common Law presumption,

the Agreements are also entitled to a First Amendment presumption of access.

C. Partial Redaction

The Court also declines Defendant O'Reilly's request for partial redactions (and partial disclosure) of the Agreements. Partial redaction is not a "viable remedy." <u>Amodeo II</u>, 71 F.3d at 1053.

The Agreements each have multiple, interlocking and cross-referencing sections. They also contain integration clauses which explicitly state that the Agreement "constitutes and contains the entire agreement and understanding between the Parties concerning the subject matters addressed herein." (Diamond Agreement ¶ 9; <u>see also</u> Mackris Agreement ¶ 10). Defendant O'Reilly may not now seek to extricate certain portions of an agreement that is fully integrated.

Moreover, O'Reilly makes arguments in his Motion to Dismiss that require a full consideration of the entire agreement. For example, he argues in his Motion to Dismiss: "Plaintiffs now shamelessly disclaim their express agreements to arbitrate, as well as their express promises of confidentiality, while keeping the money they received in consideration." (O'Reilly Mot. to Dismiss at 1). In order to evaluate that claim, the Court would need to review and analyze the Agreement as a whole and the interlocking portions to which O'Reilly refers; thereafter, the

public should be able to see what the Court relied on in issuing its Opinion. The public would have no way to make sense of the Court's analysis testing this claim with only partial or limited access to the Agreement.

III. Conclusion

For the reasons stated above, Defendant O'Reilly's Motion to Seal the Mackris and Diamond Settlement and Arbitration Agreements filed in connection with his Motion to Compel Arbitration and/or Dismiss the Complaint is DENIED.

SO ORDERED.

Dated:    New York, New York
          April 3, 2018

_____
Deborah A. Batts
United States District Judge