**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------x
RACHEL WITLIEB BERNSTEIN,       :     Index No.: 17-cv-9483(DAB)
ANDREA MACKRIS, and REBECCA    :
GOMEZ DIAMOND,            :
                            :
         Plaintiffs,     :
v.                        :
                            :
BILL O'REILLY and          :
FOX NEWS NETWORK LLC,     :
                            :
         Defendants.    :
-------------------------------------------------------x

---

## PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT
## FOX NEWS NETWORK LLC'S MOTION TO DISMISS OR,
## IN THE ALTERNATIVE, TO COMPEL MEDIATION OR ARBITRATION

---

**SMITH MULLIN, P.C.**
420 Lexington Avenue, Suite 300
New York, New York 10170
(212) 297-6134; fax: (917) 677-3697
(nmullin@smithmullin.com)

240 Claremont Avenue
Montclair, New Jersey 07042
(973) 783-7607; fax: (973) 783-9894

**Of Counsel and on the Brief:**
    **NEIL MULLIN, ESQ.**
    **NANCY ERIKA SMITH, ESQ.**

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    1.    The April 1, 2017 Press Release . . . . . . . . . . . . . . . . . . . . . . . . . 2

    2.    The April 19, 2017 Fox News Publication . . . . . . . . . . . . . . . . . . . . 2

    3.    Defendant Fox News Published O'Reilly's
        Defamation on Hannity's Radio Show . . . . . . . . . . . . . . . . . . . . . 3

    4.    Fox News and 21st Century Fox's Chair and CEO Defamed Plaintiffs . . . . . . . 4

LEGAL ARGUMENT

POINT I:    PLAINTIFFS HAVE CLEARLY PLED
            DEFAMATION UNDER NEW YORK LAW . . . . . . . . . . . . . . . . . . . . . . . . 4

    A.    The April 1, 2017 Press Release . . . . . . . . . . . . . . . . . . . . . . . . . 5

    B.    Defendant Fox News Published O'Reilly's April 19, 2017 Defamation . . . . . . . 6

    C.    Hannity's Radio Show . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    D.    Murdoch's Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

POINT II:    ALL FOUR DEFAMATORY STATEMENTS WERE
           "OF AND CONCERNING" PLAINTIFFS . . . . . . . . . . . . . . . . . . . . . . . . 8

POINT III:    DEFENDANTS' STATEMENTS ARE NEITHER "SUBSTANTIALLY
           TRUE," NOR "SIMPLE DENIALS," NOR "OPINION" . . . . . . . . . . . . . . . . 9

    A.    The Statements are Not Substantially True . . . . . . . . . . . . . . . . . . . 9

    B.    The Statements are Not General Denials . . . . . . . . . . . . . . . . . . . . 9

    C.    The Statements are Not Opinion . . . . . . . . . . . . . . . . . . . . . . . . 13

POINT IV:    DEFENDANT FOX NEWS MATERIALLY BREACHED THE
             VERY ARBITRATION CLAUSES IT NOW SEEKS TO ENFORCE
             AND, THEREFORE, PLAINTIFFS DIAMOND AND MACKRIS
             ARE FREE TO LITIGATE THIS MATTER IN OPEN COURT
             RATHER THAN SECRET ARBITRATION PROCEEDINGS  . . . . . . . . . . . 16

POINT V:     FOX WAIVED ANY RIGHT TO COMPEL ARBITRATION  . . . . . . . . . . . . 18

POINT VI:    PLAINTIFFS' CLAIMS OF RECENT DEFAMATION ARE NOT
             ARBITRABLE UNDER THE AGREEMENTS EXECUTED
             THIRTEEN YEARS AGO BY MACKRIS AND SEVEN YEARS
             AGO BY DIAMOND TO SETTLE CLAIMS OF SEXUAL HARASSMENT  . 20

      A.     The Issue of Arbitrability is for this Court, not an Arbitrator  . . . . . . . . . . . . . . 20

      B.     Plaintiffs' Defamation Claims are Not Arbitrable  . . . . . . . . . . . . . . . . . . . . . . 22

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

## **TABLE OF AUTHORITIES**

### **CASES**

Algarin v. Town of Wallkill, 421 F.3d 137 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

AT&T Technologies v. CWA, 475 U.S. 643 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Biro v. Conde Nast, 883 F.Supp.2d 441 (S.D.N.Y. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Britton v. Co-Op Banking Group, 916 F.2d 1405 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . 19

Brown v. Dillard's, Inc., 430 F.3d 1004 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 19

Collins & Aikman Prods. Co. v. Bldg. Sys. Inc., 58 F.3d 16 (2d Cir. 1995) . . . . . . . . . . . . . . . 23

Davis v. Boeheim, 24 N.Y.3d 262, 998 N.Y.S.2d 131 (2014) . . . . . . . . . . . . . . . . . . 4-7, 12-15

DeBlasio v. North Shore Univ. Hospital, 213 A.D.2d 584, 624 N.Y.S.2d 263 (2d Dep't 1995)   8

First Options of Chicago, Inc. v. Kaplan and MK Investments, Inc., 514 U.S. 93 (1995) . . 20, 22

Gilman v. Spitzer, 902 F.Supp.2d 389 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 12

Giuffre v. Maxwell, 165 F.Supp.3d 147 (S.D.N.Y 2016) . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 15

Harwood Pharmacal Co. v. National Broadcasting Co., 9 N.Y.2d 460,
214 N.Y.S.2d 725 (1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Kaminester v. Weintraub, 131 A.D.2d 440, 516 N.Y.S.2d 234 (2d Dep't 1987) . . . . . . . . . . . 11

Leadertex, Inc. v. Morganton Dyeing and Finishing Corp., 67 F.3d 20 (2d Cir. 1995) . . . . 23-24

Mase v. Reilly, 206 A.D. 434, 201 N.Y.S. 470 (1st Dep't 1923) . . . . . . . . . . . . . . . . . . . . . . . 11

McKee v. Cosby, 236 F.Supp.3d 427 (D.Mass. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

McNamee v. Clemens, No. 09-cv-1647, 2013 WL 3968740, at * 3 (E.D.N.Y. July 31, 2013)   11

Murray v. Watervliet, 130 A.D.2d 830, 515 N.Y.S.2d 150 (3d Dep't 1987) . . . . . . . . . . . . . . . 7

