UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RACHEL WITLEIB BERNSTEIN,

                              Plaintiff,

        -against-

BILL O'REILLY, FOX NEWS NETWORK
LLC, AND TWENTY-FIRST CENTURY
FOX,

                              Defendants.

Civil Action No. 17-cv-9483

**DEFENDANT BILL O'REILLY'S MEMORANDUM OF LAW**
**IN SUPPORT OF HIS MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

Fredric S. Newman
Andrew N. Bourne
HOGUET NEWMAN
REGAL & KENNEY, LLP
One Grand Central Place
60 East 42nd Street, 48th Floor
New York, NY 10165
Tel:    (212) 689-8808
Email: fnewman@hnrkaw.com
        abourne@hnrklaw.com

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT**………………………………………………………… 1

**STATEMENT OF FACTS** ……………………………………………………………...2

    A.    Bernstein's Settlement Agreement With Fox... …………………………………..3

    B.    The New York Times Publishes A Report Detailing Sexual Harassment
        Allegations Against O'Reilly………………………………………………...… 4

    C.    The Complaint………………………………………………………………...…6

**I.**    **BERNSTEIN FAILS TO STATE A CLAIM FOR DEFAMATION**……………….. 7

    A.    New York Law Governs The Defamation Claim ………………………………...7

    B.    The Statements Attributed To O'Reilly Are Not "Of and Concerning"
        Bernstein……………………………………………………………………..…8

    C.    Even If the Statements Concern Bernstein, Which They Do Not, O'Reilly's
        Statements Are Not Defamatory……………………………………………….…11

        1.    All of the Allegedly Defamatory Statements Are Protected Statements of
            Opinion………………………………………………………………..12

        2.    Any Non-Opinion Statements Made By O'Reilly Are Not Reasonably
            Susceptible Of A Defamatory Meaning…………………………………15

    D.    Bernstein Failed To Allege Defamation by Implication…………………………18

    E.    The Defamation Cause Of Action Must Be Dismissed Because Bernstein Failed
        To Allege Defamation *Per Se* And Failed To Allege Damages…………………19

**II.**    **BERNSTEIN'S BREACH OF CONTRACT CLAIM MUST BE DISMISSED**……22

**CONCLUSION**………………………………………………………………………22

# TABLE OF AUTHORITIES

*Biro v. Condé Nast,*
  883 F. Supp. 2d 441 (S.D.N.Y. 2012) ....................................................... 18

*Carlucci v. Poughkeepsie Newspapers, Inc.,*
  57 N.Y.2d 883 (1982) ..................................................................... 8, 9, 10

*Celle v. Filipino Reporter Enters. Inc.,*
  209 F.3d 163 (2d Cir. 2000) ............................................................... 16, 21

*Chaffin v. Lynch,*
  83 Va. 106 (1887) ............................................................................. 14

*Chau v. Lewis,*
  771 F.3d 118 (2d Cir. 2014) ..................................................... 7, 8, 12, 16, 17

*Cook v. Relin,*
  280 A.D.2d 897 (4th Dep't 2001) ............................................................. 14

*Costanza v. Seinfeld,*
  279 A.D.2d 255 (1st Dep't 2001) ............................................................. 13

*Davis v. Boeheim*cf. ,
  24 N.Y.3d 262 (2014) ..................................................................... 14, 15

*Elias v. Rolling Stone LLC,*
  872 F.3d 97 (2d Cir. 2017) ................................................................... 7, 8

*Foretich v. Capital Cities/ABC, Inc.,*
  37 F.3d 1541 (4th Cir. 1994) ................................................................. 15

*Impulse Mktg. Grp., Inc. v. Nat'l Small Bus. All., Inc.,*
  No. 05-CV-7776, 2007 WL 1701813 (S.D.N.Y. June 12, 2007) ..................................... 22

*Jacobus v. Trump,*
  156 A.D.3d 452 (1st Dep't 2017) ............................................................. 15

*Kamanou v. Exec. Sec'y of Comm'n of Econ. Cmty. of W. African States,*
  No. 10 CIV. 7286 GBD JLC, 2012 WL 868700 (S.D.N.Y. Mar. 14, 2012) ......................... 21

*Kamanou v. Exec. Sec'y of Comm'n of the Econ. Cmty. of W. African States,*
  No. 10 CIV. 7286 GBD JLC, 2012 WL 162708 (S.D.N.Y. Jan. 19, 2012) ......................... 21

*Kerik v. Tacopina,*
  64 F. Supp. 3d 542–70 (S.D.N.Y. 2014) ................................................... 19, 20

*Konrad v. Brown,*
  91 A.D.3d 545 (1st  Dep't 2012) ............................................................. 16

*Krzesaj v. N.Y.C. Dep't of Educ.,*
  No. 16 CIV. 2926 (ER), 2017 WL 1031278 (S.D.N.Y. Mar. 15, 2017) ........................... 19

*Lee v. Bankers Tr. Co.*,
  166 F.3d 540 (2d Cir. 1999) ............................................................................................ 7

*Levin v. McPhee*,
  119 F.3d 189 (2d Cir. 1997) ...................................................................................... 12, 13

*Liberman v. Gelstein*,
  80 N.Y.2d 429 (1992) ........................................................................................ 20, 20-21

*Marchuk v. Faruqi & Faruqi, LLP*,
  100 F. Supp. 3d 302 (S.D.N.Y. 2015) ...................................................................... 13, 20

*Matherson v. Marchello*,
  *100 A.D.2d 233 (2d Dep't 1984)* ..................................................................................... 21

*McNamee v. Clemens*,
  *No. 09 CV 1647*, 2013 U.S. Dist. LEXIS 107551 (E.D.N.Y. July 31, 2013) ................... 14

*Michtavi v. N.Y. Daily News*,
  587 F.3d 551 (2d Cir. 2009) ...................................................................................... 15-16

*Montgomery Ward & Co. v. Watson*,
  55 F.2d 184 (4th Cir. 1932) ............................................................................................ 15

*Nunez v. A-T Fin. Info.*, 957 F. Supp. 438 (S.D.N.Y. 1997) ................................................. 21

