**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------x
RACHEL WITLIEB BERNSTEIN,      :  Index No.: 17-cv-9483(DAB)
                                      :
              Plaintiff,     :
v.                           :
                                      :
BILL O'REILLY, FOX NEWS     :
NETWORK LLC and TWENTY-FIRST  :
CENTURY FOX, INC.,         :
                                      :
             Defendants.   :
---------------------------------------------------------x

---

### PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS FOX NEWS NETWORK LLC and TWENTY-FIRST CENTURY FOX, INC.'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

---

**SMITH MULLIN, P.C.**
420 Lexington Avenue, Suite 300
New York, New York 10170
(212) 297-6134; fax: (917) 677-3697
(nmullin@smithmullin.com)

240 Claremont Avenue
Montclair, New Jersey 07042
(973) 783-7607; fax: (973) 783-9894

**Of Counsel and on the Brief:**
    **NEIL MULLIN, ESQ.**
    **NANCY ERIKA SMITH, ESQ.**

**On the Brief:**
    **JAMES E. BURDEN**

## TABLE OF CONTENTS

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

A.    Plaintiffs Entered Agreements with Defendant O'Reilly
Settling Provable Claims of Harassment . . . . . . . . . . . . . . . . . . . . . . . . . . 1

B.    Defendant O'Reilly Defamed Plaintiffs Relentlessly on National
TV, on National Radio, on Webcasts, on Blogs, in the Print
Media and Social Media Published Throughout the World . . . . . . . . . . . . . . 2

C.    Defendant Fox News and 21st CF's Defamatory Statements . . . . . . . . . . . . . 5

     1.     The April 19, 2017 Fox News Publication . . . . . . . . . . . . . . . . . . . . . . 5

     2.     Defendant Fox News Published O'Reilly's
Defamation on Hannity's Radio Show . . . . . . . . . . . . . . . . . . . . . . . . 6

     3.     Fox News and 21st CF's Chair and CEO Defamed Plaintiffs . . . . . . . . . 7

     4.     The April 1, 2017 Press Release . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

LEGAL ARGUMENT

POINT I:    PLAINTIFFS HAVE CLEARLY PLED
DEFAMATION UNDER NEW YORK LAW . . . . . . . . . . . . . . . . . . . . . . . . 8

A.    The April 1, 2017 Press Release . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

B.    Defendant Fox News Published O'Reilly's April 19, 2017 Defamation . . . . . . . 10

C.    Hannity's Radio Show . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

D.    Murdoch's Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

POINT II:    ALL FOUR DEFAMATORY STATEMENTS WERE
"OF AND CONCERNING" PLAINTIFFS . . . . . . . . . . . . . . . . . . . . . . . . . 13

POINT III:    DEFENDANTS' STATEMENTS ARE NEITHER "SUBSTANTIALLY
TRUE," NOR "SIMPLE DENIALS," NOR "OPINION" . . . . . . . . . . . . . . . . 14

A.    The Statements are Not Substantially True . . . . . . . . . . . . . . . . . . . . . . . . . 14

B.     The Statements are Not General Denials . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

C.     The Statements are Not Opinion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

POINT IV:     DEFENDANTS FOX NEWS AND 21ST CF MATERIALLY
              BREACHED THE NON-DISPARAGEMENT AND
              CONFIDENTIALITY CLAUSES OF PLAINTIFF
              BERNSTEIN'S SETTLEMENT AGREEMENT . . . . . . . . . . . . . . . . . . . . . . . 22

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

# TABLE OF AUTHORITIES

## CASES

*Algarin v. Town of Wallkill*, 421 *F.3d* 137 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Biro v. Conde Nast*, 883 *F.Supp.2d* 441 (S.D.N.Y. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Davis v. Boeheim*, 24 *N.Y.3d* 262, 998 *N.Y.S.2d* 131 (2014) . . . . . . . . . . . 9, 10, 12, 18, 19, 20, 21

*DeBlasio v. North Shore Univ. Hospital*, 213 *A.D.2d* 584,
       624 *N.Y.S.2d* 263 (2d Dep't 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Firth v. State of New York*, 761 *N.Y.S.2d* 361 (A.D. 3rd Dept. 2003) . . . . . . . . . . . . . . . . . . . . 12

*Garrison v. Louisiana*, 379 U.S. 64, 74 (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Gilman v. Spitzer*, 902 *F.Supp.2d* 389 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Giuffre v. Maxwell*, 165 *F.Supp.3d* 147 (S.D.N.Y 2016) . . . . . . . . . . . . . . . . . . . . . . . 18, 19, 21

*Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989) . . . . . . . . . . . 17

*Harwood Pharmacal Co. v. National Broadcasting Co.*, 9 *N.Y.2d* 460,
       214 *N.Y.S.2d* 725 (1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*In re Philadelphia Newspapers, LLC*, 690 *F.3d* 161 (3rd Cir. 2012) . . . . . . . . . . . . . . . . . . . . . 11

*Kaminester v. Weintraub*, 131 *A.D.2d* 440, 516 N.Y.S.2d 234 (2d Dep't 1987) . . . . . . . . . . . 16

*Mase v. Reilly*, 206 *A.D.* 434, 201 *N.Y.S.* 470 (1st Dep't 1923) . . . . . . . . . . . . . . . . . . . . . . . . 16

*McKee v. Cosby*, 236 *F.Supp.3d* 427 (D.Mass. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*McNamee v. Clemens*, No. 09-cv-1647,
       2013 <u>WL</u> 3968740, at * 3 (E.D.N.Y. July 31, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Murray v. Watervliet*, 130 *A.D.2d* 830, 515 *N.Y.S.2d* 150 (3d Dep't 1987) . . . . . . . . . . . . . . . 13

*Perks v. Town of Huntington*, 251 *F.Supp.2d* 1143 (E.D.N.Y 2003) . . . . . . . . . . . . . . . . . . . . . 13

*Porter v. Saar*, 688 *N.Y.S.2d* 137 (App. Div. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Rausman v. Baugh*, 248 *A.D.2d* 8, 682 *N.Y.S.2d* 42 (2d Dep't 1998) . . . . . . . . . . . . . . . . . . . . . 13

