UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
RACHEL WITLIEB BERNSTEIN,

                    Plaintiff,                17 Civ. 9483 (DAB)

          v.                                  MEMORANDUM & ORDER


BILL O'REILLY, FOX NEWS NETWORK LLC,
TWENTY-FIRST CENTURY FOX, INC.

                    Defendants.
------------------------------------X
DEBORAH A. BATTS, United States District Judge


        Plaintiff Rachel Witlieb Bernstein ("Plaintiff") brings this
action against Defendant Bill O'Reilly ("O'Reilly"), Defendant Fox
News Network LLC ("Fox"), and Defendant Twenty-First Century Fox,
Inc. ("Twenty-First Century") (Fox and Twenty-First Century are
collectively, the "Fox Defendants"). Plaintiff alleges defamation
and breach of contract against O'Reilly and the Fox Defendants in
her Second Amended Complaint ("SAC"). O'Reilly and the Fox
Defendants move to dismiss the SAC for failure to state a claim
under Fed. R. Civ. P. 12(b)(6).

        For the foregoing reasons, O'Reilly's and the Fox Defendants'
Motions to Dismiss are GRANTED. Plaintiff is GRANTED leave to
replead her claims only against Defendant Bill O' Reilly.

I.  Background

        The following facts are drawn from the SAC and are assumed
true for purposes of the instant motion.

Fox is a television news and entertainment company and a wholly owned subsidiary of Twenty-First Century. (Second Am. Compl. "SAC" ¶¶ 4, 5, ECF No. 84.) Rupert Murdoch ("Murdoch") was, and is, the Chairman of Fox News and acting CEO, as well as the co-Executive Chairman of Twenty-First Century Fox. (Id.) O'Reilly hosted his own cable program on Fox. (Id.) Plaintiff and O'Reilly are former employees of Fox.[1] (See Id. ¶¶ 10, 15-18.)

In July 2002, Plaintiff entered into a Severance Agreement ("Agreement") with Fox[2] which included Non-Disparagement and Confidentiality Clauses. (Id. ¶¶ 15-16.) The Non-Disparagement Clause provides:

> 5(f) Non-Disparagement: Witlieb and Fox each agree not to disparage, trade libel, or otherwise defame each other, and in the case of Fox, Witlieb agrees not to disparage, trade libel, or otherwise defame its officers or employees, including without limitation, Bill O'Reilly. In the case of Witlieb, for purposes of this Paragraph 5( e ), the term "Fox" shall mean the released parties referenced in Paragraph 4(a) above, including Bill O'Reilly, and said released parties agree not to disparage, trade libel, or otherwise defame Witlieb.

(Id. ¶ 15.) The Confidentiality Clause provides:

> Confidentiality: Wittlieb (sic) and Fox, and their respective legal counsel, and any other person acting on Wittlieb (sic) or Fox's behalf, or through either of them, shall not disclose

---

[1] The SAC alleges that O'Reilly's employment contract has yet to expire and he remains contractually bound to Fox and Twenty-First Century. (SAC ¶ 11.)

[2] The SAC does not specify who are the parties to the Agreement. However, because the SAC refers to and quotes from the Agreement it has been incorporated by reference for the purpose of this instant motion. See DiFolco v. MSNBC Cable LLC, 622 F.3d 104, 111 (2d Cir. 2010). The Agreement, (Mullin Decl. Ex. A, ECF No. 119-1), has been reviewed by the Court. The signatories to the Agreement are Plaintiff and Fox, through its Co-President, Jack Abernethy.

to any person the contents of this Agreement or the facts or allegations that gave rise to this Agreement. If asked, each of Wittlieb (sic) and Fox and their respective legal counsel may say only 'The matter has been resolved (or settled)', without elaboration. Notwithstanding the foregoing, however, Wittlieb (sic) and Fox, and their respective counsel, shall not be prohibited from making such disclosures of these .matters to any person who has a legal necessity to know ( as, for example, in the case of a valid subpoena) and to their respective accountants, and in Wittlieb' s (sic) case, to her immediate family, but in each such instance Fox and Wittlieb (sic) shall specifically make best efforts to prevent those persons from repeating those disclosures to any other person. Either Wittlieb (sic) or Fox's breach of this provision shall constitute a material breach of this Agreement.

