UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------x
RACHEL WITLIEB BERNSTEIN,     :    Index No.: 17-cv-9483(DAB)
                       :
          Plaintiff,    :
                       :
v.                         :
                       :
BILL O'REILLY,           :
                       :
          Defendant.   :
---------------------------------------------------x

## PLAINTIFF BERNSTEIN'S BRIEF IN OPPOSITION TO
## DEFENDANT BILL O'REILLY'S MOTION TO DISMISS

**SMITH MULLIN, P.C.**
420 Lexington Avenue, Suite 300
New York, New York 10170
(212) 297-6134; fax: (917) 677-3697
(nmullin@smithmullin.com)

240 Claremont Avenue
Montclair, New Jersey 07042
(973) 783-7607; fax: (973) 783-9894

**Of Counsel and on the Brief:**
    **NEIL MULLIN, ESQ.**
    **NANCY ERIKA SMITH, ESQ.**
    (admitted *pro hac vice*)

## TABLE OF CONTENTS

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

POINT I:     PLAINTIFF'S COMPLAINT CLEARLY MEETS THE
             PLEADING STANDARD UNDER NEW YORK DEFAMATION LAW . . . . . 1

    A.     The *Zervos* Decision Requires Rejection of O'Reilly's
              Argument That His Statements About Plaintiff – And Other
              Women He Abused – Were "Opinion" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B.     The *Zervos* Decision Requires Rejection of O'Reilly's Argument
              That His Statements Regarding The Women Who Complained About
              Him at Fox News Were Not "Of and Concerning" Plaintiff . . . . . . . . . . . . . . . 5

    C.     The *Zervos* Decision Requires Rejection of O'Reilly's
              Claims That None of His Statements Were Defamatory . . . . . . . . . . . . . . . . . . . 6

    D.     The *Zervos* Decision Requires Rejection of O'Reilly's
              Argument That He Did Not Use the  Word "Liar"
              and Therefore the Complaint Should be Dismissed . . . . . . . . . . . . . . . . . . . . . . 8

    E.     The *Zervos* Decision Requires Rejection of O'Reilly's
              Argument That His  Statements Could Not be Defamation *Per Se*
              and That Plaintiff Has Not Properly Pled "Special Damages" . . . . . . . . . . . . . . 9

    F.     The *Zervos* Decision Requires Rejection of O'Reilly's Claims
              That His Statements Were About the Media – Not Plaintiff . . . . . . . . . . . . . . . 10

    G.     Defendant O'Reilly Has Accused Plaintiff of the
              Serious Crime of Extortion, Which is Defamation *Per Se* . . . . . . . . . . . . . . . . 11

POINT II:    O'REILLY IS BOTH A THIRD PARTY BENEFICIARY AND AN
             ASSIGNEE TO THE SETTLEMENT AGREEMENT HE BREACHED . . . . . 12

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## TABLE OF AUTHORITIES

### CASES

*Bartsch v. Bartsch*, 54 *A.D.2d* 940, 388 *N.Y.S.2d* 347 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Davis v. Boeheim*, 24 *N.Y.3d* 262, 22 *N.E.3d* 999, 998 *N.Y.S.2d* 131, 312 (2014) . . . . . . . 3, 8-10

*Elias v. Rolling Stone*, 872 *F3d* 97 (2d Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Harwood Pharmacal Co. v. National Broadcasting Co.*, 9 *N.Y.2d* 460, 174 *N.E.2d* 602,
214 *N.Y.S.2d* 725 (1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Independent Living Aids, Inc. v. Maxi-Aids, Inc.*, 981 *F.Supp.* 124 (E.D.N.Y. 1997) . . . . . . . . . 8

*International Customs Assoc., Inc. v. Ford Motor Co.*, 893 *F.Supp.* 1251 (1995) . . . . . . . . . . . 14

*Jacobus v. Trump*, 156 *A.D.3d* 452 (1st Dep. 2017), *lv denied* 31 *N.Y.3d* 903,
2018 WL 1597479 (2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*McNamee v. Clemens*, 762 *F.Supp.2d* 584 (ED NY 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*N.F. Gonzo Corp. v. Kiselman*, 960 *N.Y.2d* 846 (App. Div. 2012) . . . . . . . . . . . . . . . . . . . . . . 13

