UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RACHEL WITLIEB BERNSTEIN,<br><br>                                    Plaintiff,<br><br>            -against-<br><br>BILL O'REILLY,<br><br>                                    Defendant. | Civil Action No.: 17-cv-9483(DAB) |

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT BILL O'REILLY'S MOTION TO DISMISS THE THIRD AMENDED COMPLAINT

Fredric S. Newman
Andrew N. Bourne
HOGUET NEWMAN
REGAL & KENNEY, LLP
One Grand Central Place
60 East 42nd Street, 48th Floor
New York, NY 10165
Tel: (212) 689-8808

*Attorneys for Defendant
Bill O'Reilly*

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................................... ii

PRELIMINARY STATEMENT .................................................................................................... 1

I.   BERNSTEIN CANNOT ESCAPE THE CONCLUSION THAT THE TAC FAILED TO REMEDY THE DEFECTS IDENTIFIED BY THIS COURT .......................................... 1

    A.   Bernstein Failed To Allege Defamation Per Se ........................................................ 1

    B.   Without Being Able To Maintain A Defamation Per Se Claim, Bernstein Must Allege Special Damages, Which She Failed To Do Again .................................... 3

    C.   Bernstein Still Failed To State A Claim For Breach Of Contract ........................... 4

II.  BERNSTEIN'S OPPOSITION CONFIRMS THAT BERNSTEIN FAILED TO ADEQUATELY PLEAD DEFAMATION BEYOND THE DEFECTS PREVIOUSLY IDENTIFIED BY THE COURT ....................................................................................... 6

    A.   Bernstein's "Of and Concerning" Argument Is Misplaced ..................................... 6

    B.   Bernstein's Blunderbuss Assertion Of 47 Allegedly Defamatory Statements Demonstrates The Fallacy Of Bernstein's Claim ................................................... 8

III. BERNSTEIN'S BREACH OF CONTRACT CLAIM MUST ALSO BE DISMISSED . 10

CONCLUSION ............................................................................................................................. 10

# **TABLE OF AUTHORITIES**

**CASES**

*Bartsch v. Bartsch*,
  388 N.Y.S.2d 347 (App. Div. 1976) .................................................................................... 5

*Crabtree v. Tristar Auto. Grp., Inc.*,
  776 F. Supp. 155 (S.D.N.Y. 1991) ....................................................................................... 4

*Int'l Customs Assocs., Inc. v. Ford Motor Co.*,
  893 F. Supp. 1251 (S.D.N.Y. 1995) ..................................................................................... 5

*Marchuk v. Faruqi & Faruqi, LLP*,
  100 F. Supp. 3d 302 (S.D.N.Y. 2015) .................................................................................. 3

*Melius v. Glacken*,
  943 N.Y.S.2d 134 (App. Div. 2012) ..................................................................................... 3

*N.F. Gozo Corp. v. Kiselman*,
  960 N.Y.S.2d 846 (App. Term 2012) ................................................................................... 6

*Nolan v. State of N.Y.*,
  69 N.Y.S.3d 277 (App. Div. 2018) ....................................................................................... 3

*Nunez v. A-T Fin. Info. Inc.*,
  957 F. Supp. 438 (S.D.N.Y. 1997). ...................................................................................... 3

*Rennaker Co. Consulting, Inc. v. TLM Grp., LLC*,
  No. 16 CIV. 3787 (DAB), 2017 WL 2240235 (S.D.N.Y. Mar. 29, 2017) ............................ 6

*Walter v. Hamburg Cent. Sch. Dist.*,
  No. 04-CV-996S, 2007 WL 1480965 (W.D.N.Y. May 18, 2007) ........................................ 3

*Zervos v. Trump,*
  94 N.Y.S.3d 75 (App. Div. 2019) ................................................................................. *passim*

**Other Authorities**

Restatement (Second) of Contracts § 324, 327 (1981) ................................................................ 4, 5