Nadeau v. Equity Residential Properties Management Corporation,
251 F.Supp.3d 637 (S.D.N.Y. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17-19

Perks v. Town of Huntington, 251 F.Supp.2d 1143 (E.D.N.Y 2003) . . . . . . . . . . . . . . . . . . . . 7-8

Porter v. Saar, 688 N.Y.S.2d 137 (App. Div. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Rausman v. Baugh, 248 A.D.2d 8, 682 N.Y.S.2d 42 (2d Dep't 1998) . . . . . . . . . . . . . . . . . . . . 7

Riviello v. Waldron, 47 N.Y.2d 297, 418 N.Y.S.2d 300 (1979) . . . . . . . . . . . . . . . . . . . . . . . 7

Seymour v. New York State Electric & Gas, 215 A.D.2d 971,
627 N.Y.S.2d 466 (3d Dep't 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Shaw Group, Inc. v. Triplefine International Corp., 322 F.3d 115 (2d Cir. 2003) . . . . . . . . . . 21

Sherrill v. Grayco Builders, Inc., 64 NY2d 261, 475 N.E.2d 332, 486 N.Y.S.2d 159 (1985) . . 19

Three Amigos SJL Rest., Inc. v. CBS News, Inc., 28 N.Y.3d 82, 86-87 (2016) . . . . . . . . . . . . 8

Tracy v. Newsday, 5 N.Y.2d 134, 182 N.Y.S.2d 1 (1959) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## PRELIMINARY STATEMENT

Defendant Fox News, through its corporate parent and its CEO, published four defamatory statements about plaintiffs.  Even if a jury were to find that Fox News was in no way responsible for the first press release, issued under the name of its parent company, 21st Century Fox, it is responsible for the three other defamatory statements[1].

The volume of defamation in this case is shocking.  Plaintiffs have filed a corrected Motion to File a Second Amended Complaint to clarify that Fox News itself published a defamatory article on its website on April 19, 2017.  The defamatory statements in that article were reprinted extensively throughout the world.

Defendant Fox News has moved to dismiss plaintiffs' defamation claims - invoking the jurisdiction of this Court on the merits.  Obviously, Fox News wants to publicly refute plaintiffs' allegations.  Almost as a footnote, at the end of its merits brief, Fox News alleges - after all the public defamation and Fox News putting its merits arguments in public view - that this case should be decided in secret arbitration.  After making public statements, including defamatory ones, Fox News argues that plaintiffs should be forced into secret arbitration and, thereby, prevented from publicly clearing their names.  That result would be profoundly unjust.

---

[1]  Plaintiffs have moved in a timely way to add 21st Century Fox as a defendant in a proposed Second Amended Complaint to address defendant Fox News' claim that it had nothing to do with the statement issued within a <u>New York Times</u> article about one of Fox News' biggest stars.

1

## STATEMENT OF FACTS

Defendant Fox News is responsible for four defamatory statements.

### 1.    The April 1, 2017 Press Release

On April 1, 2017, The New York Times published an article revealing that defendant Bill

O'Reilly and defendant Fox News had paid millions of dollars to resolve and keep quiet

harassment allegations by five women against Bill O'Reilly - three of them the named plaintiffs.

In The New York Times article about defendant Fox News' covering up and enabling serial

abuse of women, defendant Fox News chose to release a statement by its parent company, 21st

Century Fox.  Both companies have the exact same chief executive: Rupert Murdoch.

The published statement claimed:

> Notwithstanding the fact that no current or former Fox News
> employee ever took advantage of the 21st Century Fox hotline to
> raise a concern about Bill O'Reilly, even anonymously, we have
> looked into these matters over the last few months and discussed
> them with Mr. O'Reilly.  While he denies the merits of these
> claims, Mr. O'Reilly has resolved those he regarded as his personal
> responsibility.  Mr. O'Reilly is fully committed to supporting our
> efforts to improve the environment for all our employees at Fox
> News.

(Mullin Dec., **Ex. E,** ¶ 29).

### 2.    The April 19, 2017 Fox News Publication

There has been so much defamation about plaintiffs published and republished

throughout the world, it is hard to capture it all.  As outlined in the Corrected Motion to File a

Second Amended Complaint, it is now clear that in an original article drafted by Fox News

personality and employee Howard Kurtz and published on the Fox News website and republished

around the world, Fox News defamed plaintiffs.  Some of the statements in the article were in the

original Complaint, but plaintiffs alleged it had originated with another publication. In fact, the

article <u>originated</u> at Fox News.

http://www.foxnews.com/entertainment/2017/04/19/fox-news-drops-bill-oreilly-in-wake-harass

ment-allegations.html.

The article noted that O'Reilly and Fox News had parted ways while O'Reilly was

meeting with the Pope on a VIP tour of the Vatican.  The publication included statements

attributed to O'Reilly and his lawyer - but no effort was made to include statements from

plaintiffs or their counsel.  Instead, the public was given a sympathetic view of O'Reilly, who

was said to be "disheartened" that he was "parting ways with Fox" due to "completely

unfounded" claims which are part of a "liberal smear campaign," a "brutal campaign of character

assassination that is unprecedented in post-McCarthyist America."  (Mullin Dec., **Ex. E,** ¶ 27).

### 3.    Defendant Fox News Published O'Reilly's<br>Defamation on Hannity's Radio Show

Fox News also defamed plaintiffs on September 18, 2017 during which defendant

O'Reilly was a guest on Fox anchor Sean Hannity's radio program, "The Sean Hannity Show."

On that show, O'Reilly defamed plaintiffs as having engaged in "shocking . . . defamation"

against him.  O'Reilly stated he had done an "investigation" of the women who accused him and

had come up with "shocking results" proving he was "the latest victim" of a progressive

campaign aimed at getting him off the air.  Hannity's radio show is promoted and published by

defendant Fox News whose website links Hannity's website and his streaming radio program to

the Fox News website.  (Mullin Dec., **Ex. E,** ¶¶ 50 and 51).