*Rennaker Co. Consulting v. TLM Grp., LLC*,
  *No. 16 Civ. 3787* (DAB), 2017 WL 2240235 (S.D.N.Y. Mar. 29, 2017) .......................... 22

*Sabharwal & Finkel, LLC v. Sorrell*,
  117 A.D.3d 437 (1st Dep't 2014) .................................................................................... 13

*Small Bus. Bodyguard Inc. v. House of Moxie, Inc.*,
  230 F. Supp. 3d 290 (S.D.N.Y. 2017) ..................................................................... 8, 12-13

*Springer v. Viking Press*,
  60 N.Y.2d 916 (1983) ....................................................................................................... 8

*Tannerite Sports, LLC v. NBCUniversal Media LLC*,
  135 F. Supp. 3d 219 (S.D.N.Y. 2015) ............................................................................. 19

*Thai v. Cayre Grp., Ltd.*,
  726 F. Supp. 2d 323 (S.D.N.Y. 2010) ............................................................................. 21

*Springer v. Almontaser*,
  75 A.D.3d 539 (2d Dep't 2010)................................................................................... 13, 14

*Three Amigos SJL Rest., Inc. v. CBS News Inc.*,
  28 N.Y.3d 82 (2016) .......................................................................................................... 8

## PRELIMINARY STATEMENT

The Second Amended Complaint (the "Complaint") filed by Plaintiff Rachel Witlieb Bernstein ("Bernstein") is wholly unsupported in law or fact.  According to an article relied upon in the Complaint that was published by the New York Times, on one occasion in 2002 Defendant Bill O'Reilly ("O'Reilly") allegedly "screamed" at Bernstein in the news room at Defendant Fox News Network LLC ("Fox News").  According to the New York Times, "shortly thereafter . . . Bernstein, left the network with a payout and bound by a confidentiality agreement."  O'Reilly is not a party to that agreement.

That same New York Times article went on to report on claims of alleged sexual harassment purportedly resolved by O'Reilly and/or Fox News.  Bernstein does not dispute that, her claim "did not involve sexual harassment," as the New York Times reported.  That article led to an onslaught of negative publicity about O'Reilly, stoked by liberal advocacy group-led boycotts.  The crux of Complaint is that O'Reilly defamed and/or disparaged her by commenting on the New York Times article and the follow up articles that reported on the sexual harassment allegations lodged against him, allegations of which O'Reilly denied and continues to deny.

Nonetheless, Bernstein's claims must fail under numerous defamation doctrines.  First, none of the statements set forth in the Complaint exposed Bernstein to public share or ridicule and cannot be said to be susceptible to a defamatory meaning.  Second, even if the Complaint could clear that hurdle, Bernstein's claims must fail because O'Reilly never identified Bernstein or mentioned her name and none of the alleged defamatory statements can reasonable be construed to concern her – particularly because she was not the subject of the numerous articles concerning O'Reilly's alleged sexual harassment.  Third, even if O'Reilly's statements could be construed to have concerned Bernstein, which they cannot, the complained-of statements consist

of his opinions concerning the unbalanced journalism that went into stories published about him and his critique of the advocacy groups that organized sponsor boycotts against him and his top-rated television show.  Fourth, even if Bernstein could clear these hurdles, the Complaint also fails to establish a claim of defamation *per se* and fails to allege any damages.

Bernstein also asserts a claim that O'Reilly breached a contract to which he was not a party.  Bernstein's breach of contract claim must also be dismissed as a matter of law because it is black-letter law that a non-party cannot be held liable for a breach of contract.

In short, this suit is nothing more than attempt to latch on to the public outcry against O'Reilly.  O'Reilly never mentioned or discussed Bernstein, let alone defamed her when he commented on the unbalanced journalism he believed he received regarding allegations of sexual harassment.  Moreover, O'Reilly is not in privity of contract with Bernstein.  Accordingly, this Court should grant the O'Reilly's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b).

## STATEMENT OF FACTS

The Complaint is littered with out-of-context quotations from various news articles and podcasts published over the course of six months.  When considered in their entirety, the articles and podcasts paint a picture far different than the salacious rhetoric advanced by Bernstein in her complaint.

From 1996 and until his unceremonious departure in April 2017, O'Reilly hosted the top-rated program on cable news, "The 'O'Reilly Factor," on Fox News.  (*Bill O'Reilly Thrives at Fox News, Even as Harassment Settlements Add Up*, N.Y. Times, April 1, 2017) ("April New York Times Article") (Declaration of Andrew Bourne, dated October 31, 2018 ("Bourne Decl."), Ex. 3.)  The New York Times described his show as this:  "Every weeknight at 8 p.m., [Mr.

O'Reilly] presents a pugnacious, anti-political-correctness viewpoint and a fervent strain of patriotism that appeals to conservative viewers." (*Id.*) And, it was successful: aside from being the highest rated cable news program for years, from 2014 through 2016, The O'Reilly Factor "generated more than $446 million in advertising revenues, according to the research firm Kantar Media." (*Id.*)

As is now in the public record, certain persons in media, including O'Reilly, have faced various lawsuits and allegations of wrongdoing over the years. (*Id.*) In its reporting of O'Reilly, the New York Times acknowledged that, "[a]ccording to legal experts, companies occasionally settle disputes that they believe have little merit because it is less risky than taking the matters to trial, which can be costly and create a string of embarrassing headlines." (*Id.*)

### A.    Bernstein's Settlement Agreement With Fox

Count One of the Complaint alleges that "Fox News and O'Reilly breached the contract they entered with Bernstein in 2002." (Complaint, ¶ 74-75, Bourne Decl., Ex. 1.) But the Complaint fails to allege that O'Reilly was a party to the agreement, and indisputable documentary evidence demonstrates that he was not a party. (Bourne Decl., Ex. 2.) Indeed, O'Reilly never entered into a contract with Bernstein. Rather, in 2002, Bernstein and Fox News entered into a "Severance Agreement and General Release" (the "Bernstein Agreement"). (Bourne Decl., Ex. 2 at ¶ 1.) Among other terms agreed to by Bernstein and Fox News:

> Wittlieb and Fox each agree not to disparage, trade libel, or otherwise defame each other, and in the case of Fox, Wittlieb agrees not to disparage, trade libel, or otherwise defame its officers or employees, including without limitation, Bill O'Reilly. In the case of Wittlieb, for purposes of this Paragraph 5(e), the term "Fox" shall mean the released parties referenced in paragraph 4(a) above, including Bill O'Reilly, and said released parties agree not to disparage, trade libel, or otherwise defame Wittlieb.