*Riviello v. Waldron*, 47 *N.Y.2d* 297, 418 *N.Y.S.2d* 300 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Salyer v. S. Poverty Law Ctr., Inc.*, 701 *F.Supp.2d* 912 (W.D. Ky. 2009) . . . . . . . . . . . . . . . . 11

*Seymour v. New York State Electric & Gas*, 215 *A.D.2d* 971,
     627 *N.Y.S.2d* 466 (3d Dep't 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*St. Amant v. Thompson*, 390 U.S. 727, 732 (1968). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Three Amigos SJL Rest., Inc. v. CBS News, Inc.*, 28 *N.Y.3d* 82, 86-87 (2016) . . . . . . . . . . . . . 14

*U.S. ex rel. Klein v. Omeros Corp.*, 897 *F.Supp.2d* 1058 (W.D. Wash. 2012) . . . . . . . . . . . . . 11

## STATEMENT OF FACTS

**A.**      **Plaintiffs Entered Agreements with Defendant**
            **O'Reilly Settling Provable Claims of Harassment**

More than 15 years ago, on September 9, 2002, Plaintiff Rachel Witlieb Bernstein entered

into an Agreement with Fox News in which Defendant Bill O'Reilly is a named third-party

beneficiary.  (See, Declaration of Joseph M. Terry, Esq., **Ex. 5**).  The Fox Defendants falsely

claim that it was only "allegations of mistreatment" and not sexual harassment by Defendant

O'Reilly which led to the underlying Settlement Agreement.  (Db 1).  To the contrary, prior to

Plaintiff Bernstein's termination, Defendant O'Reilly subjected her to severe abuse and sexual

harassment, which is described more fully in the proposed Third Amended Complaint.  (See,

Mullin Dec., **Ex. M** at ¶¶ 15-36).  As set forth therein, for months Defendant O'Reilly

discriminated against Plaintiff Bernstein based on her gender and religion, by among other

things, being verbally abusive to her, frequently screaming at her, falsely blaming her for errors

of others, physically threatening her, and making an Anti-Semitic statement that "we don't need

your kind here." (Mullin Dec., **Ex. M** at ¶¶ 15-36).  It was these incidents, coupled with Plaintiff

Bernstein's complaints to Human Resources and others about Defendant O'Reilly, which led to

her termination and entry into the Settlement Agreement which the Defendants have breached.

More than 13 years ago, on October 28, 2004, plaintiff Andrea Mackris entered into a

Settlement Agreement, along with her then lawyer and his firm, with defendant Bill O'Reilly and

Fox News Network.  (Mullin Dec., **Ex. B**).  This Settlement Agreement was amended more than

10 years ago on November 7, 2007.  (Mullin Dec., **Ex. C**).

Almost seven (7) years ago, on August 10, 2011, plaintiff Rebecca Gomez Diamond

entered into a Settlement Agreement and Release with defendants Bill O'Reilly and Fox News Network.  (Mullin Dec., **Ex. D**).

In all the years since these Settlement Agreements have been entered, up until the present, none of the plaintiffs breached any of the provisions of the Agreements.  (Mullin Dec., Second Amended Complaint, **Ex. E**, ¶¶ 17 and 19.

On September 12, 2016, Defendant O'Reilly's lawyer, Fredric S. Newman, wrote a letter to plaintiff Andrea Mackris stating, "We understand that you have been interviewed by Emily Steel, and perhaps others, concerning Fox News" and threatening Mackris with "immediate legal proceedings" in the event she breached the Settlement Agreement[1].  (Mullin Dec., **Ex. F**).

On April 1, 2017, <u>The New York Times</u> reported that "Bill O'Reilly Thrives at Fox News, Even as Harassment Settlements Add Up."  The article was written by Emily Steel and Michael S. Schmidt and revealed that O'Reilly and/or Defendant Fox News had paid five (5) women about $13 million to forego litigation and never speak about what Defendant O'Reilly did to them.  The article specifically named each of the three Plaintiffs, noting that a settlement was reached with Ms. Bernstein in 2002, with Ms. Mackris in 2004, and with Ms. Diamond in 2011.  In addition to Plaintiffs, the article named Laurie Dhue (currently suing Mr. O'Reilly for defamation) and one other woman as people who settled with O'Reilly.

---

[1] It is unclear how Mr. Newman became aware of this fact.  In the past, defendant O'Reilly and Fox News engaged in surveillance and intimidation of Ms. Mackris (as reflected in her Settlement Agreement (Mullin Dec., **Ex. B**, ¶ 4(c)).  Perhaps that surveillance was reactivated once Defendants became aware that <u>The New York Times</u> was writing a story, or defendants were surveilling Ms. Steel.  Notably, neither Defendant O'Reilly nor Defendant Fox instituted an arbitration action or sought injunctive relief in September of 2016 as required by the Settlement Agreements' arbitration clauses.

**B.    Defendant O'Reilly Defamed Plaintiffs Relentlessly on National TV, on National Radio, on Webcasts, on Blogs, in the <u>Print Media and Social Media Published Throughout the World</u>**

Enraged that <u>The New York Times</u> had exposed his harassment of the small specifically-defined group of five women, O'Reilly began a public relations campaign of defamation against his victims.  As specifically detailed in the proposed Third Amended Complaint (Mullin Dec., **Ex. E**), O'Reilly viciously defamed the Plaintiffs throughout the world for nine months - until Plaintiffs sued to stop it.  Millions of people around the world heard the defamation.  It resulted in many derogatory comments holding Plaintiffs up to derogation and ridicule in newspapers, on TV, on radio, on webcasts, on websites, on blogs, and on social media.  O'Reilly's defamatory statements were published in print and online in the largest media in the world, including, but not limited to, Newsweek, the Washington Post, NBCnews.com, New York Magazine, Money Magazine, CNN.com, CNBC.com, Vanity Fair, the LA Times, the Washington Examiner, Huffington Post, the Chicago Tribune, the Hollywood Reporter, the Daily Mail, and The New York Times.