(Id. ¶ 16 (alterations in original).)

On April 1, 2017, the New York Times published an article (the "Article") titled "Bill O'Reilly Thrives at Fox News, Even as Harassment Settlements Add Up." (Id. ¶ 18.) The Article alleged that O'Reilly and Fox had settled several harassment claims (the "settled claims") against O'Reilly and that the settlement funds were received by several former employees of Fox. (Id.) The Article named five women by name, including Plaintiff, as the recipients of these purported settlement funds. (Id.) On April 19, 2017, O'Reilly was taken off the air by Fox. (Id. ¶ 11.)

Thereafter, the SAC alleges that O'Reilly made a number of public statements from April 2017 to November 2017 addressing the settled claims. (SAC ¶¶ 22, 40, 43, 45, 55, 60, 71.) Among those alleged in the SAC, O'Reilly allegedly stated that he would give the public "cold stone facts" about the untruth of the settled

claims, that he had "physical proof" that the claims were "bullshit" and he can "prove it" with "shocking information," that the settled claims were "a political and financial hitjob," and that he was the victim of "false accusations." (<u>Id.</u> ¶¶ 43, 55, 60, 71.)

The SAC also alleges that the Fox Defendants made four public statements addressing the settled claims.

First, on April 1, 2017, Fox allegedly published the following statement ("Statement 1") through its parent, Twenty-First Century, addressing the settled claims reported in the Article:

> Notwithstanding the fact that no current or former Fox News employee ever took advantage of the 21st Century Fox hotline to raise a concern about Bill O'Reilly, even anonymously, we have looked into these matters over the last few months and discussed them with Mr. O'Reilly. While he denies the merits of these claims, Mr. O'Reilly has resolved those he regarded as his personal responsibility. Mr. O'Reilly is fully committed to supporting our efforts to improve the environment for all our employees at Fox News.

(<u>Id.</u> ¶ 25.)

Second, on April 19, 2017, Fox allegedly published an article titled "Fox News drops Bill O'Reilly in wake of harassment allegations." The SAC alleges that the article quoted a press release issued by O'Reilly, through his lawyer, which "accused his liberal opponents of a 'smear campaign'" and alleged that "O'Reilly 'has been subjected to a brutal campaign of character assassination that is unprecedented in post-McCarthyist America.'" (<u>Id.</u> ¶ 22.)

(Fox's article quoting O'Reilly's press release is hereinafter, "Statement 2").

Third, on September 18, 2017, O'Reilly appeared on Sean Hannity's radio show. (<u>Id.</u> ¶ 43.) O'Reilly allegedly made several statements pertaining to the settled claims. (<u>Id.</u>) Fox's website allegedly links to Sean Hannity's website. (<u>Id.</u>) The website in turn allegedly links to Sean Hannity's radio show. (<u>Id.</u>) (O'Reilly's statements on Sean Hannity's radio show are collectively, "Statement 3"). (<u>Id.</u>)

Fourth, on December 14, 2017, Murdoch allegedly stated in an interview that the harassment claims at Fox were "nonsense" and that there was "a problem" with former Fox chief executive Roger Ailes, who was subsequently terminated. (<u>Id.</u> ¶ 73.) He allegedly also stated, "that was largely political because we are conservative." (<u>Id.</u>) (Murdoch's statements on December 14, 2017 are collectively, "Statement 4"). The SAC then alleges that "Roger Ailes was not the only harasser at Fox News. Bill O'Reilly harassed, abused or mistreated Plaintiff." (<u>Id.</u> ¶ 73.)