*Silsdorf v. Levine*, 59 *N.Y.2d* 8, 449 *N.E.2d* 716, 462 *N.Y.S.2d* 822 (1983),
*cert. denied* 464 *U.S.* 831, 104 *S.Ct.* 109, 78 *L.Ed.2d* 111 [1983]) . . . . . . . . . . . . . . . . . . . . . . 7

*Three Amigos SJL Rest., Inc. v. CBS News, Inc.*, 28 *N.Y.3d* 82, 65 *N.E.3d* 35,
42 *N.Y.S.3d* 64 (2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Two Queens, Inc. v. Scoza*, 296 *A.D.2d* 301, 744 *N.Y.S.2d* 177 (2002) . . . . . . . . . . . . . . . . . . . 9

*Volt Systems Development Corp. v. Raytheon Co.*, 155 *A.D.2d* 309,
547 *N.Y.S.2d* 280 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Zervos v. Trump*, 94 *N.Y.S.3d* 75 (N.Y. App. Div. 2019) . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 6, 8, 9

## PRELIMINARY STATEMENT

This Court has already determined that New York defamation law applies to plaintiff's claims.  (3/5/19 Slip Op. 9).  On March 14, 2019, the Appellate Division of the Supreme Court of New York issued a comprehensive ruling on New York defamation law addressing nearly identical arguments to those made by defendant here.  *Zervos v. Trump*, 94 *N.Y.S.3d.* 75 (N.Y. App. Div. 2019).  Yet defendant does not mention the *Zervos* ruling in his motion.[1]  Defendant O'Reilly cites numerous unpublished, old, and irrelevant rulings but ignores *Zervos*, a decision that is directly on point and that requires denial of defendant's motion.

Because defendant O'Reilly is unable to distinguish the determination by a New York Appellate Court that the *Zervos* Complaint meets the pleading standard under New York defamation law, defendant O'Reilly's motion to dismiss must be denied.

## STATEMENT OF FACTS

Plaintiff Rachel Witlieb Bernstein relies on the allegations in the revised Second Amended Complaint for her Statement of Facts.  The allegations in the Complaint must be accepted as true for purposes of this motion.

## POINT I

## PLAINTIFF'S COMPLAINT CLEARLY MEETS THE PLEADING STANDARD UNDER NEW YORK DEFAMATION LAW

After Summer Zervos and several other women described unwelcome harassment by Donald Trump, Trump publicly claimed to have "facts" which would show the women were not telling the truth.  *See* Mullin Dec., Ex. A (*Zervos* Complaint).  Trump claimed that the women

---

[1]  *Zervos* was decided on March 14, 2019.  Defendant's brief in this Court was filed more than a month later on April 25, 2019.

1

complaining of harassment were financially and politically motivated.  In this case, when The New York Times revealed that defendant Bill O'Reilly (and/or his employer Fox News) had paid at least five women settlements when they complained about his harassment, he claimed to have "facts" which would show that the women were not telling the truth.  He, like Trump,  claimed the women were financially and politically motivated.  Clarifying and applying New York defamation law, the law relevant to this case, the Appellate Court in *Zervos* found that Ms. Zervos' defamation action was properly pled.  Ms. Bernstein's Second Amended Complaint is almost identical.  *See* Mullin Dec., Ex. A  (*Zervos* Complaint).

The *Zervos* Complaint alleges that after Ms. Zervos revealed several unwelcome sexual encounters with Donald Trump, Trump defamed her by saying things such as:

- "These allegations are 100% false . . . They are made up, they never happened . . . It's not hard to find a small handful of people willing to make false smears for personal fame, who knows maybe for financial reasons, political purposes."

- "Nothing ever happened with any of these women.  Totally made up nonsense to steal the election."

- "False allegations and outright lies, in an effort to elect Hillary Clinton President . . . False stories, all made-up . . . all big lies . . ."

(*Zervos* Complaint, ¶¶ 45-78; Mullin Dec., Ex. A).

Ms. Zervos' legal claims are summarized by the New York Appellate Division as follows:

> On January 17, 2017, plaintiff commenced this action against defendant who in November 2016 had been elected President of the United States.  Plaintiff alleged that the above statements by defendant were false and defamatory, and that defendant made them "knowing they were false and/or with reckless disregard for their truth or falsity."  Plaintiff alleged that the statements about her were "defamatory per se," because "they would tend (and did)

2

> injure [her] trade, occupation or business," that "[b]eing branded a
> liar who came forward only for fame or at the manipulation of the
> Clinton campaign has been painful and demoralizing," and that as
> a direct result of those statements, she has suffered "both
> emotionally and financially."  She also alleged that defendant's
> statements "have been deeply detrimental to [her] reputation, honor
> and dignity."  The complaint seeks an order directing defendant to
> retract any and all defamatory statements and/or apologize for such
> statements, as well as an order directing defendant to pay
> compensatory and punitive damages.