**PRELIMINARY STATEMENT**

The brief filed by Bernstein in opposition to O'Reilly's motion does not repair the fatal defects to Bernstein's claims.[1] Rather than addressing the vast majority O'Reilly's legal arguments in support of dismissal, Bernstein instead treats a New York intermediate appellate court decision as a magic bullet, striking every argument made by O'Reilly. *Zervos v. Trump,* 94 N.Y.S.3d 75 (App. Div. 2019) is completely inapposite and Bernstein's use of it is an attempt to conceal her baseless allegations against O'Reilly. Constrained by her allegations as to what O'Reilly purportedly said, Bernstein does not come close to stating a claim under this Court's prior decision. The Court should therefore grant O'Reilly's motion to dismiss the Complaint and, in light of Bernstein's complete disregard for the clear warning given in this Court's prior decision, order Bernstein to pay the fees and costs incurred by O'Reilly in responding to the TAC, which is a pleading that Bernstein should have never filed.

**ARGUMENT**

**I.   BERNSTEIN CANNOT ESCAPE THE CONCLUSION THAT THE TAC FAILED TO REMEDY THE DEFECTS IDENTIFIED BY THIS COURT**

**A.   Bernstein Failed To Allege Defamation Per Se**

Bernstein continues to rely on the same statements that this Court held did not state defamation per se. (Bourne Decl., Ex. 4 at 11 (holding that the SAC's "alleged defamatory statements portray her as an 'extortionate, politically-motivated liar,'" and do "not fall into any of the four exceptions" of defamation per se)). After this Court's order, Bernstein shifted focus and now describes those same statements as accusing Bernstein of committing the crime of extortion (while repeating her earlier interpretation that these statements "portrayed her as a liar and extortionist." (Bourne Decl., Ex. 1 at ¶ 58; *see also Id.* at ¶¶ 41, 59.)). (Brief in Opposition

---

[1] For the Court's convenience, the terms defined in the Memorandum of Law in Support of Defendant Bill O'Reilly's Motion to Dismiss the Third Amended Complaint (ECF Doc. No. 134) ("O'Reilly Br.") are used herein.

1

to Defendant Bill O'Reilly's Motion to Dismiss (ECF Doc. No. 138) ("Bernstein Br.") at 11.) While Bernstein's characterization changed, the statements did not; those statements still fail to satisfy the stringent requirement for setting forth a claim for defamation per se.

Bernstein does not address O'Reilly's argument that the three statements upon which her defamation per se claim rests do not come close to a per se defamatory accusation of a crime. As previously submitted, the three statements Bernstein relies upon for her defamation per se claim are insufficient because under New York law they either are O'Reilly's opinion as to motivations of third-parties (without even comment on the merits of their claims) or do not seriously accuse Bernstein of committing the crime of extortion. (O'Reilly Br. at 9 (citing cases).) Bernstein offers no response to this argument.

Instead, Bernstein invokes *Zervos* and claims that "accusing a person of telling lies for financial reasons is defamatory under New York law." (Bernstein Br. at 11.) *Zervos* did not hold as much and, even if it did, *Zervos* does nothing for Bernstein's claim for defamation per se. The plaintiff in *Zervos*, 94 N.Y.S.3d at 79-80, alleged the complained-of statements constituted defamation per se because they injured her "trade, occupation, or business." Bernstein does not allege that the comments fall within that prong of New York defamation per se jurisprudence.

Rather, Bernstein doubles down on her "charging with a serious crime" prong of defamation per se and pontificates that O'Reilly's failure to use the word "extortion" is not fatal to her claim. (Bernstein Br. at 12.) Bernstein attempts to analogize O'Reilly's statements with factual statements accusing a person of criminal conduct without using the criminal law nomenclature. (*Id.*) Bernstein's argument fails for the simple reason that, under New York law, characterizing a complaint as extortion is not defamation per se. Even explicitly using the term "extortion" in this context (which O'Reilly undisputedly did not do) is not defamation per se.