3

**4.**     <u>Fox News and 21st Century Fox's Chair and CEO Defamed Plaintiffs</u>.

After this lawsuit was filed, on December 14, 2017, Fox News CEO and co-Executive

Chairman of 21st CF, Rupert Murdoch, called the reports of sexual harassment complaints at Fox

News "total nonsense" (Mullin Dec., **Ex. E**, ¶ 80).  Murdoch was a chief executive of <u>both</u> Fox

News and 21st Century Fox.  In an on-the-record interview being conducted regarding his role as

the head of both companies, Murdoch makes specific reference to the specific well-defined group

of women who complained of harassment at Fox.  He was asked: "How harmful was the whole

raft of allegations about sexual harassment at Fox News been for business?"  Murdoch replies:

Murdoch:    **No, that's all nonsense**.  There was a problem with our Chief Executive
[Roger Ailes] sort of over the years, but isolated incidents.  As soon as we
investigated, he was out of the place in hours - well, three or four days,
and there's been nothing else since then.  Now of course, but **that was
largely political because we're conservative**.  Well, the liberals are going
down the drain.  NBS is in deep trouble.  CBS, their stars, you know, I
think it's a very interesting subject we could go into at length, but I mean
there are really bad cases that people should be moved aside and **there are
other things which probably amount to a bit of flirting**.  You know?
(Emphasis supplied).

(Mullin Dec. Ex. **E,** Paragraph 80).

## <u>POINT I</u>

## <u>PLAINTIFFS HAVE CLEARLY PLED DEFAMATION UNDER NEW YORK LAW</u>

At the pleading stage, courts must accept the allegations of the complaint as true and,

reading the complaint in conjunction with supplementing affidavits, a motion to dismiss must be

denied "[i]f , upon any reasonable view of the stated facts, plaintiff would be entitled to recovery

for defamation." <u>Davis v. Boeheim</u>, 24 <u>N.Y.3d</u> 262, 268, 998 <u>N.Y.S.2d</u> 131, 22 N.E.3d 999

(2014).  Plaintiffs have clearly pled the elements of defamation.  Defendant Fox News made false

statements intending "to expose plaintiffs to public contempt, hatred, ridicule, aversion, or disgrace[2]." Id.

### A.    The April 1, 2017 Press Release

Plaintiffs have now moved to amend their Complaint to name 21st Century Fox ("21st CF") as a defendant. This addition will render moot Fox News' claim that it is not liable for the defamatory April 1, 2017 statement issued by 21st CF and quoted in The New York Times and repeated throughout the world's media. The jury can determine - based on all the facts - whether both corporate entities are responsible for the defamatory content of the press release. In it, proposed defendant 21st CF claims that it had "information unknown to others," Davis v. Boeheim, 24 NY3d 262 (2014), because "we [arguably both corporate defendants] have looked into these matters over the last few months and discussed them with Mr. O'Reilly." The statement notes that O'Reilly "denies the merits of these claims." If 21st CF "looked into these matters," surely it found video and voice recordings clearly evidencing Bill O'Reilly's harassment and abuse. Both defendant Fox News and proposed defendant 21st CF imply in this false statement that they have "information unknown to others," before repeating O'Reilly's denial. Davis v. Boeheim, 24 N.Y.3d 262, 268, 998 N.Y.S.2d 131, 22 N.E.3d 999 (2014).

But the statement went further than that, alleging "the **fact** that no current or former Fox News employee ever took advantage of the 21st Century Fox hotline to raise a concern about Bill O'Reilly, even anonymously...." (Mullin Dec. Ex E, Paragraph 29). This statement that no woman had ever complained about Bill O'Reilly was repeated in various forms to millions of

---

    [2] Clearly the defamatory statements made by defendant Fox News are also "disparaging" in violation of plaintiff Bernstein's Settlement Agreement. (Mullin Dec., **Ex. A**, ¶ 5(f)).

people. It is demonstrably false. All three plaintiffs complained about harassment and abuse by Bill O'Reilly. (Mullin Dec. Ex. E, Paragraphs 31, 32, 33, 34,35, 36, and 37). In context, it is meant to convey that plaintiffs made up claims in order to conduct what O'Reilly repeatedly called a "political and financial hit job." (Mullin Dec. Ex. E, Paragraphs 59, 63).  Certainly a jury could determine that this statement, printed in the article which specifically named plaintiffs and 2 other women, was defamatory.

**B.    Defendant Fox News Published O'Reilly's April 19, 2017 Defamation.**

On April 19, 2017 defendant Fox News.com published its own article, with the byline of a Fox employee, which included defendant O'Reilly's defamatory claim that plaintiffs' claims are "completely unfounded," part of a "liberal smear campaign" and "a brutal campaign of character assassination that is unprecedented in post-McCarthyist America."  (Mullin Dec., **Ex. E, ¶ 27**); see, www.foxnews.com/entertainment/2017/04/19/fox-news-drops-bill-oreilly-in-wake-harassment-allegations.print.html.  A jury can reasonably determine that by publishing these false statements, portraying plaintiffs as liars conspiring with others to harm defendant O'Reilly, Fox is liable for defaming plaintiffs.

Statements that tend to portray sexual harassment victims as liars and/or extortionists are defamatory under New York law.  See, Zervos v. Trump, Slip. Op., p. 5, Mullin Dec., **Ex. G**, citing, Davis v. Boeheim, supra, at 268.

**C.    Hannity's Radio Show**

Defendant Fox News' website has a direct link to Fox personality Sean Hannity's radio show.  The statements made by O'Reilly on that show were published directly by Fox News. The statements are factual in nature in that O'Reilly alleges he conducted an "investigation," that

6

the women who complained of his abuse had engaged in "shocking defamation" and that he was a "victim" of a liberal conspiracy to get him off the air.

### D.   Murdoch's Statement

As the highest-level executive at both defendant Fox and proposed defendant 21st CF, Rupert Murdoch defamed plaintiffs.  Speaking as someone who listeners would certainly view as having information "unknown to others," Davis v. Boeheim, supra, he called the harassment claims "nonsense" (distinguishing other than what he called "isolated incidents" with Ailes).  A jury could certainly conclude - and plaintiffs will produce evidence to show - that these statements by Murdoch exposed plaintiffs to contempt and ridicule, portraying them as liars who were politically motivated.