(*Id.*, at ¶ 5(f).)

**B.**     **The New York Times Publishes A Report Detailing Sexual Harassment Allegations Against O'Reilly**

In April 2017, the New York Times published an article detailing the allegations that have been made against O'Reilly over the years, entitled "Bill O'Reilly Thrives at Fox News, Even as Harassment Settlements Add Up" (the "April New York Times Article"). (Bourne Decl., Ex. 3).

Bernstein is briefly mentioned in the April New York Times Article. According to the New York Times, Bernstein alleged that Mr. O'Reilly "stormed into the newsroom and screamed" at Bernstein, who "left the network with a payout and bound by a confidentiality agreement." (*Id.*) The April New York Times Article acknowledges that Bernstein's allegations against Mr. O'Reilly "did not involve sexual harassment." (Complaint, ¶ 18.) The April New York Times Article also recounts other allegations of sexual harassment against O'Reilly over his decades career as a broadcaster. (Bourne Decl., Ex. 3.)

Bernstein claims O'Reilly defamed and disparaged her in the April New York Times Article by, in her words, "portraying her as a liar and extortionist who have concocted complaints and never gave the company the opportunity to investigate them in a timely way," (Complaint, ¶ 30). Bernstein theorizes that, although O'Reilly never mentioned any her name, she was defamed because the New York Times published a statement by O'Reilly. The full context of the O'Reilly's statement makes clear that O'Reilly made no such insinuations. Rather, as reported by the New York Times, O'Reilly expressed his opinion that "his prominence made him a target," when O'Reilly stated:

> Just like other prominent and controversial people, [the statement read] I'm vulnerable to lawsuits from individuals who want me to pay them to avoid negative publicity. In my more than 20 years at Fox News Channel, no one has ever filed a complaint about me with the Human Resources Department, even on the anonymous hotline.

But most importantly, I'm a father who case deeply for my children and would do anything to avoid hurting them in any way.   And so I have put to rest any controversies to spare my children.

The worst part of my job is being a target for those who would harm me and my employer, the Fox News Channel.  Those of us in the arena are constantly at risk, as are our families and children.  My primary efforts will continue to be put forth an honest TV program and to protect those close to me."

(Complaint, ¶ 21, 23.)

As alleged Bernstein, O'Reilly made certain public comments about his dismissal from Fox News in which he voiced his opinions concerning the unbalanced journalism that went into stories published about him and his critique of the advocacy groups that organized a sponsor boycott against him and his top-rated show.  As alleged by Bernstein, O'Reilly never mentioned Bernstein in these comments.  Rather, Bernstein repeatedly complains that O'Reilly "disparaged and defamed the plaintiff, portraying her as a liar and extortionist who concocted complaints . . . ."  (Complaint, ¶ 30; *see also* Complaint ¶¶ 40, 43, 47, 50, 52, 79.)  To accomplish this artful pleading, Bernstein applied a blunderbuss approach and complained that virtually every single statement made over the course of a several-month period by O'Reilly not only concerned her, but defamed her.  These statements include:

- "I'm a father who cares deeply for my children and who would do anything to avoid hurting them in any way.  And so I have put to rest any controversies to spare my children."  (Complaint, ¶ 23);

- "that [O'Reilly] was 'the latest victim' of a progressive campaign aimed at getting him off the air."  (Complaint ¶ 43);

- "So, all of a sudden, all of this stuff happens, and the pain it brings to my children is indescribable.  Indescribable.  And I would give up my life to protect my children, but I find myself not able to protect them because of things that are being said about me, their father."  (Complaint, ¶ 59);

- "In 20 years, 6 months at the Fox News Channel, I resolved three situations.  Three I resolved.  And I did that to protect my children from harm.  And I would do anything, anything to protect my children. . . ."  (Complaint, ¶ 64);

- "The bottom line is that my enemies who want to silence me have made my life extremely difficult and have hurt me in the marketplace. Anybody who doesn't like me will believe all the stuff the smear merchants put out, but I'm interested in you, I'm interested in people who are fair minded." (Complaint, ¶ 67);

- "You know, am I mad at God? Yeah, I'm mad at him. I wish I had more protection." (Complaint, ¶ 70).

These are just a few examples of the types of statements attributed to O'Reilly littered throughout the Complaint, which Bernstein alleges were defamatory, even though O'Reilly never mentioned Bernstein or discussed the merits or circumstances of her claim.

**C.    The Complaint**

In December 2017, Bernstein commenced this Action against O'Reilly and Fox News. (ECF Doc. No. 1.) Thereafter, two other plaintiffs joined Bernstein in the First Amended Complaint. (ECF Doc. No. 10.) After O'Reilly and Fox moved against the First Amended Complaint, Bernstein (and the other plaintiffs) sought leave to file the Complaint. In September 2018, this Court granted Bernstein (and the other plaintiffs) leave to file the Complaint, but severed Bernstein's claims from the claims of the other plaintiffs. (ECF Doc. No. 85.)

The Complaint sets forth two different counts against O'Reilly: (a) breach of contract alleging that O'Reilly breached a contract entered into between Bernstein and Fox News; and (b) defamation. With respect to the defamation count, Bernstein alleges that the "aforesaid statements falsely portrayed the plaintiff as an extortionate, politically-motivated liar who was never mistreated and who has wrongfully and willfully harmed Mr. O'Reilly and his children." (Complaint, ¶ 79.) The Complaint does not specify any economic harm that Bernstein alleged has suffered as a result, but merely states that "plaintiff has suffered and will continue to suffer damages to her reputation, severe emotional distress, physical sickness, special damages and loss of income." (Complaint, ¶ 76, 88.)