Defendant O'Reilly's defamatory statements are too numerous to list, but, as detailed in the Second Amended Complaint, they include:

- calling himself a "victim" of a "smear campaign," "a brutal campaign of character assassination this is unprecedented in post-McCarthyist America." (<u>Id</u>. at ¶ 22(a)).

- "we have physical proof that this is bullshit.  Bullshit. . . . it's all crap." (Mullin Dec., **Ex. E**, ¶ 60).

- "This is crap, and you know it.  It's politically and financially motivated, and we can prove it, with shocking information." (<u>Id</u>. at ¶ 60)

- "these harassment deals" [are a] "bunch of garbage." (<u>Id</u>. at ¶ 65).

3

- "The bottom line is that my enemies who want to silence me have made my life extremely difficult and have hurt me in the marketplace.  Anybody who doesn't like me will believe all this stuff, the smear merchants put out, . . ." (<u>Id</u>. at ¶ 67).

- "It is tremendously disheartening that we part ways due to completely unfounded claims."  (<u>Id</u>. at ¶ 22(a)).

- "No one was mistreated on my watch."  (<u>Id</u>. at ¶ 40).

- "I never mistreated anyone."  (<u>Id</u>. at ¶ 45).

- "Once you get a famous name, you're in the political arena, the combination is devastating.  If they can get you, they're going to get you." (<u>Id</u>. at ¶ 41).

- O'Reilly repeatedly referred to himself as a "victim."  (<u>Id</u>. at ¶¶  41, 43, 60, 70, 71).

- Claiming to be conducting an "investigation" "clearing his name" "to expose the whole thing" "the smears." (<u>Id</u>. at ¶ 43).

- "What we are going to uncover is shocking . . . that this could happen in our Republic - this kind of defamation . . . and it's bought and paid for . . . millions or dollars in play . . . is shocking." (Mullin Dec., **Ex. K** at 5:14-15; 5:18-22).

- Claiming after his "investigation" he would give the public "facts," "no he said she said.  Facts.  Cold stone facts.  Shocking the defamation that can occur." (<u>Id</u>. at ¶ 43).

- "They don't care if it's true or not.  Allegations become facts." (<u>Id</u>. at ¶ 43).

- "Every allegation is a conviction . . . every allegation in this area is a conviction.  They don't look for the truth." (<u>Id</u>. at ¶ 45).

- Repeatedly calling the plaintiffs' harassment claims a "political and financial hit job," and "politically and financially motivated." (<u>Id</u>. at ¶¶ 54, 55).

- "I'm vulnerable to lawsuits from individuals who want me to pay them to avoid negative publicity." (<u>Id</u>. at ¶ 21).

- Repeatedly, over and over, falsely stating "I have been in the broadcast business for 43 years, 12 different companies.  Never one time was there any complaint filed against me with Human Resources or anybody's legal team, nothing, zero."

4

(Id. at ¶ 61).

- "The worst part of my job is being a target for those who would harm me and my employer, the Fox News Channel.  Those of us in the arena are constantly at risk, as are our families and children." (Id. at ¶ 21).

- "My biggest mistake was settling." (Id. at ¶ 61).

- "In my case, all the confidentiality stuff was - violated - every bit of it." (Id. at ¶ 62).

- "We thought people would uphold their oath and what they agreed to do.  They haven't." (Id. at ¶ 63).

- "There are two things here when it comes to women being, um, mistreated, that's the best word, every American should want one thing - justice . . .  The other thing is verifiable.  I've been in the business 43 years.  Never once was there a complaint filed against me with any HR in 12 different companies.  Verifiable." (Id. at ¶ 66).

- "I can go to sleep at night knowing very well that I never mistreated anyone on my watch in 42 years." (Id. at ¶ 45).

- "I've been upfront on this from the very beginning.  In my situation, I took the slings and arrows and I told my attorneys we'll abide by what we promised to do. But we are now going to confront everybody in court.  That's where we're going to adjudicate, in my situation.  We've already filed one lawsuit and we've got others ready to go." (Id. at ¶ 71).

- "You know, am I mad at God?  Yeah, I'm mad at him.  I wish I had more protection." (Id. at ¶ 70).

**C.**     **Defendants Fox News and 21ˢᵗ CF's Defamatory Statements**

**1.**     **The April 19, 2017 Fox News Publication**

After the April 1, 2017, New York Times article, days later, on April 18, 2017, O'Reilly's

attorney, Marc E. Kasowitz, issued a highly defamatory press release in which he stated:

> Bill O'Reilly has been subjected to a brutal campaign of character assassination that is unprecedented in post-McCarthyist America.  This law firm has uncovered evidence that the smear campaign is being orchestrated by far-left organization

bent on destroying O'Reilly for political and financial reasons.
The evidence will be put forth shortly and is irrefutable.

(Mullin Dec., **Ex. N**)[2]

On April 19, 2017, Fox News published an article which portrayed O'Reilly in the best possible light, while at the same time adopting and republishing Mr. Kasowitz's defamatory statements about the Plaintiffs.  (Mullin Dec., **Ex. L**.)  It is undisputed that the article was written by Fox News personality Howard Kurtz, published on the Fox News website, and republished around the world.

http://www.foxnews.com/entertainment/2017/04/19/fox-news-drops-bill-oreilly-in-wake-harassment-allegations.html.

The article fully adopted Kasowitz's defamatory statements such as: O'Reilly's liberal opponents had engaged in a "smear campaign" and that "O'Reilly 'has been subjected to a brutal campaign of character assassination that is unprecedented in post-McCarthyist America.'" (Mullin Dec., **Ex. E** at ¶ 22(a).)   Fox News and 21st CF did not report any effort to reach plaintiffs for comment.  Instead, they praised O'Reilly: "Even most of his critics acknowledge that O'Reilly, a former correspondent for CBS and ABC and onetime host of "Inside Edition," is an extraordinary broadcaster whose blustery, sometimes confrontational style kept putting people in the seats."  (Mullin Dec., **Ex. L**).