Plaintiff commenced this action on December 4, 2017.[3] (ECF No. 1.) On October 4, 2018, Plaintiff filed the operative SAC

---

[3] Plaintiff brought this case along with Plaintiff Andrea Mackris and Plaintiff Rebecca Gomez Diamond. (<u>See</u> Compl., ECF No. 1.) Pursuant to this Court's Order on September 25, 2018, (ECF No. 81), Plaintiff Mackris' and Plaintiff Diamond's claims were severed from those of Plaintiff Bernstein. The two actions proceed separately.

against O'Reilly and the Fox Defendants bringing two counts of defamation and breach of contract against O'Reilly and the Fox Defendants. (SAC, ECF No. 84.)

In Count 1, Plaintiff alleges that O'Reilly's and the Fox Defendants' public statements breached the Confidentiality and Non-Disparagement clauses of the Agreement. She also alleges that she "has suffered and will continue to suffer damages to her reputation, severe emotional distress, physical sickness, and loss of income" as a result of the alleged breaches of contract. (Id. ¶ 76.)

In Count 2, Plaintiff alleges that O'Reilly's and the Fox Defendants' public statements portray her as an "extortionate, politically-motivated liar" and expose her to "public contempt, ridicule, aversion and/or disgrace." (SAC ¶¶ 79, 80.) She alleges that their statements are "defamatory per se." (Id. ¶ 81.) She also alleges that she "has suffered and will continue to suffer damages to her reputation, severe emotional distress, physical sickness, special damages, and loss of income." as a result of the alleged defamation. (Id. ¶ 88.)

On October 31, 2018, O'Reilly and the Fox Defendants filed their instant Motions to Dismiss the SAC. (O'Reilly's Mem., ECF No. 104; Fox Defs.' Mem., ECF No. 101.)

## II.  Legal Standard on a Motion Under Rule 12(b)(6)

For a complaint to survive a motion brought pursuant to Fed. R. Civ. P. 12(b)(6), the plaintiff must have pleaded "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility," the Supreme Court has explained,

> when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief."

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556-57). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citation and alteration omitted). "In keeping with these principles," the Supreme Court has stated,

> [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-

7

> pleaded factual allegations, a court should assume
> their veracity and then determine whether they
> plausibly give rise to an entitlement to relief.

Iqbal, 556 U.S. at 679.

In considering a motion under Rule 12(b)(6), a court must accept as true all factual allegations set forth in a complaint and draw all reasonable inferences in favor of the plaintiff. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); Blue Tree Hotels Inv. (Canada) Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004). However, this principle is "inapplicable to legal conclusions," Iqbal, 556 U.S. at 678, which, like a complaint's "labels and conclusions," Twombly, 550 U.S. at 555, are disregarded. Nor should a court "accept [as] true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678. In resolving a 12(b)(6) motion, a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in, or integral to, the complaint. DiFolco v. MSNBC Cable LLC, 622 F.3d 104, 111 (2d Cir. 2010).

III. Discussion

    A. Plaintiff's Defamation Claims

        1. Applicable Law

8

Under New York law,[4] "[d]efamation is the making of a false statement which tends to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him . . . ." Elias v. Rolling Stone LLC, 872 F.3d 97, 104 (2d Cir. 2017). "To state a claim for defamation under New York law, a plaintiff must allege (1) a false statement of fact, (2) about plaintiff, (3) published to a third party without authorization or privilege, (4) through fault amounting to at least negligence, and (5) causing defamation per se or a special harm." Krzesaj v. Henry, No. 16 Civ. 2926, 2017 U.S. Dist. LEXIS 37543, *39 (S.D.N.Y. March 15, 2017) (internal quotation marks and citations omitted). "A statement . . . can meet all of the [] elements of defamation—be factual, published, false, and about the plaintiff—but still not be actionable if it fails to rise to the necessary level of derogation." Chau v. Lewis, 771 F.3d 118, 127 (2d Cir. 2014). "[I]n New York, courts employ an ordinary person standard to determine if that statement is reasonably susceptible to a defamatory connotation." Id. (internal quotation marks, alteration, and citation omitted).