(*Zervos, supra* at 79-80).

Ms. Bernstein's most recent revised Second Amended Complaint makes the same

allegations  (*See* subheading A, *infra*).  In holding that the *Zervos* Complaint properly pleads

defamation under New York law, the Appellate Court ruled on the exact same arguments made

by defendant O'Reilly here.

### A.   The *Zervos* Decision Requires Rejection of O'Reilly's Argument That His Statements About Plaintiff – And Other Women He Abused – Were "Opinion"

Defendant O'Reilly claims that his statements about plaintiff Bernstein – and his other

victims – are opinion.  (Db 9).  Trump made the same argument.  (Trump App. Brief, p. 27;

Mullin Dec., Ex. B).  The court rejected it:

> In determining whether a "reasonable" reader would consider that
> defendant's statements that plaintiff lied about their encounters
> connotes fact or nonactionable opinion, there are three relevant
> factors to be considered holistically:  (1) whether the statements
> have a "precise meaning" that is "readily understood"; (2) whether
> the statements can be proven true or false; and (3) whether either
> the context in which the statements were made or the "broader
> social context and surrounding circumstances [were] such as to
> signal . . . readers or listeners that what [was] being read or heard
> [was] likely to be opinion, not fact:  (*Davis v. Boeheim*, 24 *NY3d* at
> 270 [2014] [internal quotation marks omitted]).

> Here, defendant's denial of plaintiff's allegations of sexual
> misconduct is susceptible of being proven true or false, since he
> either did or did not engage in the alleged behavior.  To be sure, a
> denial, which is a statement of purported fact and not mere
> opinion, does not always provide a basis for a defamation claim,
> even though it implicitly claims that the alleging party is not telling
> the truth.  However, a denial, coupled with the claim that the
> accuser is or will be proven a liar, impugns a person's character as
> dishonest or immoral and typically crosses the line from
> nonactionable general denial to a specific factual statement about
> another that is reasonable susceptible of defamatory meaning (see
> *McNamee v. Clemens*, 762 *F.Supp.2d* 584, 601 [ED NY 2011]).

*Zervos, supra* at 88.

Defendant O'Reilly baselessly argues that he did not claim to have <u>specific facts</u> which

would show that plaintiff was <u>not telling the truth</u> – and was, therefore, a liar.  (Db 19).  Plaintiff

Bernstein's Second Amended Complaint clearly shows many examples of defendant O'Reilly

doing just that. For example, O'Reilly made the following statements:

> • after his "**investigation**" he would give the public "**facts**,"
> "no **he said she said.  Facts.  Cold stone facts.**  Shocking
> the defamation that can occur."

(Second Amended Complaint, ¶ 37) (emphasis supplied).

> • MR. O'REILLY: My conscience is clear. **What I have done is organized
> a legal team to get the truth to the American people**.

> \* \* \*

> • MR. O'REILLY: You know, nobody's a perfect person, but I can go to
> sleep at night very well knowing that **I never mistreated anyone on my
> watch in 42 years**.

> \* \* \*

> • MR. O'REILLY: I've been in this business, I've worked for 12 companies;
> **not one time did I have any interaction with HR or any complaints
> filed against me.**

(*Id.* at ¶ 38) (emphasis supplied).

- ... **we have physical proof that this is bullshit.  Bullshit.**  Okay?  So, it's on you, if you want to destroy my children further.  All right?  Because **it's all crap.**

* * *

- **This is crap, and you know it.  It's politically and financially motivated, and we can prove it, with shocking information.**

(*Id.* at ¶ 46) (emphasis supplied).

- "**Never give up telling the truth.**  Never give up protecting your family......  **I'm going to go down fighting and I'm going to go down telling the truth.**"

(*Id.* at ¶ 54) (emphasis supplied).

- "**But we are now going to confront everybody in court.  That's where we're going to adjudicate, in my situation.  We've already filed one lawsuit and we've got others ready to go.**"

(*Id.* at ¶ 55) (emphasis supplied).

Clearly, under the controlling New York defamation law, defendant O'Reilly is not

entitled to dismissal based on his claim that the statements at issue are purely opinion.