2

"New York courts addressing this very issue have found that characterizing a plaintiff's lawsuit as 'extortion' is not actionable." *Marchuk v. Faruqi & Faruqi, LLP*, 100 F. Supp. 3d 302, 314 (S.D.N.Y. 2015) (citing *Melius v. Glacken*, 943 N.Y.S.2d 134, 136 (App. Div. 2012) ("[A] reasonable listener would have believed that calling the plaintiff an 'extortionist' who is seeking 'to extort money' was conveying the defendant's opinion as to the merits of the plaintiff's lawsuit and was not a factual accusation of criminal conduct.")). The bottom line: the most Bernstein can allege is that O'Reilly purportedly "*portrayed* her as a liar and extortionist." (Bourne Decl. Ex. 1 at ¶ 58 (emphasis added)), which this Court previously held is insufficient to state a claim for defamation per se and nothing Bernstein presents alters that conclusion.

### B. Without Being Able To Maintain A Defamation Per Se Claim, Bernstein Must Allege Special Damages, Which She Failed To Do Again

Additionally, Bernstein's alternative standard defamation claim is also subject to dismissal. Bernstein does not dispute, and thus concedes, O'Reilly's argument that her "round figure of $6,500, without itemization, is insufficient" (O'Reilly Br. at 10) as a matter of law to satisfy pleading special damages. *See, e.g.*, *Walter v. Hamburg Cent. Sch. Dist.*, No. 04-CV-996S, 2007 WL 1480965, at *8 (W.D.N.Y. May 18, 2007) (finding that plaintiff "does not dispute, and therefore concedes" argument defendants advanced in moving papers). This alone should end the Court's inquiry as Bernstein's "general allegation of a dollar amount as special damages will not suffice." *Nunez v. A-T Fin. Info. Inc.*, 957 F. Supp. 438, 441 (S.D.N.Y. 1997).

Bernstein also fails to dispute, and thus concedes, that notwithstanding her improper use of round figures, her claim would still fail the special damages requirement since all her alleged damages stem from the psychological effects Bernstein claims to have suffered and do not "flow directly from the injury to reputation caused by the defamation." (O'Reilly Br. at 11) (quoting *Nolan v. State of N.Y.*, 69 N.Y.S.3d 277, 281 (App. Div. 2018)). This too should end the inquiry.

3

Bernstein's dependence on *Zervos* does not alter these facts, as once again *Zervos* does not address the legal deficiencies already identified by this Court and O'Reilly. First, in *Zervos*, the plaintiff alleged more than a bare, round number, unlike Bernstein. Second, the plaintiff in *Zervos* made specific allegations regarding economic losses that flowed directly from the purported injury to her reputation, unlike Bernstein who claims losses stemming from her psychological condition. *Compare* Mullin Decl., Ex. A at ¶ 81 (alleging that, as a result of the injury to her reputation, Zervos' "restaurant lost customers and business that it had before," totaling "at least $2,914 in such financial losses.") *with* Bourne Decl., Ex. 1 at ¶ 79 ("plaintiff has suffered financially in that she has spent over $6,500 for medication and therapy as a result of defendant's defamation"). Bernstein's defamation claim fails for want of special damages.