As the highest level executive at both defendant Fox News and 21st Century Fox, Rupert Murdoch speaks with the authority and imprimatur of both entities.  Murdoch made the defamatory statements during a formal on-the-record interview which was being conducted because of his role at both organizations. (Mullin Dec. **Ex. E,** Paragraph 80). A corporate entity is liable for the defamatory statements of its employees if the statement is made as an authorized part of his/her duties.  In Perks v. Town of Huntington, 251 F.Supp.2d 1143, 1166 (E.D.N.Y 2003), the District Court stated:

> Under New York law, an employer can be held vicariously liable for a defamatory statement made by one of its employees, but only if the employee made the statement in the course of performance of his/her duties. See, e.g., Rausman v. Baugh, 248 A.D.2d 8, 10, 682 N.Y.S.2d 42 (2d Dep't 1998); Seymour v. New York State Electric & Gas, 215 A.D.2d 971, 973, 627 N.Y.S.2d 466 (3d Dep't 1995); Murray v. Watervliet, 130 A.D.2d 830, 831, 515 N.Y.S.2d 150 (3d Dep't 1987); see generally, Riviello v. Waldron, 47 N.Y.2d 297, 418 N.Y.S.2d 300, 391 N.E.2d 1278 (1979) (discussing the principles of respondeat superior in the employer/employee context).

[Perks, 251 F.Supp.2d at 1166.]

Clearly, Murdoch is at the level of authorized corporate executive to speak on behalf of Fox News and 21st CF and to bind them.

## POINT II

### ALL FOUR DEFAMATORY STATEMENTS
### WERE "OF AND CONCERNING" PLAINTIFFS

The issue of whether a statement is "of and concerning" plaintiffs is a jury question. Harwood Pharmacal Co. v. National Broadcasting Co., 9 N.Y.2d 460, 462, 214 N.Y.S.2d 725, 174 N.E.2d 602 (1961). In this case, the statements published by defendant Fox News are clearly "of and concerning" plaintiffs.

As this Court held in Gilman v. Spitzer, 902 F.Supp.2d 389, 395 (2012), "[W]here the person defamed is not named in a defamatory publication, it is necessary, if it is to be held actionable as to him, that the language used be such that persons reading it will, in the light of the surrounding circumstances, be able to understand that it refers to the person complaining." citing, Algarin v. Town of Wallkill, 421 F.3d 137, 139 (2d Cir. 2005) (quoting, DeBlasio v. North Shore Univ. Hospital, 213 A.D.2d 584, 624 N.Y.S.2d 263, 264 (2d Dep't 1995)). All four statements by defendant Fox News (and proposed defendant 21st CF) were clearly "of and concerning" plaintiffs - members of a small publicly identified group of five (later six) victims of O'Reilly's abuse. See Zervos, supra, Fn. 3 citing Three Amigos SJL Rest., Inc. v. CBS News, Inc., 28 N.Y.3d 82, 86-87 (2016). (Mullin Dec., **Ex. G**).

8

## POINT III

## DEFENDANTS' STATEMENTS ARE NEITHER "SUBSTANTIALLY TRUE," NOR "SIMPLE DENIALS", NOR "OPINION"

### A.    The Statements are Not Substantially True.

Defendant Fox News claims that the challenged statements are "substantially true" (Db

14) and, incredibly, that, "[N]othing that 21st CF stated is alleged to be false." (Db 14).  In fact,

the First Amended Complaint alleged falsity with specificity in Paragraphs 30, 31, 32, 33, 34, 35,

36, 37 and 38, as does the proposed Second Amended Complaint.  (Mullin Dec., **Ex. E**).  A

quick review of the four statements in context shows that they basically call plaintiffs liars,

extortionists, political conspirators, and defamers.  Plaintiffs clearly allege that these statements

are untrue.

### B.    The Statements are Not General Denials.

Fox News cites Porter v. Saar, 688 N.Y.S.2d 137, 139 (App. Div. 1999), and other cases

for the proposition that "[G]eneral denials are simply not defamatory." (Db 10).  None of those

cases are relevant here.  The statements at issue are not "general denials."  Collectively, the

defendants have clearly called the plaintiffs "extortionate, politically-motivated liars."  Taking

one sentence out of a press release published around the world, Fox argues that:

> 21st CF did not say that plaintiffs never complained to Fox News, their employer.
> It merely noted that "no current or former Fox News employee ever took
> advantage of the 21st Century Fox hotline to raise a concern about Bill O'Reilly,"

[Db 11].

This shameless attempt to cherry pick statements should fail.  In The New York Times

article dated April 1, 2017, Fox News (through 21st CF) wanted to convey that the five women

(three plaintiffs) named in the article had not complained about O'Reilly during their employment. This coordinated lie - that plaintiffs had not complained - was repeated to millions of people around the world. A reasonable jury could easily conclude that the *ad nauseum* repetition to millions of people over the span of nine months that *no one had ever complained* to her employer about Bill O'Reilly's abuse is meant to convey that the plaintiffs were part of the liberal smear campaign; that they filed unfounded claims as part of a political and financial hit job. Why else would this coordinated falsehood have been spewed for so long?

When read in context and not in isolation, the statements are demonstrably false and defamatory. In Biro v. Conde Nast, 883 F.Supp.2d 441, 466 (S.D.N.Y. 2012), this Court stated:

> . . . the Court joins the other courts applying New York law and adopts the Fourth Circuit's approach to defamatory implication claims in Chapin, 993 F.2d at 1092–93. Thus, where a plaintiff asserts a defamation claim based not on any alleged falsity of the statements themselves, but on an alleged defamatory implication that could be derived from the unchallenged facts, the Court will require an "especially rigorous showing" that (1) the language may be reasonably read to impart the false innuendo, and (2) the author intends or endorses the inference. Id. at 1093. The alleged innuendo "may not enlarge upon the meaning of words so as to convey a meaning that is not expressed." Tracy v. Newsday, 5 N.Y.2d 134, 182 N.Y.S.2d 1, 155 N.E.2d 853, 855 (1959).

[Biro, 883 F.Supp.2d at 466.]