6

# I.     BERNSTEIN FAILS TO STATE A CLAIM FOR DEFAMATION

Bernstein's alleged defamation claims are borderline frivolous and subject to immediate

dismissal for several reasons.  First, and most critically, O'Reilly's alleged statements are not

about Bernstein—or, in defamation terms, they are not "of and concerning" Bernstein.  This

alone is fatal to all of Bernstein's defamation claims.  Second, O'Reilly's alleged statements are

all opinions, and so, under New York law, cannot constitute defamation.  Third, even if the

statements allegedly made by O'Reilly concerned Bernstein *and* were actionable statements of

fact, none of the statements are susceptible to a defamatory meaning—that is, the statements do

not expose Bernstein to shame, ridicule, or disgrace, as required to support a defamation claim.

Finally, Bernstein's claim fails to satisfy the requirements of defamation *per se* and the

defamation count must be dismissed because Bernstein failed to allege special damages.  The

defamation claims fail as a matter of law and should be dismissed.

## A.     New York Law Governs The Defamation Claim

"A federal court sitting in diversity applies the choice of law rules of the forum state."

*Lee v. Bankers Tr. Co.*, 166 F.3d 540, 545 (2d Cir. 1999).  In tort cases, New York applies the

law of the state with the most significant interest in the litigation.  *Id.*  Here, Bernstein previously

argued that New York law applies (ECF Doc. No. 59 at 17) and, accordingly, O'Reilly presumes

that New York law applies.

Under New York law, to "state a claim for defamation, a complaint must allege '(1) a

false statement that is (2) published to a third party (3) without privilege or authorization, and

that (4) causes harm, unless the statement is one of the types of publications actionable

regardless of harm."  *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017); *Chau v.

Lewis*, 771 F.3d 118, 126-27 (2d Cir. 2014).  In addition, a "defamation plaintiff must allege that

7

the purportedly defamatory statement was "of and concerning" him or her, i.e., that '[t]he reading public acquainted with the parties and the subject" would recognize the plaintiff as a person to whom the statement refers.'"  *Elias*, 872 F.3d at 104–05 (alteration in original) (citation omitted).   Put another way, the words must be "about the plaintiff, not just a general statement."  *Chau*, 771 F.3d at 127.

**B.**    **The Statements Attributed To O'Reilly Are Not "Of and Concerning" Bernstein**

Bernstein's defamation claims fail as a matter of law because none of O'Reilly's statements are "of and concerning" Bernstein.  As courts in this District have recognized, "[a] plaintiff's burden of showing that the allegedly defamatory statement is 'of and concerning' her is 'not a light one,'" *Small Bus. Bodyguard Inc. v. House of Moxie, Inc.*, 230 F. Supp. 3d 290, 311 (S.D.N.Y. 2017) (citation omitted), and "[a] plaintiff 'must be clearly identifiable' from the statement in order for the statement to be defamatory," *id.* (quoting *Abramson v. Pataki*, 278 F.3d 93, 102 (2d Cir. 2002)).  Whether a plaintiff has sufficiently alleged that a statement is "of and concerning" the plaintiff is "typically resolved by the court at the pleading stage."  *Elias*, 872 F.3d at 105 (citing *Church of Scientology Int'l v. Behar*, 238 F.3d 168, 173 (2d Cir. 2001)).

> [Plaintiffs] **must plead** and prove that the statement referred to them and that a person hearing or reading the statement reasonably could have interpreted it as such.  This burden is not a light one, and the question of whether an allegedly defamatory statement could reasonably be interpreted to be "of and concerning" a particular plaintiff **is a question of law for the courts to decide**.

*Three Amigos SJL Rest., Inc. v. CBS News Inc.*, 28 N.Y.3d 82, 86-87 (2016) (emphasis added) (citations omitted).  *See also Springer v. Viking Press*, 60 N.Y.2d 916, 917 (1983) ("[W]hether the complaint sufficiently alleges that [a book character] refers to plaintiff is a matter for the court . . . ."); *Carlucci v. Poughkeepsie Newspapers, Inc.*, 57 N.Y.2d 883, 885 (1982) ("[A]s a matter of law, that the article was not of and concerning the corporation.").

The vast majority of the statements relied upon by Bernstein cannot be construed to be "of and concerning" Bernstein under any circumstances.  None of the statements mentions Bernstein by name.  None of the statements refers to any of Bernstein's allegations.  And some of the statements are expressly directed at other parties.  *See, e.g.,* Complaint ¶ 60 ("O'Reilly claimed there was a 'left wing conspiracy that was behind his ouster and that he had been organizing a legal team to get the truth out to the American people . . . [and] we have physical proof that this is bullshit.'"); *see also Id.* (stating O'Reilly conducted an investigation that produced "shocking results" about how "he was 'the latest victim' of a progressive campaign aimed at getting him off the air").  Even more absurdly, Bernstein does not explain how such statements as "You know, am I mad at God? Yeah, I'm mad at him. I wish I had more protection. I wish this stuff didn't happen."  (*Id.* at ¶ 70)  Bernstein's inclusion of such patently frivolous material within her defamation allegations demonstrates that she is simply seeking publicity, not redress for defamation.

In fact, a closer look at the statements and the full context in which O'Reilly uttered them proves that O'Reilly did not refer to Bernstein at all, and that the statements are therefore not actionable.  Rather, the statements attributed to O'Reilly concern the general public uproar that led to O'Reilly's firing by Fox News.  To overcome this fact, Bernstein ignores the actual context of O'Reilly's statements and, at times, conveniently omits critical information.  For example, Bernstein alleges that O'Reilly defamed her by stating "that *the claims* against him were 'politically and financially motivated.'"  (Complaint, ¶ 52, Bourne Decl, Ex. 1) (emphasis added).  However, what the New York Times actually reported was that O'Reilly viewed "the *public outcry* over the allegations against him" as "politically and financially motivated." (Bourne Decl, Ex. 3) (emphasis added).  Because Bernstein does not, and cannot, claim that she

was part of the "public outcry" against O'Reilly, and, indeed, denies that she was the source of the information printed in the New York Times, this statement is not "of and concerning" Bernstein.  That is just one example.  Each of the other allegedly defamatory statements fails for similar reasons.