### 2.    Defendant Fox News Published O'Reilly's Defamation on Hannity's Radio Show

Fox News also defamed plaintiffs on September 18, 2017: O'Reilly was a guest on Fox

---

[2]The full article, published by MEDIAite can be found at:
https://www.mediaite.com/tv/oreilly-lawyer-gives-statement-irrefutable-evidence-of-a-political-smear-campaign/.

anchor Sean Hannity's radio program, "The Sean Hannity Show." There, O'Reilly defamed

plaintiffs as having engaged in "shocking . . . defamation" against him. O'Reilly stated he had

done an "investigation" of the women who accused him and had come up with "shocking results"

proving he was "the latest victim" of a progressive campaign aimed at getting him off the air.

Hannity's radio show is promoted and published by Defendant Fox News whose website links

Hannity's website and his streaming radio program to the Fox News website. (Mullin Dec., **Ex.**

**E**, ¶ 39).

     **3.**     **<u>Fox News and 21st CF's Chair and CEO Defamed Plaintiffs</u>.**

After this lawsuit was filed, on December 14, 2017, Fox News CEO and co-Executive

Chairman of 21st CF, Rupert Murdoch, called the reports of sexual harassment at Fox News

"total nonsense" (Mullin Dec., **Ex. E**, ¶ 73). Murdoch was a chief executive of <u>both</u> Fox News

and 21st CF. In an on-the-record interview being conducted regarding his role as the head of both

companies, Murdoch was asked: "How harmful was the whole raft of allegations about sexual

harassment at Fox News been for business?" Murdoch replied:

> Murdoch:    **No, that's all nonsense.** There was a problem with our Chief Executive
> [Roger Ailes] sort of over the years, but isolated incidents. As soon as we
> investigated, he was out of the place in hours - well, three or four days,
> and there's been nothing else since then. Now of course, but **that was
> largely political because we're conservative.** Well, the liberals are going
> down the drain. NBS is in deep trouble. CBS, their stars, you know, I
> think it's a very interesting subject we could go into at length, but I mean
> there are really bad cases that people should be moved aside and **there are
> other things which probably amount to a bit of flirting**. You know?
> (Emphasis supplied).

(Mullin Dec. Ex. **E**, Paragraph 73).

4.    **The April 1, 2017 Press Release**

The April 1, 2017, <u>New York Times</u> article about Defendant Fox News' covering up and

enabling serial abuse of women, reported a statement by Fox News' parent company, 21st CF that

falsely accused plaintiffs of never having complained to Fox management about sexual

harassment. The published statement claimed:

> Notwithstanding the fact that **no current or former Fox News
> employee ever took advantage of the 21st Century Fox hotline
> to raise a concern about Bill O'Reilly, even anonymously**, we
> have looked into these matters over the last few months and
> discussed them with Mr. O'Reilly.  While he denies the merits of
> these claims, Mr. O'Reilly has resolved those he regarded as his
> personal responsibility.  Mr. O'Reilly is fully committed to
> supporting our efforts to improve the environment for all our
> employees at Fox News.

(Mullin Dec., **Ex. E,** ¶ 25).(Emphasis Supplied)

## LEGAL ARGUMENT

## POINT I

## PLAINTIFFS HAVE CLEARLY PLED DEFAMATION UNDER NEW YORK LAW

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court

should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual

allegations to be true, and determine whether they plausibly give rise to an entitlement to relief."

*Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted).

Plaintiff Bernstein has clearly pled the elements of defamation.  Defendants Fox News and 21st

CF made false statements intending "to expose plaintiff to public contempt, hatred, ridicule,

8

aversion, or disgrace[3]." *Davis v. Boeheim*, 24 N.Y.3d 262, 268, 998 N.Y.S.2d 131, 22 N.E.3d 999 (2014).

### A.    The April 1, 2017 Press Release

21st CF is now a named party in this action and, as such, is liable for the defamatory April 1, 2017 statement it issued which was quoted in The New York Times and repeated throughout the world's media.  The jury can determine - based on all the facts - whether both corporate entities are responsible for the defamatory content of the press release.  In it, Defendant 21st CF claims that it had "information unknown to others," *Davis v. Boeheim*, 24 N.Y.3d 262 (2014), because "we [arguably both corporate defendants] have looked into these matters over the last few months and discussed them with Mr. O'Reilly."  The statement notes that O'Reilly "denies the merits of these claims."  If 21st CF "looked into these matters," surely it found video and voice recordings clearly evidencing Bill O'Reilly's harassment and abuse.  Both Defendants Fox News and 21st CF imply in this false statement that they have "information unknown to others," before repeating O'Reilly's denial. *Davis v. Boeheim*, 24 N.Y.3d 262, 268, 998 N.Y.S.2d 131, 22 N.E.3d 999 (2014).

But the statement went further than that, alleging the **fact** that "no current or former Fox News employee ever took advantage of the 21st Century Fox hotline to raise a concern about Bill O'Reilly, even anonymously...." (Mullin Dec. **Ex E**, ¶ 25).  This statement that no woman had ever complained about Bill O'Reilly was repeated in various forms to millions of people. It is demonstrably false. All three Plaintiffs complained about harassment and abuse by Bill O'Reilly.

---

[3]  Clearly the defamatory statements made by defendant Fox News are also "disparaging" in violation of plaintiff Bernstein's Settlement Agreement.  (Mullin Dec., **Ex. A**, ¶ 5(f)).

(Mullin Dec. **Ex. E**, ¶¶ 27, 30, 31, 56, 69). In context, it is meant to convey that Plaintiffs made up claims in order to conduct what O'Reilly repeatedly called a "political and financial hit job." (Mullin Dec. **Ex. E**, ¶¶ 54, 55).  Certainly a jury could determine that this statement, printed in the article which specifically named Plaintiffs and 2 other women, was defamatory.

> **B.**     **Defendant Fox News Published O'Reilly's April 19, 2017 Defamation**

On April 19, 2017 Defendant Fox News.com published its own article, with the byline of a Fox employee, which included Defendant O'Reilly's defamatory claim that plaintiffs' claims are "completely unfounded," part of a "liberal smear campaign" and "a brutal campaign of character assassination that is unprecedented in post-McCarthyist America." (Mullin Dec., **Ex. E**, ¶ 22(a); **Ex. L**); see, www.foxnews.com/entertainment/2017/04/19/fox-news-drops-bill-oreilly-in-wake-harassment-allegations.print.html.  A jury can reasonably determine that by publishing these false statements, portraying Plaintiffs as liars conspiring with others to harm Defendant O'Reilly, Fox News and 21st CF are liable for defaming Plaintiffs.