To plead special damages, a plaintiff must claim "the loss of something having economic or pecuniary value which must flow directly from the injury to reputation caused by the defamation."

---

[4] It is undisputed that New York law applies to Plaintiff's claims. (See Pl.'s Mem. 13, ECF No. 118; O'Reilly's Mem. 7; Fox Defs.' Mem. 6.)

_Krzesaj_, 2017 U.S. Dist. LEXIS 37543, at *39 (quoting _Celle v. Filipino Reporter Enters._, 209 F.3d 163, 179 (2d Cir. 2010)). Special damages "must be fully and accurately stated, with sufficient particularity to identify actual losses." _Id._ at *39-40; _Matherson v. Marchello_, 100 A.D.2d 233, 473 (2d Dept. 1984). "The particularity requirement is strictly applied, as courts will dismiss defamation claims for failure to allege special damages with the requisite degree of specificity." _Id._ at *40 (quotation marks and citation omitted).

If lieu of pleading special damages, a plaintiff may plead that the alleged defamatory statements fall within one of four established exceptions. _Liberman v. Gelstein_, 80 N.Y.2d 429, 435(1992). "When statements fall within one of these categories, the law presumes that damages will result, and they need not be alleged or proven." _Id._ "The four established exceptions . . . consist of statements (i) charging plaintiff with a serious crime; (ii) that tend to injure another in his or her trade, business or profession; (iii) that plaintiff has a loathsome disease; or (iv) imputing unchastity to a woman." _Id._

### 2. Plaintiff's Defamation Claim Against O'Reilly

Plaintiff's allegations of special damages and defamation per se are wholly insufficient.[5] Plaintiff alleges that she has

---

[5] Confusingly, Plaintiff alleges special damages in addition to alleging defamation per se.

suffered damages to her reputation, severe emotional distress, physical sickness, special damages, and loss of income as a "direct and proximate result" of O'Reilly's allegedly defamatory statements. However, she neither explains how her losses flowed from the alleged defamation nor alleges any facts establishing what, if any, emotional and physical harms and reputational damage she specifically suffered. She also does not allege the economic or pecuniary value of her alleged damages. Moreover, simply alleging that she suffered "special damages" with nothing more is not sufficient to sustain her claim. Thus, her allegations of damages fail to meet the requisite degree of specificity to sustain her defamation claim.

Plaintiff's bare allegation of defamation per se is also wholly insufficient. Plaintiff only alleges that the alleged defamatory statements portray her as an "extortionate, politically-motivated liar."[6] Portraying Plaintiff as an extortionate, politically-motivated liar does not fall into any of the four exceptions.[7] Her bare allegation of defamation per se thus

---

[6] Portraying a plaintiff as an extortionate, politically-motivated liar could injure certain plaintiffs in their trade, business, or profession. However, here, Plaintiff does not even allege what her "trade, business or profession" is. Thus, her allegations are insufficient even to imply that she was injured in her trade, business or profession by O'Reilly's alleged defamation.

[7] Indeed, Plaintiff does not even attempt to allege to which of the four exceptions the defamatory statements belong.

does not establish which of the four exceptions, if any, the allegedly defamatory statements could belong to.

Accordingly, O'Reilly's Motion to Dismiss Plaintiff's defamation claim is GRANTED.

### 3. Plaintiff's Defamation Claims Against the Fox Defendants

Plaintiff's defamation claims against the Fox Defendants suffer the same fatal flaw as Plaintiff's defamation claim against O'Reilly. Plaintiff neither fully and accurately alleges special damages nor sufficiently alleges defamation per se.

Moreover, Plaintiff's defamation claims against the Fox Defendants based on Statements 1-4 suffer serious, additional flaws. First, Statement 1, is not defamatory because it does not portray her as a "liar." Statement 1 does not state that Fox or Twenty-First Century denies the merits of the settled claims.[8] Thus Statement 1 cannot plausibly portray Plaintiff as a "liar" as she alleges because it does not make any assertion about the truth of her settled claim. It is therefore not "reasonably susceptible to a defamatory connotation." Chau, 771 F.3d at 127.