**B.    The *Zervos* Decision Requires Rejection of O'Reilly's Argument
       That His Statements Regarding the Women Who Complained
       About Him at Fox News Were Not "Of and Concerning" Plaintiff**

Defendant O'Reilly argues that plaintiff Bernstein was "not the subject" of his statements

because he never said her name.  (Db 2, 5-6).  Trump made the same argument claiming that he

never said Ms. Zervos' name.  (Trump App. Brief, p. 34-35; Mullin Dec., Ex. B).  The court

rejected it:

> Defendant's argument that some of the alleged defamatory
> statements are not "of and concerning plaintiff" is also without
> merit.  Even where statements alleged by plaintiff do not refer to
> her by name, most of the challenged statements could reasonably
> be considered of and concerning her.  Defendant began making the
> challenged statements immediately after plaintiff gave her press
> conference and they were all made within eight days thereafter.
> The "allegations" that defendant's statements attack as false and
> politically motivated and the "events" the statements claim "never
> happened" are easily understood as relating to plaintiff's
> accusations, as well as the accusations by other women who had
> come forward by that time (*see Elias v. Rolling Stone*, 872 *F3d* 97,
> 108 [2d Cir 2017]).

(*Zervos, supra* at 89).

Although the question of whether a statement is "of and concerning" plaintiff is a jury

question,  *Harwood Pharmacal Co. v. National Broadcasting Co.*, 9 *N.Y.2d* 460, 462, 214

*N.Y.S.2d* 725, 174 *N.E.2d* 602 (1961), it was so clear in *Zervos* that Trump's statements were

about Ms. Zervos that the Appellate Court ruled that Trump's arguments were without merit.

*Zervos, supra* at 89.  In this case, the statement made by O'Reilly in the April 1, 2017 <u>New York</u>

<u>Times</u> article which named plaintiff <u>by name</u> was also clearly "of and concerning" her.  The

numerous other defamatory statements were made in reference to <u>The New York Times</u> article

which named only five women, including plaintiff Bernstein.  Clearly, the five women named are

part of "a particular, specifically-defined group of individuals" that included plaintiff.  *Three*

*Amigos SJL Rest., Inc. v. CBS News, Inc.*, 28 *N.Y.3d.* 82, 87 (2016).

## C.    The *Zervos* Decision Requires Rejection of O'Reilly's Claims That None of His Statements Were Defamatory

Defendant O'Reilly claims that none of the statements contained in the Second Amended

Complaint (over 47 of them) are defamatory.  (Db 22).  Defendant argues that none of his

6

statements subjected plaintiff to hate, ridicule or shame.  By making this argument in a motion to dismiss, defendant completely ignores the actual and specific allegations of ridicule and hatred pled in the Complaint as well as the applicable legal standard on a motion to dismiss.  (Second Amended Complaint, ¶¶ 74-81).

Trump made the same argument about the eighteen (18) statements Ms. Zervos outlined in her complaint.  (*Zervos* Complaint, ¶¶ 55-76; Mullin Dec., Ex. A; Trump App. Brief, p. 6; Mullin Dec., Ex. B).  Those statements are remarkably like the statements made by O'Reilly in this case – only defendant O'Reilly made many more defamatory statements over a longer time period.

Like Trump, defendant O'Reilly tries to say that his public persona somehow gives him political context in which he has license to defame.  In this latest motion to dismiss, defendant O'Reilly portrays his public racist, sexist, xenophobic hate-mongering as "pugnacious, anti-political correctness." (Db 3).  Trump similarly sought to avoid answering in court for his defamatory statements arguing that acrimonious political battles excuse such liability.  The *Zervos* Court rejected that argument:

> Defendant further argues that the statements, are nonactionable given the political context in which he made them.  We recognize that in light of the hotly contested 2016 campaign, not to mention the fora in which the statements were made (defendant's Internet posting, campaign literature, rallies, and debates), the average reader would largely expect to hear the vigorous expressions of personal opinion, rather than rigorous and comprehensive presentation of factual matter.  However, defendant's flat-out denial of a provable, specific allegation against him concerning his own conduct, accompanied by a claim that the accuser was lying, could not be viewed even in that context as a rhetorical statement of pure opinion or as "vague, subjective, and lacking in precise meaning" (*Jacobus v. Trump*, 156 *A.D.3d* 452, 453 64 N.Y.S.3d

889 [1st Dept. 2017], *lv denied* 31 *N.Y.3d* 903, 2018 WL 1597479
[2018]). Nor is there any support for defendant's claim that such
statements when made in the context of a heated political
campaign are protected political speech. Indeed, claims for
defamation may arise out of acrimonious political battles (*see
Silsdorf v. Levine*, 59 *N.Y.2d* 8, 462 *N.Y.S.2d* 822, 449 *N.E.2d* 716
[1983], *cert. denied* 464 *U.S.* 831, 104 *S.Ct.* 109, 78 *L.Ed.2d* 111
[1983]).