      C.      **Bernstein Still Failed To State A Claim For Breach Of Contract**

Bernstein's opposition points to no facts establishing O'Reilly's liability for a breach of contract. In her opposition papers, Bernstein makes the bare assertion that "O'Reilly is also an assignee" without a single factual assertion made to support her legal conclusion. (Bernstein Br. at 3.) "It is hornbook law that a non-signatory to a contract cannot be named as a defendant in a breach of contract action unless it has thereafter assumed or been assigned the contract." *Crabtree v. Tristar Auto. Grp., Inc.*, 776 F. Supp. 155, 166 (S.D.N.Y. 1991). There were only two signatories to the contract: Bernstein and Fox News. (Bourne Decl., Ex. 2 at 1, 5.) In order for there to have been an assignment of Fox's rights and obligations under that agreement, it is "essential . . . that [Fox] manifest an intention to transfer" its rights. *See* Restatement (Second) of Contracts § 324 (1981). Additionally, a "manifestation of assent by [O'Reilly as] assignee . . . is essential to make it effective unless (a) a third person gives consideration for the assignment, or (b) the assignment is irrevocable by virtue of the delivery of a writing to a third person." *Id.* §

4

327. Bernstein makes none of these allegations, and so her conclusory assertion of assignment should be rejected outright. *See also Bartsch v. Bartsch*, 388 N.Y.S.2d 347 (App. Div. 1976) (finding that "[a]bsent any evidence that [non-party] was involved in this agreement, or made any promises to [party], or expressly assumed the agreement in question," non-party could not be held liable under that agreement).

Faced with these fatal legal principals, Bernstein casts aspersions and claims O'Reilly "deliberately fail[ed] to include [a] clear statement of the law" that a non-party may be held liable where it has "assumed the obligations under the agreement." (Bernstein Br. at 13-14). That assertion is demonstrably false. O'Reilly's moving papers not only noted this legal principle (*see* O'Reilly Br. at 13), but continued to set forth exactly how the Third Amended Complaint fails to establish such an assignment (*see id.* at 14).

Bernstein's continued assertion concerning O'Reilly's status as a 3rd party beneficiary fails to grasp a basic distinction between a beneficiary – who has the right to sue on a contract – and a signatory – who can be sued on a contract. Even if O'Reilly were a beneficiary, that fact would not make him liable under the contract. *See Int'l Customs Assocs., Inc. v. Ford Motor Co.*, 893 F. Supp. 1251, 1256 n.3 (S.D.N.Y. 1995), *aff'd,* 201 F.3d 431 (2d Cir. 1999) ("The status of an intended third-party beneficiary gives that person the right to sue; it does not give others the right to sue that person on the contract.")

Additionally, Bernstein confuses the concept of a third-party beneficiary and the concept of assignment when she argues that there is an "exception to the rule that third-party beneficiaries cannot be sued for breach of contract" where that agreement imposes obligations on that third-party. There is no such exception. Rather, the only authority Bernstein relies on speaks to the hornbook principle that nonparties may be held liable only where they assumed

5

liability through a later assignment.  *See N.F. Gozo Corp. v. Kiselman*, 960 N.Y.S.2d 846, 848 (App. Term 2012) (citation omitted).  O'Reilly did not do this.

Nor is Bernstein saved by the fact that the Bernstein Agreement purportedly gave O'Reilly duties.  As previously submitted, this fact does not establish that O'Reilly can be held liable for a breach of this obligation.  *See Rennaker Co. Consulting, Inc. v. TLM Grp., LLC*, No. 16 CIV. 3787 (DAB), 2017 WL 2240235, at *4 (S.D.N.Y. Mar. 29, 2017) ("While Individual Defendants may have obligations under the [Corporate Defendant's agreement], this does not make them parties to the Agreement").

Finally, even if Bernstein were able to demonstrate O'Reilly assumed the Bernstein Agreement, her claim would still fail.  She does not dispute, and thus concedes, her continued failure to address the damages issues this Court identified when dismissing her previous breach of contract claim.  As O'Reilly noted in his moving papers, the TAC still fails "to explain how her losses were caused by and are directly traceable to the alleged breach of contract" or "to allege any facts, beyond her bald allegations of damages, establishing what, if any, emotional and physical harms and reputational damage she specifically suffered."  (O'Reilly Br. at 13.) Bernstein's opposition does nothing to address this fact, which in and of itself is sufficient to warrant dismissal of her breach of contract claim.