Plaintiffs did not complain on the 21st CF hotline, because it did not exist, as defendants know. The statement was included in defendants' press release to clearly leave the public with the false impression that plaintiffs never complained to their employer about O'Reilly's abuse because O'Reilly never abused them. Likewise, Mr. Murdoch's Sky News statement describing the plaintiffs' claims as "nonsense" is obviously false. A reasonable jury could easily conclude

that Murdoch knew there were tapes and videos recording O'Reilly's abuse and that millions of

dollars had been paid to keep the public from learning about O'Reilly's harassment.

Defendant Fox News also cites McNamee v. Clemens, No. 09-cv-1647, 2013 WL

3968740, at * 3 (E.D.N.Y. July 31, 2013), for the proposition that "general denials" are not

actionable as defamation.  (Db 10).  However, in McNamee, the District Court held that publicly

branding someone a "liar" and/or "dishonest" - as plaintiffs were here - is defamatory:

> Moreover, it is well-established that a "charge that a man is lying, at least, in a
> matter of public interest, is such a charge as tends to hold him up to scorn, as
> matter of law." Mase v. Reilly, 206 A.D. 434, 436 201 N.Y.S. 470, 472 (1st Dep't
> 1923); see also, Kaminester v. Weintraub, 131 A.D.2d 440, 516 N.Y.S.2d 234 (2d
> Dep't 1987) (finding allegedly libelous statements accusing plaintiff of personal
> dishonesty were not constitutionally protected expressions of opinion). An attack
> on a person's integrity by impugning his character as dishonest or immoral may
> form the basis of a defamation if an ordinary listener would tend to credit the
> statements as true.

[McNamee, 762 F.Supp.2d 584, 601-602 (E.D.N.Y. 2011).]

Defendant's reliance on  McKee v. Cosby, 236 F.Supp.3d 427 (D.Mass. 2017), is equally

misplaced.  In that case, the court found that there was no denial from Mr. Cosby that the alleged

rape had occurred.  Instead, Mr. Cosby's counsel's statement merely "raised doubts as to the

Plaintiff's credibility . . ."  McKee, 236 F.Supp.3d at 443.  Here, Fox News, by itself, through

Mr. Murdoch, and 21st CF, and by quoting defendant O'Reilly, clearly conveyed that the

Plaintiffs were liars and extortionists.

Oddly, Fox News argues that the 21st CF press release does not deny plaintiffs'

underlying claims - it merely repeats Mr. O'Reilly's denial.  (Db 11) First, there was a conscious

decision to include the O'Reilly denial in a paragraph that notes that 21st CF had "spent months"

looking into the allegations, and included the demonstrably **false** statement that the plaintiffs had

11

not complained to Fox about O'Reilly's harassment. The law is clear that the relevant statements must be viewed in context with all of the defamatory statements stated in the Second Amended Complaint - not viewed in isolation. Gilman, 902 F.Supp.2d at 394-395. When read in context, a reasonable reader would conclude that Fox News was supporting the harasser, Mr. O'Reilly, and ratifying his denial that any sexual harassment ever took place. Thus, the Plaintiffs must be liars.

In Giuffre v. Maxwell, 165 F.Supp.3d 147, 151-152 (S.D.N.Y 2016), this Court rejected the very same arguments now being advanced by Fox News. In Giuffre, the plaintiff was the victim of sexual abuse between 1999 and 2002. Plaintiff identified the defendant, Maxwell, as having been closely involved in plaintiff's trafficking for the purpose of this abuse. Just as the Defendants have done here, Maxwell denied the plaintiff's claims, and Ms. Guiffre sued for defamation:

> Plaintiff alleges that the content of this statement [Maxwell's denial] contained actionable falsehoods in stating that Plaintiff's own allegations "against Ghislaine Maxwell are untrue," that Plaintiff's allegations have been "shown to be untrue," and that Plaintiff's "claims are obvious lies." The second concerns a January 4, 2015 on-camera statement made to the New York Daily News (the "January 4 Statement"). Plaintiff alleges that this statement constitutes an actionable falsehood by referring back to the January 3 statement in response to a question regarding the allegations Plaintiff had made against Maxwell. (Citations omitted)

[Giuffre, 165 F.Supp.3d at 150.]

Just as Fox News has done here, Maxwell moved to dismiss Giuffre's defamation claim. This Court denied Maxwell's motion, finding that her simple denials were defamatory.

> Defendant argues that the statements in question are not susceptible to a defamatory meaning. Plaintiff submits that Defendant has effectively called her a "liar," while Defendant points out the word "liar" was never used in the statements alleged. "The dispositive inquiry is whether, on the basis of the **over-all context** in which the assertion were made, a reasonable reader could have concluded that the statements were conveying facts about the plaintiff." Davis v. Boeheim, 24

N.Y.3d 262, 998 N.Y.S.2d 131, 22 N.E.3d 999 (2014) (internal citations, ellipses, and brackets omitted). (Emphasis supplied).

\* \* \*

In distinguishing between fact and opinion, the Court asks "(1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proved true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal readers or listeners that what is being read or heard is likely to be opinion, not fact." Id. (citations omitted). **The Davis court held that to "communicate that [sexual assault victims] lied, [and] their motive was financial gain" constituted defamatory meaning**. Id.

This case therefore requires the same finding as that in Davis and Green. First, statements that Giuffre's claims "against [Defendant] are untrue," have been "shown to be untrue," and are "obvious lies" have a specific and readily understood factual meaning: that Giuffre is not telling the truth about her history of sexual abuse and Defendant's role, **and that some verifiable investigation has occurred and come to a definitive conclusion proving that fact.** Second, these statements (as they themselves allege), are capable of being proven true or false, and therefore constitute actionable fact and not opinion. Third, in their full context, while Defendant's statements have the effect of generally denying Plaintiff's story, they also clearly constitute fact to the reader.

[Giuffre, 165 F.Supp.3d at 151-152.](Emphasis Supplied.)

## C.   **The Statements Are Not Opinion**.

Defendant Fox News claims that the statements at issue are opinion.  (Db 14).  Assuming, *arguendo*, that some statements, out of context, could be characterized as "an opinion, those statements clearly 'impl[y] that [they are] based upon facts which justify the opinion but are unknown to those reading or hearing it" . . . and are thus "mixed opinion" and are "actionable." Davis v. Boeheim, 24 N.Y.3d at 269.