As another example, Bernstein alleges that O'Reilly defamed her by stating that the "[the complaints were] a political and financial hit job."  (Complaint, ¶ 54.)  To the contrary, as was widely reported at the time, O'Reilly described the media-led campaign and sponsor boycott that resulted in his termination by Fox News as a "political and financial hit job," not the complaints made by individual employees.  (*See, e.g.*, Bourne Decl., Ex. 4.)  Thus, this statement is not "of and concerning" Bernstein.

Bernstein also alleges that O'Reilly defamed her in an editorial comment that aired on his podcast on October 23, 2017, two days after the New York Times published an article describing a previously-undisclosed settlement with another individual, not Bernstein.  (Complaint, ¶¶ 59-70.)  However, any reasonable reader of this statement understands that the target of O'Reilly's criticism was the New York Times, not Bernstein.  As the full transcript makes clear, O'Reilly described how "the New York Times attacked" by "organiz[ing] an article that was misleading, had false facts in it, and then Media Matters took it, threatened to boycott sponsors," and how this led to his dismissal.  (Bourne Decl., Ex. 5.)  O'Reilly then moved on to discuss an October 2017 New York Times article that concerned claims made by an entirely different individual: "the New York Times said 'you know, we didn't kill him, so we've got to kill him again.'  So they came back with another bunch of garbage."  *Id.*  O'Reilly then stated that "*I truly believe that these people at the New York Times are out to hurt people with whom they disagree. They don't want me in the marketplace. That's what this is all about*."  *Id.*  (emphasis added).  Taken in

its full context, it is clear that O'Reilly was not speaking about Bernstein at all, but rather was commenting on the New York Times and its reporting.

In addition to these statements that were not "of and concerning" Bernstein because they were "of and concerning" other parties, each of the other statements on which Bernstein relies is the sort of generalized statement that cannot be considered "of and concerning" Bernstein.  This includes the general statements about himself, his family, and his position as a public figure. (Complaint, ¶¶ 19, 20, 41, and 58, Bourne Decl., Ex. 1.)  It also includes O'Reilly's claims that no one ever filed complaints against him.   (Complaint, ¶¶ 45, 47.)  And it includes O'Reilly's highly generalized statements that "no one was mistreated on my watch," and that "I never mistreated anyone."  (Complaint, ¶¶ 40, 45 .)

In sum, not one of O'Reilly's statements was "of and concerning" Bernstein as required to state a claim for defamation. Bernstein's theory of liability is constructed on unreasonable, strained interpretations of O'Reilly's statements.  A fair reading of O'Reilly's statements and the context in which they were made demonstrates beyond all doubt that they were not "of and concerning" Bernstein.  None of the statements mentions Bernstein by name and none of them contain any reference to Bernstein or her allegations.  Bernstein's defamation claims therefore fail as a matter of law.

### C.   Even If the Statements Concern Bernstein, Which They Do Not, O'Reilly's Statements Are Not Defamatory

Even assuming that Bernstein properly pled that O'Reilly's statements were "of and concerning" her, which she did not, Bernstein's claims fail because O'Reilly's statements are not defamatory, either because they are statements of opinion, or because they do not expose Bernstein to shame and ridicule and so are not susceptible to a defamatory meaning.

11

1.    **All of the Allegedly Defamatory Statements Are Protected Statements of Opinion**

"New York law protects derogatory statements which may be categorized as 'opinion' as opposed to 'fact.'" *Chau*, 771 F.3d at 128 (citation omitted); *Levin v. McPhee*, 119 F.3d 189, 196 (2d Cir. 1997).  Factors that bear on the inquiry include (1) whether the statements have a "precise and readily understood meaning," (2) whether the statements are "susceptible of being proven false," and (3) "whether the context of the statements signals to the reader that what is being conveyed is likely to be opinion rather than fact."  *Levin*, 119 F.3d at 196; *Chau*, 771 F.3d at 128.  Determination of whether a particular statement is a statement of fact or a statement of opinion "is a matter for the court."  *Levin*, 119 F.3d at 196.

The allegedly defamatory statements set forth in Complaint are statements of opinion by O'Reilly about his motivations and about the public furor that has surrounded him throughout his career and particularly at the time of his departure from Fox News.  This includes O'Reilly's statement that, "like other prominent and controversial people, I'm vulnerable to lawsuits from individuals who want me to pay them to avoid negative publicity."  (Complaint, ¶ 21.)  It includes O'Reilly's statement that, "[t]he worst part of my job is being a target for those who would harm me and my employer[.]"  (Complaint, ¶¶ 21, 23.)  It includes O'Reilly's statement that, "once you get a famous name, and once you're in the political arena, the combination is devastating.  If they can get you, they're going to get you."  (Complaint, ¶ 41, Bourne Decl., Ex. 1.)  And it includes O'Reilly's statement that the public outcry against O'Reilly was "politically and financially motivated," and the similar statement that the campaign that led to his ouster from Fox News was a "political and financial hit job."  (Complaint, ¶ 52, 54.)  These statements are O'Reilly's subjective views and are not susceptible to being proven false.  As such, they are the sort of generalized opinions that are not actionable under New York law.  *See, e.g.*, *Small*

12

*Bus.*, 230 F. Supp. 3d at 311-12 (statement that "many people might view" business partner's actions as "extortion, manipulation, fraud, and deceit" was opinion incapable by being proven false, and, even if taken as a direct allegation, was "loose, figurative, or hyperbolic" language "that is not actionable for defamation"); *Marchuk v. Faruqi & Faruqi, LLP*, 100 F. Supp. 3d 302, 314 (S.D.N.Y. 2015) (defendant's statement that plaintiff had attempted to use lawsuit to extort defendants was not actionable defamation); *Sabharwal & Finkel, LLC v. Sorrell*, 117 A.D.3d 437, 437-38 (1st Dep't 2014) (plaintiff's statement that defendant "broached the topic of settlement with their client's adversaries in an attempt to 'extort' money from them" was not actionable because "a reasonable reader would conclude that they constitute hyperbole and convey non-actionable opinions about the merits of the lawsuit and the motivation of [defendant's] attorneys, rather than statements of fact"); *Costanza v. Seinfeld*, 279 A.D.2d 255, 256 (1st Dep't 2001) (defendant's statement that plaintiff was "flagrant opportunist" who had "greatly exaggerated his relationship" with comedian was "the expression of opinion, which is not actionable").