Statements that tend to portray sexual harassment victims as liars and/or extortionists are defamatory under New York law. *See*, *Zervos v. Trump*, Slip. Op., p. 5, Mullin Dec., **Ex. G**, citing, *Davis v. Boeheim*, 24 N.Y.3d at 268.

> **C.**     **Hannity's Radio Show**

Defendant Fox News' website has a direct link to Fox personality Sean Hannity's radio show.  The statements made by O'Reilly on that show were published directly by Fox News. The statements are factual in nature in that O'Reilly alleges he conducted an "investigation," that the women who complained of his abuse had engaged in "shocking defamation" and that he was a "victim" of a liberal conspiracy to get him off the air.

Defendants Fox News and 21st CF incorrectly argue that merely "linking to another website . . . does not constitute publication of the material on the other website and cannot serve as a basis for a defamation claim." (Db 16). In support of this contention, Defendants Fox News and 21st CF cite the following cases: *U.S. ex rel. Klein v. Omeros Corp.*, 897 F.Supp.2d 1058, 1074 (W.D. Wash. 2012); *In re Philadelphia Newspapers, LLC*, 690 F.3d 161, 175 (3rd Cir. 2012) and *Salyer v. S. Poverty Law Ctr., Inc.*, 701 F.Supp.2d 912, 917 (W.D. Ky. 2009). Each of these cases is distinguishable. First, the holding *Klein, supra* involved Washington law and not New York state law. In addition, the District Court in *Klein* noted that where, as here, a Defendant republished the defamatory content of a prior statement, a new actionable defamation had occurred:

> In *Momah*, the court held that the defendant could be liable on separate causes of action for defamation, one based on original defamatory statements he made to a newspaper, and the other based on his subsequent posting of the newspaper articles to his website. The defendant thus published the defamatory content twice. 182 P.3d at 467-68. Similarly, in *LaMon*, the court stated that the defendant's placement of the plaintiffs' litigation file from an earlier lawsuit (which included allegedly defamatory statements about the plaintiffs) in the public library was, "assuming communication of its contents to a third party, a republication of statements made originally in the course of a judicial proceedings" and could "make the [defendant] liable although the original publisher is protected by a privilege." 723 P.2d at 473 (emphasis added). In both *Momah* and *LaMon*, a finding of republication hinged on the defendant's communication of the contents of the original, allegedly defamatory statements.

[*U.S. ex rel. Klein*, 897 F.Supp.2d at 1073.]

Likewise, the holdings in *In re Philadelphia Newspapers, LLC, supra* and *Salyer, supra*, are distinguishable because neither case involved New York state law and neither case involved, as here, the republication of the contents of the defamatory statement. Here, the Defendants republished the contents of O'Reilly's defamatory statements made on the Hannity radio show by

11

introducing them to a new audience.  Under the applicable New York state law, such conduct

constitutes republication. In *Firth v. State of New York*, 761 N.Y.S.2d 361 (A.D. 3rd Dept. 2003),

the Appellate Division held:

> The Court of Appeals determined in the prior action between these parties that the
> single publication rule applies to the Internet, such that there is not a republication
> for defamation purposes each day the item is available on the Internet but, instead,
> the statute of limitations runs from the item's initial posting (see id. at 369-370).
> Republication, an exception to the single publication rule, justifies renewing the
> statute of limitations when "the subsequent publication is intended to and actually
> reaches a new audience" (id. at 371; see *Rinaldi v Viking Penguin*, 52 N.Y.2d 422,
> 433 [1981]; Restatement [Second] of Torts § 577A, Comment d).
>
> The Court of Claims properly denied defendant's motion for dismissal of the
> complaint pursuant to C.P.L.R. 3211 (a) (7), since claimant's allegations that the
> report was moved to a different Internet address are sufficient to state a cause of
> action for republication to a new audience akin to the repackaging of a book from
> hard cover to paperback (see *Firth v State of New York, supra*; *Rinaldi v. Viking
> Penguin, supra*; *Hopkinson v Redwing Constr. Co.*, [2003]).

[*Firth*, 761 N.Y.S.2d at 667.]

Thus, Defendants Fox News and 21st CF are liable for their republication of O'Reilly

defamatory comments on the Hannity radio show.

### D.    **Murdoch's Statement**

As the highest-level executive at both Defendants Fox and 21st CF, Rupert Murdoch

defamed Plaintiffs.  Speaking as someone who listeners would certainly view as having

information "unknown to others," *Davis v. Boeheim, supra*, he called the harassment claims

"nonsense" (distinguishing what he called "isolated incidents" with Ailes).  A jury could

certainly conclude - and Plaintiffs will produce evidence to show - that these statements by

Murdoch exposed Plaintiffs to contempt and ridicule, portraying them as liars who were

politically motivated.

As the highest level executive at both Defendants Fox News and 21st CF, Rupert Murdoch speaks with the authority and imprimatur of both entities. Murdoch made the defamatory statements during a formal on-the-record interview which was being conducted because of his role at both organizations. (Mullin Dec. **Ex. E, ¶** 84). A corporate entity is liable for the defamatory statements of its employees if the statement is made as an authorized part of his/her duties. In *Perks v. Town of Huntington*, 251 F.Supp.2d 1143, 1166 (E.D.N.Y 2003), the District Court stated:

> Under New York law, an employer can be held vicariously liable for a defamatory statement made by one of its employees, but only if the employee made the statement in the course of performance of his/her duties. See, e.g., *Rausman v. Baugh*, 248 A.D.2d 8, 10, 682 N.Y.S.2d 42 (2d Dep't 1998); *Seymour v. New York State Electric & Gas*, 215 A.D.2d 971, 973, 627 N.Y.S.2d 466 (3d Dep't 1995); *Murray v. Watervliet*, 130 A.D.2d 830, 831, 515 N.Y.S.2d 150 (3d Dep't 1987); see generally, *Riviello v. Waldron*, 47 N.Y.2d 297, 418 N.Y.S.2d 300, 391 N.E.2d 1278 (1979) (discussing the principles of respondeat superior in the employer/employee context).