---

[8] Statement 1 only states that O'Reilly, not the Fox Defendants, denied the merits of the settled claims and has resolved those claims he considered his personal responsibility.

Second, Plaintiff alleges that Statement 2 is defamatory because O'Reilly's press statement quoted therein defames her. First, the article truthfully reports what O'Reilly, or his lawyer, said in his press release. It cannot therefore be an untruthful, defamatory statement. <u>See</u> <u>Krzesaj</u>, 2017 U.S. Dist. LEXIS 37543, *39 (explaining that a defamatory statement is "a false statement of fact.") Second, O'Reilly's quoted press release cannot plausibly be attributed to the Fox Defendants.[9] Statement 2 clearly quotes and thereby attributes O'Reilly's statements only to him. Indeed, Fox publicly parted ways with O'Reilly that same day. Plaintiff also does not allege that Fox in any way participated in, helped prepare, or otherwise endorsed O'Reilly's press release. Thus, Statement 2 is not defamatory.

Similarly, Statement 3 cannot plausibly be attributed to the Fox Defendants. Plaintiff alleges that O'Reilly's statements on Sean Hannity's radio show were "published" by Fox because the Fox website linked to Sean Hannity's website which in turn linked to Sean Hannity's radio program, one episode on which O'Reilly allegedly defamed Plaintiff. She does not allege that Fox controls the content of Sean Hannity's website or radio program. She does

---

[9] The First Amendment also protects "accurate and disinterested reporting" even if the reporter has "serious doubts regarding their truth." <u>Edwards v. National Audubon Soc.</u>, 556 F.2d 113, 120 (2d Cir. 1977). "What is newsworthy about such [statements] is that they were made." <u>Id.</u> Plaintiff does not allege that Fox's republication of O'Reilly's press statement was not "accurate nor disinterested."

not allege that Fox's website streamed the allegedly defamatory interview. She does not even allege that the Fox website linked to <u>that specific interview</u> in which O'Reilly allegedly defamed her. The nexus between O'Reilly's statements on Sean Hannity's radio show and Fox is so attenuated that the statement cannot plausibly be attributed to the Fox Defendants.

Finally, Statement 4 does not defame Plaintiff because it is not about her. Plaintiff does not dispute that Murdoch is referring to claims against Roger Ailes, and not those against O'Reilly, in these statements. Plaintiff's only attempt to connect Statement 4 to her is to baldly allege that the claims against Roger Ailes are similar to her settled claims against O'Reilly because Ailes and O'Reilly were both, allegedly, harassers formerly in Fox's employ. She has therefore fallen remarkably short of showing Murdoch's statements are "of and concerning" her. <u>See</u> <u>Small Bus. Bodyguard Inc. v. House of Moxie</u>, <u>Inc.</u>, 230 F. Supp. 3d 290, 311 (S.D.N.Y. 2017) ("A plaintiff's burden of showing that the allegedly defamatory statement is of and concerning her is not a light one." (internal quotation marks and citation omitted)).

Clearly, each statement that Plaintiff attributes to the Fox Defendants cannot plausibly be defamatory. Accordingly, the Fox Defendants' Motion to Dismiss Plaintiff's defamation claim is **GRANTED**.

B. Plaintiff's Breach of Contract Claims

  1. Applicable Law

  "Under New York state law, the elements of a breach of contract claim are: (1) the existence of a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages." MBIA Ins. Corp. v. Royal Bank of Can., 706 F. Supp. 2d 380, 396 (S.D.N.Y. 2009) (citing Terwilliger v. Terwilliger, 206 F.3d 240, 245-46 (2d Cir. 2000)). "[P]laintiffs asserting breach of contract claims must allege facts showing damage caused by the alleged breach." Northern Shipping Funds I, L.L.C. v. Icon Capital Corp., No. 12 Civ. 3584, 2013 U.S. Dist. LEXIS 55802, *25 (S.D.N.Y. April 12, 2013) (quoting Us Airways Group v. British Airways Plc, 989 F. Supp. 482, 492 (S.D.N.Y. 1997)). "Moreover, a party seeking damages for breach of contract . . . must demonstrate that the damages were caused by and are directly traceable to the . . . breach." Id. (internal quotation marks and citation omitted.)