*Zervos, supra* at 89.

Thus, being a loud-mouth political hate-monger does not excuse defamation under New

York law.

### D.     The *Zervos* Decision Requires Rejection of O'Reilly's Argument That He Did Not Use the Word <u>"Liar" and Therefore the Complaint Should be Dismissed</u>

Defendant O'Reilly argues that absent his use of the actual words "liar" and

"extortionist," plaintiff's complaint for defamation must be dismissed. (Db 1, 24). Trump made

the same argument about the word "liar." (Trump App. Brief, p. 33, Mullin Dec., Ex. B).

Although defendant Trump claimed he never actually described Ms. Zervos as a "liar," the court

analyzed the facts in *Zervos* with the understanding Trump alleged there are "undisclosed facts"

which would show that Ms. Zervos "is not telling the truth," adopting the case relied upon by

plaintiff Bernstein in opposing defendant's previous motion to dismiss, *Davis v. Boeheim*, 24

*N.Y.3d* 262, 22 *N.E.3d* 999, 998 *N.Y.S.2d* 131, 312 (2014):

> The use of the term liar could be perceived in some cases as no
> more than rhetorical hyperbole that is a nonactionable personal
> opinion (*see Davis*, 24 *NY3d* at 271, citing *Independent Living
> Aids, Inc. v. Maxi-Aids, Inc.*, 981 *F.Supp.* 124, 128 [ED NY
> 1997]). <u>However, that is not the case here, where, again, defendant
> used the term in connection with his specific denial of factual
> allegations against him, which was necessarily a statement by him
> of his knowledge of the purported facts.</u> Further, although
> defendant's statement that plaintiff was motivated by financial gain

8

> was not accompanied with recitation of the "facts" upon which it
> was based, and although it did not plainly imply that it was based
> on undisclosed facts, <u>the statement could be viewed by a
> reasonable reader as containing the implication that defendant
> knows certain facts, unknown to his audience, concerning
> organized political efforts to destroy his campaign, which supports
> his opinion. Given that, the complaint at the very least includes
> allegations of "mixed opinion" that are actionable.</u> (*see Davis*, 24
> *N.Y.3d* at 271-73, 998 *N.Y.S.2d* 131, 22 *N.E.3d* 999).

(*Zervos*, *supra* at 88-89) (emphasis added).

As shown in subsection A above, defendant O'Reilly clearly stated that he knew facts

about Ms. Bernstein's allegations which would prove them false.

**E.** **The *Zervos* Decision Requires Rejection of O'Reilly's**
   **Argument That His Statements Could Not be Defamation**
   ***Per Se* and That Plaintiff Has Not Properly Pled "Special Damages"**

Defendant O'Reilly argues that repeatedly accusing plaintiff Bernstein of wanting him to

pay her to avoid negative publicity (which is the textbook description of the serious crime of

extortion) (Second Amended Complaint, ¶ 32) is not defamation *per se*. (Db 1, 4, 7, 10).

Plaintiff will respond to O'Reilly's argument about extortion *infra* at "G," p. 11. Defendant

O'Reilly also claims that plaintiff has not alleged specific "special damages."[2] (Db 13).

Trump argued that his statements that Ms. Zervos was lying and politically and

financially motivated were not defamation *per se*. (Trump Supreme Court Brief, p. 37; Mullin

Dec., Ex. C). Trump also argued that Ms. Zervos did not provide specific facts to support her

---

[2] Defendant O'Reilly also states – completely falsely – that plaintiff did not add facts to
her damages allegations. (Db 13). In fact, plaintiff added more specific damages allegations.
(Second Amended Complaint, ¶¶ 74-81).

"special damages" claim for $2,914.00 (made in the alternative).[3]  (Trump Supreme Court Brief, p. 37; Mullin Dec., Ex. C).