II. **BERNSTEIN'S OPPOSITION CONFIRMS THAT BERNSTEIN FAILED TO ADEQUATELY PLEAD DEFAMATION BEYOND THE DEFECTS PREVIOUSLY IDENTIFIED BY THE COURT**

A. **Bernstein's "Of and Concerning" Argument Is Misplaced**

In her opposition, Bernstein claims that O'Reilly "argue[d] that plaintiff Bernstein was 'not the subject' of his statements because he never said her name."  (Bernstein Br. at 5.)  Of course, this misstates O'Reilly's argument.  Indeed, Bernstein does not, because she cannot,

refute O'Reilly's argument that O'Reilly's complained-of statements, to the extent that any of them might plausibly be considered defamatory, were not "of and concerning" Bernstein. Instead, in a misguided attempt to resurrect her claim, Bernstein concocts a straw-man and claims that *Zervos* effectively rejected O'Reilly's never made argument that Bernstein's claim must be dismissed because O'Reilly never mentioned her by name.  (Bernstein Br. at 5.)  First, O'Reilly actually argued that "none of the alleged defamatory statements can reasonably be construed to concern her," – an argument that Bernstein never attempts to refute.  Moreover, *Zervos* merely stands for the unremarkable proposition, inapposite here, that even "where statements alleged by plaintiff do not refer to her by name, most of the challenged statements could reasonably be considered of and concerning her." 94 N.Y.S.3d at 89.  This is because, in *Zervos*, the defendant specifically identified the plaintiff on multiple occasions, singling her out and calling her a liar. *Id.* at 79.  Among other statements, Defendant "re-tweeted statements by others, including one that had a picture of plaintiff, and stated, 'This is all yet another hoax.'" *Id.*  Moreover, "in response to plaintiff's allegations and other women's claims of sexual misconduct," the defendant declared: "Every woman lied when they came forward to hurt my campaign, total fabrication. The events never happened. Never. All of these liars will be sued after the election is over." *Id.*  These statements leave no ambiguity about their subject – the accusers, including Zervos – or that they purport to be factual statements calling these specific people liars.

Instead, Bernstein completely ignores the proper context of O'Reilly's statements and, instead, asserts that because the New York Times mentioned Bernstein in the April New York Times Article, everything that O'Reilly ever said was "of or concerning" Bernstein.  (Bernstein Br. at 6.)  In the proper context, it is clear that O'Reilly's complained-of statements, to the extent

7

that any of them might plausibly be considered defamatory, were not "of and concerning" Bernstein, but rather were directed at members of the media and left-leaning activists who organized a sponsor boycott of O'Reilly's show, among other activities, which is evident by the entire context of the O'Reilly's statements.

Bernstein's faithless construction of O'Reilly's statements do not end with the statements not being about her – in an attempt to mislead this Court into believing O'Reilly's statements were based upon undisclosed facts concerning her, Bernstein also obfuscates other statements made by O'Reilly to claim that O'Reilly's statements constitute factual statements about her. (Bernstein Br. at 4-5.) As pointed out in O'Reilly's motion Bernstein ignores the actual context of O'Reilly's statements and, at times, conveniently omits critical information. (ECF Doc. No. 134 at 16-18.) This Court should not be swayed by Bernstein's misdirection.

### B. Bernstein's Blunderbuss Assertion Of 47 Allegedly Defamatory Statements Demonstrates The Fallacy Of Bernstein's Claim

Bernstein also stubbornly refused to pare down her claim of defamation, which highlights the weakness of her defamation claim. Believing that quantity is a substitute for substance, Bernstein maintains that the "over 47" statements made by O'Reilly in the TAC are all defamatory. (Bernstein Br. at 6.) Bernstein's blunderbuss allegations of defamation, which includes multiple statements by O'Reilly about how much he cares for his children (Bourne Decl., Ex. 1 at ¶¶ 32, 34, 41, 45, 47, 50) or how he is "mad at god" (*Id.* at ¶ 54), do not mask the fact that none of the complained-of statements could reasonably be construed to be defamatory. Bernstein's defamation claim seems to be nothing more than: if O'Reilly said it, it was defamatory. Such a claim is insufficient for many reasons previously submitted by O'Reilly.