Here, defendant Fox News published the false statements of its employee, the actual perpetrator of the abuse (defendant O'Reilly).  Additionally, Fox News, the employer of the

13

plaintiffs and the abuser (Fox News and 21ˢᵗ Century Fox), and the Chief Executive of both

corporate entities (Murdoch) have clearly made statements that would lead the normal listener to

believe that they have actual facts which show that plaintiffs' claims are "nonsense,"

"unfounded," part of a "smear campaign," and "politically motivated."

All statements at issue lead the audience to believe that Fox News, Murdoch (and by

publication within, O'Reilly) know "certain facts, unknown to [the] audience, which support

[the] opinion and are detrimental" to the plaintiffs. Davis, supra. "The dispositive inquiry . . . is

'whether a reasonable [reader, listener or viewer] could have concluded that [the statements]

were conveying facts about the plaintiff.'" Id. 269-270 (citations omitted).

In a strikingly similar case in which many of the same arguments made by defendants

here were made by defendant Donald Trump, and applying the same law, the Court found that

the defamation action should proceed.

Just like defendants, defendant Trump alleged that the women accusing him of sexual

harassment were "smearing" him for "financial" and "political" reasons.  (Zervos v. Trump, Slip

Op., p. 5, Mullin Dec., **Ex. G**).

Judge Schecter cited New York law, applicable here, holding at page 15:

In Davis v. Boeheim, the Court of Appeals determined that a defamation action
could be maintained against a defendant who called individuals claiming to have
been victims of sexual abuse liars and stated that he believed that they were
motivated by money to go public (Davis, 24 NY3d 262 [reinstating defamation
action against someone who may have known undisclosed facts about alleged
sexual abuse]).  The Court concluded that the statements were susceptible to a
defamatory connotation because they communicated that defendant had
information unknown to others that justified his statements that the individuals
were neither credible nor victims of abuse.  (id. at 272).  Defendant in Davis
'appeared well placed to have information about the charges' and the context of

14

the statements suggested that he 'spoke with authority and that his statements were based on facts' (id. at 273).

In Davis, supra, a college coach called sex abuse allegations against another coach "unfounded" claiming the accusers were "financially motivated."  The Davis court held:

> In determining the sufficiency of a defamation pleading, we consider "whether the contested statements are reasonably susceptible of a defamatory connotation."  As we have previously stated, "[i]f, upon any reasonable view of the stated facts, plaintiff would be entitled to recovery for defamation, the complaint must be deemed to sufficiently state a cause of action."  (Citations omitted).

(Id. at 268).

The word "liar" need not be specifically used to convey that a party suing for defamation may proceed with her claims:

> Though Defendant never called Plaintiff a "liar," to call her claims "obvious lies" that "have been shown to be untrue" demands the same meaning. Plaintiff cannot be making claims shown to be untrue that are obvious lies without being a liar. **Furthermore, to suggest an individual is not telling the truth about her history of having been sexually assaulted as a minor constitutes more than a general denial, it alleges something deeply disturbing about the character of an individual willing to be publicly dishonest about such a reprehensible crime. Defendant's statements clearly imply that the denials are based on facts separate and contradictory to those that Plaintiff has alleged.** Sexual assault of a minor is a clear-cut issue; either transgression occurred or it did not. Either Maxwell was involved or she was not. The issue is not a matter of opinion, and there cannot be differing understandings of the same facts that justify diametrically opposed opinion as to whether Defendant was involved in Plaintiff's abuse as Plaintiff has claimed. Either Plaintiff is telling the truth about her story and Defendant's involvement, or Defendant is telling the truth and she was not involved in the trafficking and ultimate abuse of Plaintiff. The answer depends on facts. **Defendant's statements are therefore actionable as defamation. Whether they ultimately prove to meet the standards of defamation (including but not limited to falsity) is a matter for the fact-finder.**

[Giuffre, 165 F.Supp.3d at 152.](Emphasis Supplied.)

15

Both 21st CF (Fox's parent speaking on behalf of Fox News) and O'Reilly spoke of

conducting "investigations" and made clear - but false - statements about plaintiffs never

complaining.  Applying the relevant law, the same conclusion reached in <u>Zervos v. Trump</u> should

be reached here: "A reader or listener, cognizant that defendant knows exactly what transpired,

could reasonably believe what defendant's statements convey: that plaintiff[s] [are] contemptible

because [they] 'fabricated' events for personal gain." (<u>Zervos</u>, Slip Op., p. 17, Mullin Dec., **Ex.**

**G**).

**POINT IV**

**DEFENDANT FOX NEWS MATERIALLY BREACHED THE VERY
ARBITRATION CLAUSES IT NOW SEEKS TO ENFORCE AND, THEREFORE,
PLAINTIFFS DIAMOND AND MACKRIS ARE FREE TO LITIGATE THIS MATTER
IN OPEN COURT RATHER THAN SECRET ARBITRATION PROCEEDINGS**

Even assuming, *arguendo* only, that the arbitration clauses in question cover the claims

here of Ms. Mackris and Ms. Diamond[3], those arbitration clauses are unenforceable against them,

because defendant has materially breached the arbitration clauses it now seeks to enforce by

engaging in a public smear campaign against the plaintiffs rather than abiding by the strict

confidentiality requirements of the arbitration clauses.  Defendant did not file any claim for

arbitration in the last 18 months, since it became aware that <u>The New York Times</u> was pursuing a

story about O'Reilly's repeated abuse of women.  Instead, in violation of the confidentiality

provisions embedded in the very arbitration clauses it seeks to enforce, defendants together have

engaged in a very public, well-publicized campaign of smears and defamation against the small,

---

[3]  Ms. Bernstein is not a signatory to any arbitration agreement.  Defendants' argument
that she has lost her right to sue is patently frivolous.

16

identifiable group of women named in The New York Times article. Having materially breached

the arbitration clauses, defendants cannot now hold plaintiffs to them.