Similarly, O'Reilly's criticisms of the New York Times's reporting are highly generalized opinions about what he considers lax professional standards at a flagship newspaper and the effect that this reporting has had on his life.  (Complaint, ¶ 64.)  Such statements are not actionable, and certainly are not actionable by Bernstein to whom the statements do not refer.

Finally, O'Reilly's statements that "no one was mistreated on my watch," and that he "never mistreated anyone" (Complaint, ¶¶ 40, 45, Bourne Decl., Ex. 1), are also non-defamatory statements of opinion because the word "mistreated" has no "precise and readily understood meaning." *Levin*, 119 F.3d at 196.  A recent decision by the Appellate Division, *Springer v. Almontaser*, 75 A.D.3d 539 (2d Dep't 2010), is instructive.  In that case, the principal of a public

school who had been forced to resign following a public campaign against her gave a press conference in which she accused the plaintiffs of "conducting a ferocious smear campaign against her, stalking her, and verbally assaulting her." *Id.* at 540. The court held that that the principal's "statement that she was stalked and harassed was not an actionable statement of objective fact because it did not have a precise, readily understood meaning." *Id.* at 541. The court accordingly found that the plaintiffs had failed to state a cause of action for defamation. *Id.*

Moreover, the broader context must also be considered. O'Reilly's statements were made in response to serious public allegations accusing him of sexual harassment. A reasonable person would expect O'Reilly, a notoriously "pugnacious" television host (Bourne Decl., Ex. 3), to respond forcefully by offering his opinion regarding the allegations. Applying this context, a reasonably reader would view O'Reilly's statements as opinion. *See Cook v. Relin*, 280 A.D.2d 897, 898 (4th Dep't 2001). Any reasonable reader or listener would readily appreciate because O'Reilly was merely defending himself and his character. *See, e.g.,* William Blake Odgers, *A Digest of the Law of Libel and Slander* 228 (1st Am. ed. Bigelow 1881) (recognizing an accused's long-established "right to defend his character") (quoted in *Chaffin v. Lynch*, 83 Va. 106 (1887)). O'Reilly, like everyone else, is permitted to defend himself and deny allegations of wrongdoing when confronted with them. *See, e.g.*, *McNamee v. Clemens*, No. 09 CV 1647, 2013 U.S. Dist. LEXIS 107551, at *8 (E.D.N.Y. July 31, 2013) ("General denials of accusations are not actionable as defamation."); *cf. Davis v. Boeheim*, 24 N.Y.3d 262 (2014) (holding that statements were not protected opinions where neither defendant was in a position to deny allegations made against themselves as individuals, based on first-hand knowledge, and were instead allegedly reporting the results of investigations into the alleged abuse committed by a third-party).

14

"[A] person under attack may properly allege, in Dean Prosser's words, 'that his accuser is an unmitigated liar and the truth is not in him.'" *Foretich v. Capital Cities/ABC, Inc.*, 37 F.3d 1541, 1562 (4th Cir. 1994) (quoting *Prosser and Keeton on the Law of Torts*, § 115, 825 (5th ed. 1984)).  It is clear that "a reasonable reader[, listener or viewer]" would have concluded that O'Reilly's statements were made out of his personal desire and right to defend his character, and not that they were "conveying facts about the plaintiff."  *Davis*, 24 N.Y.3d at 267-70.  None of O'Reilly's statements can fairly be characterized as "altogether disproportionate to the occasion." *Montgomery Ward & Co. v. Watson*, 55 F.2d 184, 188 (4th Cir. 1932).  "The immediate context in which the statements were made would signal to the reasonable reader or listener that they were opinion and not fact."  *Jacobus v. Trump*, 156 A.D.3d 452, 453 (1st Dep't 2017), *leave to appeal denied*, 2018 WL 1597479 (N.Y. Apr. 3, 2018).

> **2.     Any Non-Opinion Statements Made By O'Reilly Are Not Reasonably Susceptible Of A Defamatory Meaning**

None of O'Reilly's statements can be considered defamatory because none of O'Reilly's statements exposed Bernstein to any ridicule or public shame.  Even the primary statements complained of by Bernstein, in which O'Reilly stated that "no one has ever filed a complaint about me with the Human Resources Department, even on the anonymous hotline," and that "I've been in the business for 43 years and I've never had a complaint filed by anyone at 12 different companies" (Complaint, ¶¶ 58.), cannot be considered to be defamatory.  Even assuming that these statements (or any other statements) are false, and that they concerned Bernstein, these statements are not actionable defamation because they do not expose Bernstein to any public shame or ridicule.

This is because "[u]nder New York law, a statement is defamatory only if it would expose an individual to shame 'in the minds of right-thinking persons.'"  *Michtavi v. N.Y. Daily*

15

*News*, 587 F.3d 551, 552 (2d Cir. 2009) (citation omitted); *Chau*, 771 F.3d at 127 ("A statement is defamatory if it exposes an individual 'to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation or disgrace, or . . . induce[s] an evil opinion of one in the minds of right-thinking persons, and . . . deprive[s] one of their confidence and friendly intercourse in society.'" (alterations in original) (citation omitted)). "A statement, therefore, can meet all of the other elements of defamation—be factual, published, false, and about the plaintiff—but still not be actionable if it fails to rise to the necessary level of derogation." *Id.* at 127. "Whether particular words are defamatory presents a legal question to be resolved by the courts in the first instance." *Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 177 (2d Cir. 2000) (quotation omitted).

None of O'Reilly's statements vilified or exposed Bernstein to shame in anyone's mind. For example, O'Reilly's statement about his how he is "angry at God" does nothing to defame Bernstein. Similarly, O'Reilly statements about his clean record of human resource complaints neither vilify nor expose Bernstein to shame in the minds of reasonable members of the community. *See, e.g.*, *Chau*, 771 F.3d at 131; *Konrad v. Brown*, 91 A.D.3d 545, 546 (1st Dep't 2012) (statement that attorney had been discharged by client "was not susceptible of a defamatory meaning because defendant did not mention any reason for the discharge").