[*Perks*, 251 F.Supp.2d at 1166.]

Clearly, Murdoch is an authorized corporate executive speaking on behalf of Fox News and 21st CF and binds them.

## POINT II

## ALL FOUR DEFAMATORY STATEMENTS WERE "OF AND CONCERNING" PLAINTIFFS

The issue of whether a statement is "of and concerning" Plaintiffs is a jury question. *Harwood Pharmacal Co. v. National Broadcasting Co.*, 9 N.Y.2d 460, 462, 214 N.Y.S.2d 725, 174 N.E.2d 602 (1961). In this case, the statements published by Defendants Fox News and 21st CF are clearly "of and concerning" Plaintiffs.

13

As this Court held in *Gilman v. Spitzer*, 902 F.Supp.2d 389, 395 (2012), "[W]here the person defamed is not named in a defamatory publication, it is necessary, if it is to be held actionable as to him, that the language used be such that persons reading it will, in the light of the surrounding circumstances, be able to understand that it refers to the person complaining." citing, *Algarin v. Town of Wallkill*, 421 F.3d 137, 139 (2d Cir. 2005) (quoting, *DeBlasio v. North Shore Univ. Hospital*, 213 A.D.2d 584, 624 N.Y.S.2d 263, 264 (2d Dep't 1995)).  All four statements by Defendants Fox News and 21st CF were clearly "of and concerning" Plaintiffs - members of a small publicly identified group of five (later six) victims of O'Reilly's abuse.  See *Zervos, supra*, Fn. 3 citing *Three Amigos SJL Rest., Inc. v. CBS News, Inc.*, 28 N.Y.3d 82, 86-87 (2016). (Mullin Dec., **Ex. G**).

## POINT III

### DEFENDANTS' STATEMENTS ARE NEITHER "SUBSTANTIALLY TRUE," NOR "SIMPLE DENIALS", NOR "OPINION"

**A.**     **The Statements are Not Substantially True**

Defendants Fox News and 21st CF claim that the challenged statements are "substantially true" (Db 17) and, incredibly, that, "[N]othing that 21st CF stated is <u>alleged</u> to be false." (Db 17). In fact, the Second Amended Complaint alleged falsity with specificity in Paragraphs 27, 30, 31, 56 and 69, as does the proposed Third Amended Complaint. (Mullin Dec., **Exs. E** and **M**).  A quick review of the four statements in context shows that they basically call Plaintiffs liars, extortionists, political conspirators, and defamers.  Plaintiffs clearly allege that these statements are untrue.

14

**B.**     **The Statements are Not General Denials**

Defendants Fox News and 21st CF cite *Porter v. Saar*, 688 N.Y.S.2d 137, 139 (App. Div.

1999), and other cases for the proposition that "[G]eneral denials are simply not defamatory."

(Db 9). None of those cases are relevant here. The statements at issue are not "general denials."

Collectively, the Defendants have clearly called the Plaintiffs "extortionate, politically-motivated

liars." Taking one sentence out of a press release published around the world, Defendants Fox

and 21st CF argue that:

> 21st CF did not say that Plaintiff Bernstein never complained to Fox News, her
> employer. It merely noted that "no current or former Fox News employee ever
> took advantage of the 21st Century Fox hotline to raise a concern about Bill
> O'Reilly, . . ."

[Db 11].

This shameless attempt to cherry pick statements should fail. In The New York Times

article dated April 1, 2017, Defendants Fox News and 21st CF wanted to convey that the five

women (three Plaintiffs) named in the article had not complained about O'Reilly during their

employment. This coordinated lie - that Plaintiffs had not complained - was repeated to millions

of people around the world. A reasonable jury could easily conclude that the *ad nauseum*

repetition to millions of people over the span of nine months that *no one had ever complained* to

her employer about Bill O'Reilly's abuse is meant to convey that the Plaintiffs were part of the

liberal smear campaign; that they filed unfounded claims as part of a political and financial hit

job. Why else would this coordinated falsehood have been spewed for so long?

When read in context and not in isolation, the statements are demonstrably false and

defamatory. In *Biro v. Conde Nast*, 883 F.Supp.2d 441, 466 (S.D.N.Y. 2012), this Court stated:

... the Court joins the other courts applying New York law and adopts the Fourth Circuit's approach to defamatory implication claims in *Chapin*, 993 F.2d at 1092–93. Thus, where a plaintiff asserts a defamation claim based not on any alleged falsity of the statements themselves, but on an alleged defamatory implication that could be derived from the unchallenged facts, the Court will require an "especially rigorous showing" that (1) the language may be reasonably read to impart the false innuendo, and (2) the author intends or endorses the inference. Id. at 1093. The alleged innuendo "may not enlarge upon the meaning of words so as to convey a meaning that is not expressed." *Tracy v. Newsday*, 5 N.Y.2d 134, 182 N.Y.S.2d 1, 155 N.E.2d 853, 855 (1959).

[*Biro*, 883 F.Supp.2d at 466.]

Plaintiffs did not complain on the 21st CF hotline, because it did not exist, as Defendants know. The statement was included in Defendants' press release to clearly leave the public with the false impression that Plaintiffs never complained to their employer about O'Reilly's abuse because O'Reilly never abused them. Likewise, Mr. Murdoch's Sky News statement describing the Plaintiffs' claims as "nonsense" is obviously false. A reasonable jury could easily conclude that Murdoch knew there were tapes and videos recording O'Reilly's abuse and that millions of dollars had been paid to keep the public from learning about O'Reilly's harassment.