  Generally, "a party who is not a signatory to a contract cannot be held liable for breaches of that contract," MBIA Ins. Corp., 706 F. Supp. 2d at 396 (collecting cases), unless he has "thereafter assumed or been assigned the contract." Impulse Mktg. Group, Inc. v. Nat'l Small Bus. Alliance, Inc., No. 05-CV-7776, 2007 U.S. Dist. LEXIS 42725, *15 (S.D.N.Y. June 11, 2007) (applying

New York law) (citations omitted). Actions such as "participat[ing] in the negotiations and drafting of the contract," "acknowledging that [the non-signatory] was the actual party in interest," "micro-managing performance under the contract," and "making payments on behalf of the signatory" have been considered by various courts in determining whether a non-signatory assumed the contract. MBIA Ins. Corp., 706 F. Supp. 2d at 398 (discussing various factors New York courts considered in determining whether a non-signatory can be held liable for breach of contract)(internal quotation marks and citations omitted).

### 2. Plaintiff's Breach of Contract Claim Against O'Reilly

Plaintiff has not alleged facts showing damage caused by O'Reilly's alleged breach of contract. Plaintiff repeats that she suffered damages to her reputation, severe emotional distress, physical sickness, and loss of income as a "direct and proximate result" of O'Reilly's alleged breach of contract. However, once again, she fails to explain how her losses were caused by and are directly traceable to the alleged breach of contract. She also fails to allege any facts, beyond her bald allegations of damages, establishing what, if any, emotional and physical harms and reputational damage she specifically suffered.

It is also undisputed that O'Reilly is not a party to the Agreement. In order for O'Reilly to be held liable for breaching a contract he never signed, Plaintiff must allege that he assumed or was assigned the contract. She alleges neither.

Therefore, O'Reilly's Motion to Dismiss Plaintiff's breach of contract claim is GRANTED.

### 3. <u>Plaintiff's Breach of Contract Claim Against the Fox Defendants</u>

Plaintiff's breach of contract claims against the Fox Defendants suffer the same fatal flaw, that she does not factually allege how her alleged losses were caused by and are directly traceable to the Fox Defendants' alleged breach of contract.

Moreover, the Fox Defendants' statements do not violate the Non-Disparagement or Confidentiality Clauses of the Agreement.

Under New York law, "a written agreement that is complete, clear and unambiguous on its face must be [interpreted] according to the plain meaning of its terms." <u>Cortes v. Twenty-First Century Fox Am., Inc.</u>, 285 F. Supp. 3d 629, 637 (S.D.N.Y. 2018) (quoting <u>Law Debenture Trust Co. v. Maverick Tube Corp.</u>, 595 F.3d 458, 467 (2d Cir. 2010)). When a term is not defined in the contract, courts have looked to other authorities like Black's Law Dictionary as a source of definition. (<u>Id.</u>)

In Cortes, the Court, applying New York law, interpreted an almost-identical Non-Disparagement Clause to the one here where "disparagement" was not defined in the Severance Agreement. 285 F. Supp. 3d at 637. The Court, using Black's Law Dictionary, defined "disparage" as "[t]o unjustly discredit or detract from the reputation of (another's property, product, or business)" and "disparagement" as "[a] false and injurious statement that discredits or detracts from the reputation of another's property, product, or business." Id. Finally, the Court held that "at minimum . . . a disparaging statement must be about, and clearly implicate, the allegedly disparaged subject." Id. (citation omitted).