The trial court in *Zervos* rejected those arguments and refused to dismiss the *Zervos* Complaint which pled defamation *per se* and special damages of $2,914.00.[4]  Plaintiff has a stronger argument for defamation *per se*, because defendant O'Reilly accused her of a serious crime, *i.e.*, extortion.  Additionally, pleading in the alternative, plaintiff Bernstein alleges special damages of $6,500 – more than Ms. Zervos – and clearly sufficient under New York law.

**F.     The *Zervos* Decision Requires Rejection of O'Reilly's
Claim That His Statements Were About the Media – Not Plaintiff**

In a particularly tortured and dishonest portrayal of the statements contained in the revised Second Amended Complaint, defendant O'Reilly claims that his allegations of political and financial motivations were leveled at "the media," not plaintiff Bernstein and the small identifiable group of women to whom he (and/or Fox News) paid settlements when they complained about his abuse.  (Db 17-18).  That argument defies reality.  For example, defendant's statements claiming his "investigation" would uncover "facts" as opposed to "he said she said" are not about the media.  (Second Amended Complaint, ¶ 37).

Trump made the same argument that his statements were about the media.  (Trump App. Brief, pp. 35-36; Mullin Dec., Ex. B).  The Appellate Division obviously rejected it.

---

[3]  Although this Court was "confused" by plaintiff pleading in the alternative (Slip Op., p. 10, footnote 5), pleading in the alternative is "expressly permitted by CPLR (*see* §§ 3014 and 17); *Volt Systems Development Corp. v. Raytheon Co.*, 155 *A.D.2d* 309, 547 *N.Y.S.2d* 280." *Two Queens, Inc. v. Scoza*, 296 *A.D.2d* 302, 303, 745 *N.Y.S.2d* 517, 519 (2002).  *See also*, *Zervos v. Trump*, *supra*, where the court accepted Ms. Zervos' pleading in the alternative.

[4]  The Appellate Court left that ruling undisturbed.

In his argument, defendant turns the standard on a motion to dismiss on its head.  At the

pleading stage, courts must accept the allegations of the complaint as true and, reading the

complaint in conjunction with supplementing affidavits, a motion to dismiss must be denied

"[i]f, upon any reasonable view of the stated facts, plaintiff would be entitled to recovery for

defamation."  *Davis v. Boeheim, supra* at 268.  Especially in light of the *Zervos* ruling, a jury

should decide whether the numerous statements contained in Bernstein's Second Amended

Complaint are "of and concerning plaintiff" and defamatory.

### G.   Defendant O'Reilly Has Accused Plaintiff of the Serious Crime of Extortion, Which is Defamation *Per Se*

Obviously, accusing a person of telling lies for financial reasons is defamatory under New

York law.  The *Zervos* Court just affirmed that.  Here, defendant O'Reilly went even further than

the statements at issue in *Zervos*.  Defendant O'Reilly falsely accused plaintiff of extortion, a

serious crime.  Discussing the settlements he paid to Ms. Bernstein and other women, defendant

O'Reilly stated repeatedly that he is:

> **"vulnerable to lawsuits from individuals who want me to pay them to avoid negative publicity."**  O'Reilly stated repeatedly that plaintiff's complaints about him in 2002 were "financially motivated" and a "financial hit job."

(Second Amended Complaint at ¶ 64).

Thus, defendant O'Reilly charged plaintiff with a **serious crime**.  New York

Consolidated Laws, Penal Law Section 155.05 2(e) defines the crime of **larceny** as including:

"[a] person obtains property by **extortion** when he compels or induces another person to deliver

such property to himself or to a third person by means of instilling in him a fear that, if the

property is not so delivered, the actor or another will:  (v) [e]xpose a secret or publicize an

11

asserted fact, whether true or false, tending to subject some person to hatred, contempt or ridicule . . ." (*Id.*. at ¶ 65).