In fact, Bernstein does not attempt to elaborate how any of the particular statements she contends is defamatory is reasonably susceptible of defamatory meaning. Rather, Bernstein

8

claims that the TAC can survive under *Zervos*. (Bernstein Br. at 8.) To do so, Bernstein misrepresents the facts of Zervos and asserts that "defendant Trump claimed he never actually described Ms. Zervos as a 'liar.'" (Bernstein Br. at 8.) To the contrary, the *Zervos* court found that it was the use of the term "liar" that compelled the denial of the motion to dismiss. *See Zervos*, 94 N.Y.S.3d at 88-89. In particular, the court found that "a denial, coupled with the claim that the accuser is or will be proven a liar, impugns a person's character," and that the defendant's use of the term "liar" in connection with a "specific denial" potentially transformed a statement of denial into actionable defamation. (*Id.* at 88.). Of course, Bernstein makes no real attempt to analogize *Zervos* with the statements contained in the TAC beyond claiming that "O'Reilly made many more defamatory statements over a longer period of time." (Bernstein Br. at 7.) Here and unlike in *Zervos*, O'Reilly never said Bernstein is a liar (although O'Reilly strongly denies the allegations she has leveled against him), nor did O'Reilly state or imply that he "knew facts about Ms. Bernstein's allegations which would prove them false," (*Id.* at 7-8), which would "cross[] the line from nonactionable general denial to a specific factual statement about another that is reasonably susceptible of defamatory meaning." *Zervos*, 94 N.Y.S.3d at 88 (citation omitted). In short, Bernstein offers nothing to suggest a reasonable person would ascribe defamatory meaning to any statement in particular.

Finally, Bernstein attempts to bolster her defamation claim by arguing that O'Reilly "ignores the actual and specific allegations of ridicule and hatred pled in the Complaint," citing to Paragraphs 74 to 81 of the TAC. (Bernstein Br. at 7.) The plain language of those allegations make clear that the alleged ridicule Bernstein suffered is the result of the attention she brought upon herself in filing a frivolous lawsuit. For example, Paragraph 74 sets forth derogatory statements third parties made to Bernstein on "December 4, 2017," – the day she filed this

action. (Bourne Decl., Ex. 1 at ¶ 74.) Paragraph 75 recounts the comments left on a website below a publication by The Hill "about plaintiff's lawsuit." (*Id.* at ¶ 75.) These allegations make clear that the public contempt Bernstein allegedly suffered occurred only after she willingly elected to commence this frivolous lawsuit.

### III. BERNSTEIN'S BREACH OF CONTRACT CLAIM MUST ALSO BE DISMISSED

Finally, Bernstein failed to oppose (and therefore conceded) that her breach of contract fails Bernstein alleges no statement that refers to her by name and does not allege that anything O'Reilly stated disparaged under New York law. (O'Reilly Br. at 25.)

### CONCLUSION

This Court generously gave Bernstein another opportunity to state a claim against O'Reilly. Bernstein squandered that opportunity because her claims against O'Reilly are deficient as a matter of law the TAC should be dismissed. Additionally, this Court should permit O'Reilly to seek costs and/or fees for Bernstein's failure to heed the Court's warning not to replead if she could not cure defects in the SAC.

Dated: May 23, 2019
New York, New York

Respectfully submitted,

HOGUET NEWMAN
REGAL & KENNEY, LLP

By: _____
Fredric S. Newman
Andrew N. Bourne
One Grand Central Place
60 East 42nd Street, 48th Floor
New York, NY 10165
(212) 689-8808

*Attorneys for Bill O'Reilly*

10