Judge Briccetti of this Court has recently held that when one party materially breaches an

arbitration agreement, the non-breaching party is relieved of his/her obligation to arbitrate:

> The FAA provides that otherwise-valid arbitration agreements can be rendered
> unenforceable based "upon such grounds as exist at law or in equity for the
> revocation of any contract." 9 U.S.C. § 2. "Thus, a party seeking to avoid
> enforcement of an arbitration agreement can . . . invoke a defense that would be
> available to a party seeking to avoid the enforcement of any contract." Brown v.
> Dillard's, Inc., 430 F.3d 1004, 1010 (9th Cir. 2005) (explaining that state laws
> related specifically to arbitration agreements are not a valid basis on which to
> render an arbitration agreement unenforceable). Under New York law, when a
> party to a contract materially breaches that contract, it cannot then enforce that
> contract against a non-breaching party. See, e.g., in re Lavigne, 114 F.3d 379, 387
> (2d Cir. 1997). A breach is material when it "substantially defeats the purpose of
> that contract." Id. (Emphasis supplied) (citation omitted).
>
> * * *
>
> Thus, "when an employer enters into an arbitration agreement with its employees,
> it must itself participate in properly initiated arbitration proceedings or forego its
> right to compel arbitration. [Defendant] cannot compel [plaintiff] to honor an
> arbitration agreement of which it is itself in material breach." Id., 430 F.3d at
> 1006.

(Nadeau v. Equity Residential Properties Management Corporation, 251 F.Supp.3d 637,
641-42 (S.D.N.Y. 2017).)

The Mackris arbitration clause states, in pertinent part:

> All parties agree that any such arbitration proceedings will be held in **strict
> confidence** and that any filing, materials, evidence or testimony in or concerning
> such arbitration and any opinion in such proceedings **shall be and shall remain
> confidential and that breach of such confidentiality shall be a breach under
> Paragraph 7(f) hereto**.

(Mullin Dec., **Ex. B**, ¶ 9(a)) (Emphasis supplied).

Likewise, plaintiff Diamond's arbitration clause makes secrecy and confidentiality a material condition. It provides that, "Both the mediation and arbitration shall be **strictly confidential. The parties agree that any breach of confidentiality shall be considered a breach of Paragraph 4 herein.**" (Paragraph 4 is the entire confidentiality clause of Ms. Diamond's Settlement Agreement.) (Mullin Dec., **Ex. E,** ¶ 7) (Emphasis supplied).

Instead of maintaining secrecy and confidentiality required by the arbitration and confidentiality clauses incorporated therein, defendants made public statements maligning, disparaging and defaming plaintiffs. No defendant filed any arbitration claims.

The breach of the arbitration agreements' confidentiality provisions was especially corrupt and material because Fox repeated O'Reilly's public statements that plaintiffs' claims were "unfounded" knowing that Fox had insisted in the Settlement Agreements that all three plaintiffs provide to O'Reilly or destroy all of the physical evidence of his harassment of them. (Mullin Dec., **Exs. A, B and D**). Because defendants materially breached the arbitration agreements, plaintiffs Mackris and Diamond cannot be compelled to arbitrate. Nadeau, supra. Plaintiff Bernstein never signed any arbitration agreement.

## POINT V

## FOX WAIVED ANY RIGHT TO COMPEL ARBITRATION

It is well-settled that if a party acts inconsistently with an arbitration agreement, and thereby prejudices a second party, then that non-compliant party has waived his right to demand arbitration. Here, Fox has for over a year acted as if no arbitration agreement exists, or if it exists, has no applicability to plaintiffs' claims. Fox has violated the confidentiality requirements embedded in the arbitration clause through four specific defamatory statements to

18

millions of people.  Fox also has waived the arbitration clause by filing, for public consumption, its merits argument for dismissal of the Complaint instead of waiting for the Court to first rule on the arbitration issue.  Thus, Fox has engaged in public, merits-based litigation in violation of the very arbitration clause it seeks to enforce.

While most claims of arbitration waiver arise where a party engages in extended litigation before seeking arbitration[4], courts have found waiver where a party, to the detriment of another, engages in other actions inconsistent with an arbitration clause, such as delaying or refusing to cooperate in an arbitration proceeding.  See, Brown v. Dillards, 430 F.3d 1004 (9th Cir. 2005), cited with approval in Nadeau, supra:

> A party seeking to prove waiver of a right to arbitrate must demonstrate (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing the arbitration resulting from such inconsistent acts.

> [Dillards, supra, 430 F.3d at 1012, quoting, Britton v. Co-Op Banking Group, 916 F.2d 1405, 1412 (9th Cir. 1990)].

Obviously, Fox (1) knew it had an arbitration clause in the Agreements it signed; and (2) acted inconsistently with those clauses by breaching the arbitration clauses' confidentiality provisions.  Most importantly, Fox's breaches profoundly prejudiced the plaintiffs - instead of being drawn into a confidential arbitration proceeding, they have been subjected to months of defamation.  All three pre-requisites of waiver have been met.  Even now, defendant Fox has invoked the jurisdiction of this Court in making a motion to dismiss on the merits - on the

---

[4]  See, e.g., Sherrill v. Grayco Builders, Inc., 64 NY2d 261, 475 N.E.2d 332, 486 N.Y.S.2d 159 (1985).

gamble if it wins in Court it won't have to arbitrate. Therefore, Fox is no longer entitled to demand arbitration because it waived as well as breached the arbitration clauses.

**POINT VI**

**PLAINTIFFS' CLAIMS OF RECENT DEFAMATION
ARE NOT ARBITRABLE UNDER THE AGREEMENTS EXECUTED
THIRTEEN YEARS AGO BY MACKRIS AND SEVEN YEARS AGO BY
DIAMOND TO SETTLE CLAIMS OF SEXUAL HARASSMENT**

Even if this Court were to find that Fox neither breached nor waived the arbitration clauses in question, nevertheless, this matter should not be dismissed because the claims of recent defamation in the Complaint are simply not covered by arbitration clauses in agreements settling sexual harassment claims made many years ago. The defamation claims in the plaintiffs' Complaint are not arbitrable.

**A.**   **The Issue of Arbitrability is for this Court, not an Arbitrator.**

It is troubling indeed that defendants omit from their brief the landmark Supreme Court case governing whether a court or an arbitrator shall decide arbitrability. In First Options of Chicago, Inc. v. Kaplan and MK Investments, Inc., the Supreme Court held:

> Courts should not assume that the parties agreed to arbitrate arbitrability unless there is "clea[r] and unmistakabl[e]" evidence that they did so. AT&T Technologies, supra, at 649, 106 S.Ct., at 1418-1419; see Warrior & Gulf, supra, at 583, n. 7, 80 S.Ct., at 1353, n. 7. In this manner the law treats silence or ambiguity about the question "who (primarily) should decide arbitrability" differently from the way it treats silence or ambiguity about he question "whether a particular merits-related dispute is arbitrable ...
>
> [Id. 514 U.S. 938 at 944, 115 S.Ct. 1920 at 1924 (1995)].