In fact, with regard to Bernstein's primary complaint, O'Reilly's statement that "no one has ever filed a complaint about me with the Human Resources Department, even on the anonymous hotline" is simply not defamatory for several reasons. O'Reilly disputes that anyone complained, but that is beside the point: Even if O'Reilly falsely stated that no one complained, such a statement would not be defamatory as a matter of law. This Court can and should consider the "broad social context" at the time O'Reilly made the statements about reporting

allegedly improper behavior to Fox News.  *See Chau*, 771 F.3d at 131.  As it has been widely reported, and is commonly known, that a majority of people who experienced harassment do not report it.  There is no stigma attached to a person's decision not to report harassment.  As such, an average reader simply would not come away with a negative impression of Bernstein based upon O'Reilly's statements that "no one has ever filed a complaint about me with the Human Resources Department" or "I've been in the business for 43 years and I've never had a complaint filed by anyone at 12 different companies."

In another glaring example of the deficiency of Bernstein's claims, ¶ 59 of the Complaint includes an extended excerpt of recordings of an interview that Bernstein erroneously describes as a "press conference." According to Bernstein, the statements in this excerpt were "false, defamatory and meant to portray himself as a victim."  (Complaint at ¶ 60.)  Leaving aside for a moment that portraying oneself as a "victim" does not give rise to a cause of action for defamation, nothing in the excerpt is defamatory:

- "Well, it's been a horrendous experience." – **Opinion. Not actionable.**

- "I've been in the broadcast business, journalism business 43 years." – **Not defamatory.  Not actionable**

- "I've never had on complaint filed against me by a coworker, in any human resources department in 43 years." – **Not defamatory. Does not refer to Bernstein.  Not actionable**

- "And that encompasses 12 different companies." – **Not defamatory.  Not actionable**

17

- "So, all of a sudden, all this stuff happens, and the pain it brings to my children is indescribable.  Indescribable." – **Opinion, does not refer to Bernstein. Not actionable.**

- "And I would give up my life to protect my children, but I find myself not able to protect them because of things that are being said about me, their father." – **Opinion, hyperbole, does not refer to Bernstein. Not actionable.**

- "Eric Bolling's son is dead. He's dead. Because of allegations made, *in my opinion*, and I know this to be true, against Mr. Bolling. No game." (emphasis added) – **Opinion, not related to Bernstein or her claims.  Not actionable.**

(Complaint at ¶ 59.)  This passage, like all of those alleged by Bernstein, fails to establish viable claims for defamation against O'Reilly.  Strikingly, though Bernstein alleges numerous times that O'Reilly called her and others liars, she fails to identify even a single statement where O'Reilly is alleged to have used that word.  That Bernstein cannot even support her foundational allegation by more than inference and linguistic contortion highlights how completely deficient this suit is on the merits.

      **D.**    **Bernstein Failed To Allege Defamation by Implication**

Bernstein has also failed adequately to allege defamation by implication.  "[A] plaintiff alleging defamation by implication must show that Defendants affirmatively intended such implication." *Biro v. Condé Nast*, 883 F. Supp. 2d 441, 466 (S.D.N.Y. 2012) (internal quotation marks omitted).  "In New York, '[t]o survive a motion to dismiss a claim for defamation by implication where the factual statements are substantially true, the plaintiff must make a rigorous showing that the language of the communication as a whole can be reasonably read both to impart a defamatory inference and to affirmatively suggest that the author intended or endorsed

that inference.'" *Tannerite Sports, LLC v. NBCUniversal Media LLC*, 135 F. Supp. 3d 219, 232

(S.D.N.Y. 2015) (*quoting Stepanov v. Dow Jones & Co.*, 120 A.D.3d 28, 987 N.Y.S.2d 37, 38

(1st Dep't 2014)).  Bernstein has not alleged, and cannot allege, that O'Reilly defamed her by

implication.

> ### E. The Defamation Cause Of Action Must Be Dismissed Because Bernstein Failed To Allege Defamation *Per Se* And Failed To Allege Damages

Bernstein's defamation cause of action must be dismissed because (i) none of O'Reilly's

statements alleged by Bernstein to be defamatory constitute defamation *per se*, despite

Bernstein's conclusory allegation at ¶ 81, and (ii) Bernstein has not pled the required special

damages for her defamation claim to survive a motion to dismiss, despite Bernstein's conclusory

and woefully inadequate allegation at ¶ 88. *See, e.g., Krzesaj v. N.Y.C. Dep't of Educ.,* No. 16

CIV. 2926 (ER), 2017 WL 1031278, at *14 (S.D.N.Y. Mar. 15, 2017) (dismissing defamation

claim, holding that "because Plaintiff has not pled, and the Court cannot interpret, these

allegations as defamation *per se*, Plaintiff was required to plead special damages, which he failed

to do.").  Defamation *per se* applies to a limited set of statements and must be interpreted

"restrictively." *Kerik v. Tacopina*, 64 F. Supp. 3d 542, 569–70 (S.D.N.Y. 2014) ("Both New

York and New Jersey courts have criticized slander *per se* and the resulting presumption of

damages, and consequently have interpreted the categories restrictively.").

The New York Court of Appeals has clearly established that defamation plaintiffs must

either plead special damages or adequately allege that one or more of the defamation *per se*

categories applies to defendant's statements:

> Slander as a rule is not actionable unless the plaintiff suffers special damage. Special damages contemplate "the loss of something having economic or pecuniary value." Plaintiff has not alleged special damages, and thus his slander claims are not sustainable unless they fall within one of the exceptions to the rule.

> The four established exceptions (collectively "slander *per se*") consist of statements (i) charging plaintiff with a serious crime; (ii) that tend to injure another in his or her trade, business or profession; (iii) that plaintiff has a loathsome disease; or (iv) imputing unchastity to a woman.