Defendants Fox News and 21st CF also cite *McNamee v. Clemens*, No. 09-cv-1647, 2013 WL 3968740, at * 3 (E.D.N.Y. July 31, 2013), for the proposition that "general denials" are not actionable as defamation. (Db 9). However, in McNamee, the District Court held that publicly branding someone a "liar" and/or "dishonest" - as Plaintiffs were here - is defamatory:

Moreover, it is well-established that a "charge that a man is lying, at least, in a matter of public interest, is such a charge as tends to hold him up to scorn, as matter of law." *Mase v. Reilly*, 206 A.D. 434, 436 201 N.Y.S. 470, 472 (1st Dep't 1923); see also, *Kaminester v. Weintraub*, 131 A.D.2d 440, 516 N.Y.S.2d 234 (2d Dep't 1987) (finding allegedly libelous statements accusing plaintiff of personal dishonesty were not constitutionally protected expressions of opinion). An attack on a person's integrity by impugning his character as dishonest or immoral may form the basis of a defamation if an ordinary listener would tend to credit the

16

statements as true.

[*McNamee*, 762 F.Supp.2d 584, 601-602 (E.D.N.Y. 2011).]

Defendants' reliance on *McKee v. Cosby*, 236 F.Supp.3d 427 (D.Mass. 2017), is equally misplaced.  In that case, the court found that there was no denial from Mr. Cosby that the alleged rape had occurred.  Instead, Mr. Cosby's counsel's statement merely "raised doubts as to the Plaintiff's credibility . . ." *McKee*, 236 F.Supp.3d at 443.  Here, Fox News, by itself, through Mr. Murdoch, and 21st CF, and by quoting Defendant O'Reilly, clearly conveyed that the Plaintiffs were liars and extortionists.

In addition, in *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989), a case not cited by the defendants, the Supreme Court rejected a news organization's application of the "neutral reportage" privilege where, as here, there was proof that the news organization had a "high degree of awareness of . . . probable falsity." Id.[4] Thus, where, as here, Fox News and 21st CF knew that their reporting was false and they acted with actual malice towards plaintiff Bernstein, they are not entitled to protection under the "neutral reportage" privilege.

Oddly, Defendants argue that the 21st CF press release does not deny Plaintiffs' underlying claims - it merely repeats Mr. O'Reilly's denial. (Db 9)  First, there was a conscious decision to include the O'Reilly denial in a paragraph that notes that 21st CF had "spent months" looking into the allegations, and included the demonstrably **false** statement that the Plaintiffs had not complained to Fox about O'Reilly's harassment.  The law is clear that the relevant statements

---

[4]See also, *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964); *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968).

must be viewed in context with all of the defamatory statements stated in the Second Amended

Complaint (and proposed Third Amended Complaint) - not viewed in isolation. *Gilman*, 902

F.Supp.2d at 394-395. When read in context, a reasonable reader would conclude that Fox News

and 21st CF were supporting the harasser, Mr. O'Reilly, and ratifying his denial that any sexual

harassment ever took place. Thus, the Plaintiffs must be liars.

In *Giuffre v. Maxwell*, 165 F.Supp.3d 147, 151-152 (S.D.N.Y 2016), this Court rejected

the very same arguments now being advanced by Defendants Fox News and 21st CF. In *Giuffre*,

the plaintiff was the victim of sexual abuse between 1999 and 2002. Plaintiff identified the

defendant, Maxwell, as having been closely involved in plaintiff's trafficking for the purpose of

this abuse. Just as the Defendants have done here, Maxwell denied the plaintiff's claims, and Ms.

Guiffre sued for defamation:

> Plaintiff alleges that the content of this statement [Maxwell's denial] contained
> actionable falsehoods in stating that Plaintiff's own allegations "against Ghislaine
> Maxwell are untrue," that Plaintiff's allegations have been "shown to be untrue,"
> and that Plaintiff's "claims are obvious lies." The second concerns a January 4,
> 2015 on-camera statement made to the New York Daily News (the "January 4
> Statement"). Plaintiff alleges that this statement constitutes an actionable
> falsehood by referring back to the January 3 statement in response to a question
> regarding the allegations Plaintiff had made against Maxwell. (Citations omitted)

[*Giuffre*, 165 F.Supp.3d at 150.]

Just as Fox News and 21st CF have done here, Maxwell moved to dismiss Giuffre's

defamation claim. This Court denied Maxwell's motion, finding that her simple denials were

defamatory.

> Defendant argues that the statements in question are not susceptible to a
> defamatory meaning. Plaintiff submits that Defendant has effectively called her a
> "liar," while Defendant points out the word "liar" was never used in the statements
> alleged. "The dispositive inquiry is whether, on the basis of the **over-all context**

in which the assertion were made, a reasonable reader could have concluded that the statements were conveying facts about the plaintiff." *Davis v. Boeheim*, 24 N.Y.3d 262, 998 N.Y.S.2d 131, 22 N.E.3d 999 (2014) (internal citations, ellipses, and brackets omitted). (Emphasis supplied).

\* \* \*

In distinguishing between fact and opinion, the Court asks "(1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proved true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal readers or listeners that what is being read or heard is likely to be opinion, not fact." Id. (citations omitted). **The Davis court held that to "communicate that [sexual assault victims] lied, [and] their motive was financial gain" constituted defamatory meaning**. Id.

This case therefore requires the same finding as that in *Davis* and *Green*. First, statements that Giuffre's claims "against [Defendant] are untrue," have been "shown to be untrue," and are "obvious lies" have a specific and readily understood factual meaning: that Giuffre is not telling the truth about her history of sexual abuse and Defendant's role, **and that some verifiable investigation has occurred and come to a definitive conclusion proving that fact.** Second, these statements (as they themselves allege), are capable of being proven true or false, and therefore constitute actionable fact and not opinion. Third, in their full context, while Defendant's statements have the effect of generally denying Plaintiff's story, they also clearly constitute fact to the reader.

[*Giuffre*, 165 F.Supp.3d at 151-152.](Emphasis Supplied.)

C.    **The Statements Are Not Opinion**

Defendants Fox News and 21st CF claim that the statements at issue are opinion. (Db 117-18). Assuming, *arguendo*, that some statements, out of context, could be characterized as "an opinion, those statements clearly 'impl[y] that [they are] based upon facts which justify the opinion but are unknown to those reading or hearing it" . . . and are thus "mixed opinion" and are "actionable." *Davis v. Boeheim*, 24 N.Y.3d at 269.