For reasons already discussed, Statements 2 & 3 cannot plausibly be attributed to the Fox Defendants; thus the Fox Defendants cannot violate the Confidentiality Clause or the Non-Disparagement Clauses through statements they did not plausibly make. For reasons also already discussed above, Statement 4 is not plausibly about, nor does it implicate Plaintiff. Thus, it cannot "defame" or "disparage" Plaintiff within the meaning of the Non-Disparagement Clause nor can it disclose anything about her settled claims within the meaning of the Confidentiality Clause.

Finally, the remaining Statement 1 also does not plausibly violate the Non-Disparagement or Confidentiality Clauses of the Agreement. For reasons discussed above, Statement 1 does not "defame" the Plaintiff. We conclude that it also cannot plausibly

be disparaging. As discussed before, Statement 1 does not state that Fox or Twenty-First Century denies the merits of the settled claims. Indeed, it does not make any assertion at all about the truth of her settled claim. Thus it does not plausibly "discredit" Plaintiff or otherwise "detract from her reputation." Therefore, it does not violate the Non-Disparagement Clause of the Agreement. Moreover, Statement 1 does not disclose "the contents of [Plaintiff's] Agreement or the facts or allegations that gave rise to [Plaintiff's] Agreement." Therefore Statement 1 does not plausibly violate the plain language of the Agreement's Confidentiality Clause.

For these reasons, Plaintiff's allegations that the Fox Defendants plausibly breached the Non-Disparagement and Confidentiality Clauses of the Agreement are wholly insufficient. Accordingly, the Fox Defendants' Motion to Dismiss Plaintiff's breach of contract claim is GRANTED.

IV.  <u>Leave to Replead</u>

When a complaint has been dismissed, permission to amend it "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). However, a court may dismiss without leave to amend when amendment would be "futile," or would not survive a motion to dismiss. <u>Hutchison v. Deutsche Bank Sec., Inc.</u>, 647 F.3d 479, 490-91 (2d Cir. 2011). "Repeated failure to cure deficiencies by

amendments previously allowed" is grounds for a district court to deny leave to replead. <u>Foman v. Davis</u>, 371 U.S. 178 (1962) (noting undue delay, bad faith, dilatory motive, undue prejudice, and repeated failure to cure deficiencies by amendments previously allowed all as reasons for district court to exercise its discretion to deny leave to replead).

Plaintiff does not move formally for leave to replead. Instead, she has moved to file a Third Amended Complaint. The Court has reviewed the proposed Third Amended Complaint, (Mullin Decl. Ex. M, ECF No. 119-13), and concludes that it does not cure the deficiencies discussed in this Memorandum and Order. Accordingly, Plaintiff's Motion to File a Third Amended Complaint is DENIED.

Plaintiff is GRANTED leave to replead her defamation and breach of contract claims ONLY against Defendant O'Reilly. The Court cautions Plaintiff not to replead if she cannot cure the deficiencies described in this Memorandum and Order. Moreover, Plaintiff's claims against the Fox Defendants fall far short of the facial plausibility required to survive a motion to dismiss. <u>See</u> <u>Twombly</u> at 570. Thus, it is futile to give Plaintiff leave to replead her claims against Fox and Twenty-First Century.

## V.   <u>Conclusion</u>

For the reasons set forth above it is HEREBY ORDERED that:

1.)   O'Reilly's Motion to Dismiss Plaintiff's SAC is GRANTED;

2.)   The Fox Defendants' Motion to Dismiss Plaintiff's SAC is GRANTED;

3.)   Plaintiff's Motion to File a Third Amended Complaint is DENIED;

4.)   Plaintiff may replead her defamation and breach of contract claims ONLY against Defendant O'Reilly within 45 days of this Order; and

5.)   The Clerk of Court is directed to close docket numbers 100, 103, and 111 in this case.


SO ORDERED.


Dated: New York, New York
       March 5, 2019



                                    _Deborah A. Batts_
                                      Deborah A. Batts
                               United States District Judge