Defendant O'Reilly's argument – that because he did not use the term "extortion" and that his statements cannot be understood to allege extortion – is absurd.  (Db 1, 4, 8).  Under defendant's theory, one can say that a person provides sex for money – but that is not an accusation of the crime of prostitution.  Or one could say a person used a gun to get money from a store clerk – but that is not an accusation of armed robbery.  Clearly, under the motion to dismiss standard, defendant has accused plaintiff of a serious crime – the actual definition of extortion.  Accusing plaintiff of extortion is defamation *per se.*

## POINT II

### O'REILLY IS <u>BOTH</u> A THIRD PARTY BENEFICIARY AND AN <u>ASSIGNEE TO THE SETTLEMENT AGREEMENT HE BREACHED</u>

Paragraph 4a of the 2002 Severance Agreement and General Release signed by plaintiff provides:

> <u>Released Actions/General Release</u>:  With the single exception described in paragraph 4(s), Wittlieb [sic] (on behalf of herself and all her heirs, assigns, legal representatives, successors in interest, or any person claiming through her) releases Fox and its divisions, subsidiaries, parents and all other affiliated corporations, **as well as all their current and former employees**, officers, directors, agents, shareholders, attorneys, accountants, partners, insurers, advisors, partnerships, assigns, successors, heirs, predecessors in interest, joint venturers, and affiliated persons, including, without limitation, **Household Inc.** (collectively "Released Parties") from all liabilities, causes of actions, charges, complaints, suits, claims . . .

(Severance Agreement, Mullin Dec., Ex. D) (Emphasis added).

In the revised Second Amended Complaint, plaintiff Bernstein states:

> Upon information and belief, Household Inc. is a company under which Bill O'Reilly did business.

(Second Amended Complaint, ¶ 26).

In this motion, defendant O'Reilly does not dispute that Household Inc. is a company under which Bill O'Reilly did or does business. Thus, Bill O'Reilly is a third-party beneficiary of the Release as an "employee" of Fox News <u>and</u> through Household Inc., his company. O'Reilly is also an assignee, something his motion completely ignores.

The Settlement Agreement provides:

> <u>Non-Disparagement</u>:  Wittlieb (sic) and Fox each agree not to disparage, trade libel, or otherwise defame each other, and in the case of Fox, Wittlieb (sic) agrees not to disparage, trade libel, or otherwise defame its officers or employees, including without limitation, **Bill O'Reilly.  In the case of Wittlieb (sic), for purposes of this Paragraph 5(e), the term "Fox" shall mean the <u>released parties</u> referenced in Paragraph 4(a) above, including Bill O'Reilly, and said released parties agree not to disparage, trade libel, or otherwise defame Wittlieb.** (sic) (emphasis supplied).

(Second Amended Complaint, ¶ 27).

Clearly the statements by defendant O'Reilly outlined in the Second Amended Complaint constitute "disparagement" of plaintiff, and a breach of a contract to which defendant was both a third-party beneficiary and an assignee.

Defendant falsely argues that the law prohibits a breach of contract suit against a third-party beneficiary, citing *N.F. Gonzo Corp. v. Kiselman*, 960 *N.Y.2d* 846, 848 (App. Div. 2012). (Db 14).  Like he misleads the court by completely ignoring and failing to cite the controlling law of defamation in *Zervos*, defendant misleads the court regarding whether a third-party beneficiary can be sued for breach of contract.

13

In fact, *N.F. Gonzo* provides that a third-party beneficiary <u>can</u> be sued for breach of contract if he assumes obligations under the agreement – which defendant O'Reilly did in this case. Defendant deliberately fails to include the following clear statement of the law in *N.F. Gonzo*:

> It is well settled that a nonparty to a contract cannot be named as a defendant in a breach of contract action **unless the nonparty assumed the obligations under the agreement** (*see Bartsch v. Bartsch*, 54 A.D.2d 940, 388 N.Y.S.2d 347 [1976]; *International Customs Assoc., Inc. v. Ford Motor Co.*, 893 F.Supp. 1251, 1255 [1995]) (emphasis added).

*Id.* at 848.

Defendant O'Reilly left out the exception to the rule that third-party beneficiaries cannot be sued for breach of contract because he **assumed obligations under the agreement.** O'Reilly specifically assumed and was assigned the obligation not to disparage Ms. Bernstein. Obviously, the defamatory statements contained in the Second Amended Complaint disparage plaintiff – something defendant O'Reilly was **obligated** not to do under the contract that released claims against him specifically through his entity "Household Inc" and as an employee of Fox.

Thus, plaintiff has properly pled breach of contract under established New York law.

## CONCLUSION

For the foregoing reasons, controlling New York defamation law requires that defendant's motion to dismiss be denied. Plaintiff's breach of contract claims also clearly meet the pleading standard under New York law.

                              **SMITH MULLIN, P.C.**
                              Attorneys for Plaintiff

                              BY: _____
Dated:  May 16, 2019                   NEIL MULLIN