Thus, in determining whether arbitrability itself is arbitrable, absent a "clear and unambiguous" provision in an arbitration agreement delegating arbitrability to an arbitrator, that

20

issue is reserved for the court.  "Silence or ambiguity" on this issue must be resolved in favor of the Court deciding arbitrability.  See also, Shaw Group, Inc. v. Triplefine International Corp., 322 F.3d 115, 120 (2d Cir. 2003) ("An important exception applies, however, when the document concerns who should decide arbitrability.  The law then reverses the presumption to favor judicial rather than arbitrable resolution.")

Here, there is no "clear and unmistakable" delegation of arbitrability to an arbitrator. Indeed, the word "arbitrability" appears nowhere in the arbitration clauses of Mackris or Diamond.  In an attempt to overcome this problem, defendants point to a reference in Mackris' arbitration clause that refers generally to "the rules of the American Arbitration Association."

In a sleight of hand, defendant Fox cites AAA Commercial Arbitration Rule 7 to argue that the parties agreed to have an arbitrator determine arbitrability (Db 22):

> R-7(a).  Jurisdiction.  The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.

In fact, any arbitration in this matter would be under the AAA Employment Rules.  The reason defendant O'Reilly did not quote the applicable employment rule is that it does not provide that arbitrators decide arbitrability in employment cases.  It reads in full:

> 6(a)  Jurisdiction.  The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.

21

Obviously, any claim arising under the Settlement Agreements at issue here would have been an employment law matter and, therefore, the AAA Employment Rules would have been applied.  Under those rules, arbitrability is left to the Court[5].

## B.   Plaintiffs' Defamation Claims Are Not Arbitrable

As to arbitrability, Mackris' Agreement, executed more than 13 years ago, actually has a very narrow scope.  It purports to require arbitration only for "any action arising out of or relating to this Agreement."  (Mullin Dec., **Ex. B**, ¶ 9(a)).  The current "action" for recent defamation, based on comments Fox published 13 years after the Agreement, does not "arise from" and is "not related to" a Settlement Agreement resolving sexual harassment claims.  It is an action that in fact "arises from" New York's common law governing defamation.  Even if the Agreement had never existed, Mackris would have been entitled to bring this action.  The defamation does not "relate to" the Settlement Agreement, a document settling sexual harassment claims that were brought in 2004.  It relates to ugly words defendant spoke in retaliation for a New York Times article published on April 1, 2017, over 13 years after the Agreement.

Diamond's arbitration clause covers "any dispute concerning this Agreement or anything else related to the Claims."  The term "Claims" is actually defined in one of the Settlement Agreement's "Whereas" clause to be claims of "unlawful termination, pregnancy discrimination, hostile environment, sexual harassment, *quid pro quo* sexual harassment, sex discrimination and retaliation."  The list of "Claims" does not include "defamation" and certainly does not include

---

[5] Although plaintiffs have argued that the Employment Law Rules clearly apply, if there is any ambiguity about arbitrability, that ambiguity must be resolved against committing the issue of arbitrability to the arbitrator.  First Options, supra.  Accordingly, this Court should decide the arbitrability of plaintiffs' claims.

defamation that occurred many years after the termination of plaintiff's employment at Fox and the execution of the Settlement Agreement in 2011.

Fox committed the tort of defamation against Mackris and Diamond in response to a <u>New York Times</u> article published on April 1, 2017, years after employment-related issues had been settled by the Agreements. This defamation claim was not the subject of arbitration agreements executed years before and, therefore, plaintiffs' current claims are not arbitrable.

The arbitration clauses here are not, as defendants maintain, "exceedingly broad" (Db 23). Nor are they the "paradigm" of a broad arbitration clause like the one cited by defendants in <u>Collins & Aikman Prods. Co. v. Bldg. Sys. Inc.</u>, 58 <u>F.3d</u> 16, 20 (2d Cir. 1995). The arbitration clause in that case covers "any claim or controversy arising out of or relating to this Agreement." By contrast, Mackris' arbitration clause is limited to "actions" arising out of the Agreement, *i.e.*, breach of contract actions, not independent torts occurring years later. Likewise, Diamond's arbitration clause does not refer to any and all disputes between the parties no matter how far in the future they arise, but rather, Diamond's arbitration clause refers only to disputes arising from the Agreement, *i.e.*, breach of contract claim - not raised here - or disputes arising as to a limited list of "claims" that does not include defamation.

The Second Circuit has held that a defamation claim that extended to matters beyond the underlying contract was not covered by an arbitration clause even broader than the ones at issue herein. <u>Leadertex, Inc. v. Morganton Dyeing and Finishing Corp.</u>, 67 <u>F.3d</u> 20 (2d Cir. 1995). In refusing the compel arbitration, the Second Circuit ruled that courts should focus on the "core issues" in a pending case and compare them to the core issues in the settled arbitrable matter. If there was a significant gap between the two, the new matter should not be deemed arbitrable. <u>Id.</u>

23

The core issues in plaintiffs' defamation action are whether plaintiffs are part of a vast "left-wing conspiracy," "politically motivated" to "smear" defendant O'Reilly and hurt his children.  Also at the core of defendant Fox's defamation is the false statement that plaintiffs "never complained" about defendant O'Reilly's behavior to their employer, defendant Fox News. Defendant Fox published that plaintiffs' harassment claims were "unfounded."  While that statement may be "closely related" to the underlying harassment claims and "resolution of [the defamation claims] will necessitate examining the same evidence." . . . "the defamatory statements [contain] a number of charges extending beyond" the original harassment claims. Leadertex, supra, at 28.

## CONCLUSION

For the foregoing reasons, it is respectfully submitted that Fox News' motion to dismiss must be denied.

SMITH MULLIN, P.C.
Attorneys for Plaintiffs



BY:___/s/ Neil Mullin_____
NEIL MULLIN (NM6020)

Dated: April 3, 2018

24