*Liberman v. Gelstein*, 80 N.Y.2d 429, 434-35 (1992) (citations omitted). Bernstein has not alleged that any of O'Reilly's alleged statements fall into any of the four "exceptions" that constitute *per se* defamation. Nothing O'Reilly said charged Bernstein with a crime, serious or otherwise. *See e.g.*, *Marchuk*, 100 F. Supp. 3d at 313–14 (S.D.N.Y. 2015) ("In their press release, the Defendants stated that Ms. Marchuk was 'obsessed' with Mr. Monteverde and fabricated her allegations and distributed copies of her complaint in order to 'extort' Defendants. These statements are not defamatory *per se* because they speak to Ms. Marchuk's personal character, rather than her professional competence directly."); *Liberman*, 80 N.Y.2d at 435 ("Not every imputation of unlawful behavior, however, is slanderous *per se*. . . . [T]he law distinguishes between serious and relatively minor offenses, and only statements regarding the former are actionable without proof of damage.").

And nothing O'Reilly said would tend to injure Bernstein in her trade, business or profession. Bernstein failed even to allege what her profession is, let alone sufficiently articulate that any of O'Reilly's statements injured her in her profession. *Kerik*, 64 F. Supp. 3d at 570 ("In this case, the plaintiff has not alleged what his current trade or business is, and how the defendant's accusations that the plaintiff was 'spreading lies and innuendo' and has an 'allergy to the truth' affect that trade. The plaintiff therefore cannot recover for defamation based on these statements without showing damages, and the plaintiff's claim based on these statements is dismissed."); *Liberman*, 80 N.Y.2d at 436 ("That exception, however, is 'limited to defamation of a kind incompatible with the proper conduct of the business, trade, profession or office itself.

The statement must be made with reference to a matter of significance and importance for that purpose, rather than a more general reflection upon the plaintiff's character or qualities.'").

Having failed adequately to plead defamation *per se*, Bernstein must plead special damages to survive a motion to dismiss.  *See Kamanou v. Exec. Sec'y of Comm'n of the Econ. Cmty. of W. African States*, No. 10 CIV. 7286 GBD JLC, 2012 WL 162708, at *10 (S.D.N.Y. Jan. 19, 2012) ("Because the Statement at issue does not constitute defamation *per se*, [Plaintiff] must, but fails to, plead special damages to survive a motion to dismiss."), *report and recommendation adopted sub nom. Kamanou v. Exec. Sec'y of Comm'n of Econ. Cmty. of W. African States*, No. 10 CIV. 7286 GBD JLC, 2012 WL 868700 (S.D.N.Y. Mar. 14, 2012). "Special damages consist of 'the loss of something having economic or pecuniary value which must flow directly from the injury to reputation caused by the defamation[.]'" *Celle.*, 209 F.3d at 179  (*quoting Matherson v. Marchello*, 100 A.D.2d 233 (2d Dep't 1984)). "[T]hey must be fully and accurately identified 'with sufficient particularity to identify actual losses.'" *Matherson*, 100 A.D.2d at 235.  "To satisfy the special damages requirement, a plaintiff must set forth an itemized account of her losses; round figures or a general allegation of a dollar amount as special damages will not suffice." *Nunez v. A-T Fin. Info.*, 957 F. Supp. 438, 441 (S.D.N.Y. 1997).  "The particularity requirement is strictly applied, as courts will dismiss defamation claims for failure to allege special damages with the requisite degree of specificity." *Thai v. Cayre Grp., Ltd.*, 726 F. Supp. 2d 323, 330 (S.D.N.Y. 2010).  Bernstein has utterly failed to plead special damages with the particularity and detail required, and her claim must therefore be dismissed.  Bernstein's single, fleeting reference "special damages," within a litany of similarly-unfounded damages, cannot save her defective claim.

21

## II.   <u>BERNSTEIN'S BREACH OF CONTRACT CLAIM MUST BE DISMISSED</u>

This Court can also dismiss Bernstein's breach of contract claims against O'Reilly.

Count One of the Second Amended Complaint must be dismissed against O'Reilly because,

under "New York law, non-parties generally cannot be held liable for breach of contract."

*Rennaker Co. Consulting v. TLM Grp., LLC*, No. 16 Civ. 3787 (DAB), 2017 WL 2240235, at *3

(S.D.N.Y. Mar. 29, 2017).   There are narrow exceptions to this rule in which a stranger to the

contract can be held liable if the contract has been assumed or assigned.  *See Impulse Mktg. Grp.,*

*Inc. v. Nat'l Small Bus. All., Inc*., No. 05-CV-7776, 2007 WL 1701813, at *5 (S.D.N.Y. June 12,

2007) ("It is hornbook law that a non-signatory to a contract cannot be named as a defendant in a

breach of contract action unless it has thereafter assumed or been assigned the contract."

(quotation omitted)).   Bernstein alleges neither:  O'Reilly has not been assigned, nor has he

assumed the obligations of, the contract.   Accordingly, Count One of the Complaint must be

dismissed.

### <u>CONCLUSION</u>

Sixteen years ago, Bernstein and Fox News entered into a severance agreement, in which

Bernstein received a substantial payment for, as the New York Times described, an allegation

that O'Reilly "stormed into a newsroom and screamed" at Bernstein, who "left the network with

a payout and bound by a confidentiality agreement."  Whatever the merit of this claim – and

O'Reilly denies any wrongdoing – Bernstein's claim had nothing to do with sexual harassment.

Correspondingly, O'Reilly's comments on the New York Times article and the follow up articles

that reported allegations of sexual harassment lodged against him had nothing to do with

Bernstein.  Simply put, as demonstrated above, O'Reilly's statements do not concern Bernstein,

reflect his opinions about the unbalanced journalism he received, which are therefore not

defamatory as a matter of law.  Bernstein's action therefore must be dismissed.

Dated: October 31, 2018              Respectfully submitted,
      New York, New York

Fredric S. Newman, FN-3174
Andrew N. Bourne, AB-9774
HOGUET NEWMAN
REGAL & KENNEY, LLP
One Grand Central Place
60 East 42nd Street, 48th Floor
New York, NY 10165
Tel:    (212) 689-8808
Email:  fnewman@hnrkaw.com
       abourne@hnrklaw.com

*Attorneys for Defendant Bill O'Reilly*