Here, Defendants Fox News and 21st CF published the false statements of its employee, the actual perpetrator of the abuse (Defendant O'Reilly).  Additionally, Fox News, the employer of the Plaintiffs and the abuser (Fox News and 21st CF), and the Chief Executive of both corporate entities (Murdoch) have clearly made statements that would lead the normal listener to believe that they have actual facts which show that Plaintiffs' claims are "nonsense," "unfounded," part of a "smear campaign," and "politically motivated."

All statements at issue lead the audience to believe that Fox News, 21st CF, Murdoch (and by publication within, O'Reilly) know "certain facts, unknown to [the] audience, which support [the] opinion and are detrimental" to the Plaintiffs. *Davis, supra.* "The dispositive inquiry . . . is 'whether a reasonable [reader, listener or viewer] could have concluded that [the statements] were conveying facts about the plaintiff.'" Id. 269-270 (citations omitted).

In a strikingly similar case in which many of the same arguments made by Defendants here were made by defendant Donald Trump, and applying the same law, the Court found that the defamation action should proceed.

Just like Defendants, defendant Trump alleged that the women accusing him of sexual harassment were "smearing" him for "financial" and "political" reasons. (*Zervos v. Trump*, Slip Op., p. 5, Mullin Dec., **Ex. G**).

Judge Schecter cited New York law, applicable here, holding at page 15:

> In *Davis v. Boeheim*, the Court of Appeals determined that a defamation action could be maintained against a defendant who called individuals claiming to have been victims of sexual abuse liars and stated that he believed that they were motivated by money to go public (*Davis*, 24 N.Y.3d 262 [reinstating defamation action against someone who may have known undisclosed facts about alleged sexual abuse]).  The Court concluded that the statements were susceptible to a defamatory connotation because they communicated that defendant had

information unknown to others that justified his statements that the individuals were neither credible nor victims of abuse. (id. at 272). Defendant in *Davis* 'appeared well placed to have information about the charges' and the context of the statements suggested that he 'spoke with authority and that his statements were based on facts' (id. at 273).

In *Davis, supra*, a college coach called sex abuse allegations against another coach "unfounded" claiming the accusers were "financially motivated." The *Davis* court held:

> In determining the sufficiency of a defamation pleading, we consider "whether the contested statements are reasonably susceptible of a defamatory connotation." As we have previously stated, "[i]f, upon any reasonable view of the stated facts, plaintiff would be entitled to recovery for defamation, the complaint must be deemed to sufficiently state a cause of action." (Citations omitted).

(*Davis v. Boeheim*, 24 N.Y.3d at 268).

The word "liar" need not be specifically used to convey that a party suing for defamation may proceed with her claims:

> Though Defendant never called Plaintiff a "liar," to call her claims "obvious lies" that "have been shown to be untrue" demands the same meaning. Plaintiff cannot be making claims shown to be untrue that are obvious lies without being a liar. **Furthermore, to suggest an individual is not telling the truth about her history of having been sexually assaulted as a minor constitutes more than a general denial, it alleges something deeply disturbing about the character of an individual willing to be publicly dishonest about such a reprehensible crime. Defendant's statements clearly imply that the denials are based on facts separate and contradictory to those that Plaintiff has alleged.** Sexual assault of a minor is a clear-cut issue; either transgression occurred or it did not. Either Maxwell was involved or she was not. The issue is not a matter of opinion, and there cannot be differing understandings of the same facts that justify diametrically opposed opinion as to whether Defendant was involved in Plaintiff's abuse as Plaintiff has claimed. Either Plaintiff is telling the truth about her story and Defendant's involvement, or Defendant is telling the truth and she was not involved in the trafficking and ultimate abuse of Plaintiff. The answer depends on facts. **Defendant's statements are therefore actionable as defamation. Whether they ultimately prove to meet the standards of defamation (including but not limited to falsity) is a matter for the fact-finder.**

[*Giuffre*, 165 F.Supp.3d at 152.](Emphasis Supplied.)

Both 21st CF (Fox's parent speaking on behalf of Fox News) and O'Reilly spoke of conducting "investigations" and made clear - but false - statements about Plaintiffs never complaining.  Applying the relevant law, the same conclusion reached in *Zervos v. Trump* should be reached here: "A reader or listener, cognizant that defendant knows exactly what transpired, could reasonably believe what defendant's statements convey: that plaintiff[s] [are] contemptible because [they] 'fabricated' events for personal gain." (*Zervos*, Slip Op., p. 17, Mullin Dec., **Ex. G**).

## POINT IV

### DEFENDANTS FOX NEWS AND 21ST CF MATERIALLY BREACHED THE NON-DISPARAGEMENT AND CONFIDENTIALITY CLAUSES OF PLAINTIFF BERNSTEIN'S SETTLEMENT AGREEMENT

Defendants incorrectly argue that they did not breach the non-disparagement and confidentiality clauses of Plaintiff Bernstein' Settlement Agreement.  (Db 22-23).  As set forth above, the Defendants violated the confidentiality provisions by engaging in a very public, well-publicized campaign of smears and defamation against the small, identifiable group of women named in The New York Times article. Instead of maintaining secrecy and confidentiality required by the confidentiality clauses incorporated therein, Defendants made public statements maligning, disparaging and defaming Plaintiffs.  The breach of the confidentiality provisions was especially corrupt and material because Fox and 21st CF repeated O'Reilly's public statements that Plaintiffs' claims were "unfounded" knowing that Fox and 21st CF had insisted in the Settlement Agreements that all three plaintiffs provide to O'Reilly or destroy all of the physical evidence of his harassment of them.  (Mullin Dec., **Exs. A, B and D**).

22

## **CONCLUSION**

For the foregoing reasons, it is respectfully submitted that defendants' motion to dismiss plaintiff Bernstein's Second Amended Complaint must be denied.

**SMITH MULLIN, P.C.**
Attorneys for Plaintiffs


BY:_____/s/ Neil Mullin_____

NEIL MULLIN (NM6020)

Dated: December 7, 2018

23